```
                                                    USDC SDNY
                                                    DOCUMENT
                                                    ELECTRONICALLY FILED
                                                    DOC #: _____
UNITED STATES DISTRICT COURT                        DATE FILED: March 12, 2010
SOUTHERN DISTRICT OF NEW YORK
```

------------------------------------x
                                    :
JUDY W. SOLEY,                      :
                                    :
                     Plaintiff,   :   08 Civ. 9262 (PAC)
                                    :
      - against -              :   <u>MEMORANDUM</u>
                                    :   <u>OPINION & ORDER</u>
PETER J. WASSERMAN,                 :
                                    :
                     Defendant.   :
------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff Judy W. Soley ("Soley") brings this action against her brother, Defendant Peter J. Wasserman ("Wasserman"), asserting claims of securities fraud under Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, in Count I, breach of contract in Count II, breach of fiduciary duty in Count III, common law fraud in Count IV, conversion in Count V, unjust enrichment in Count VI, for an accounting in Count VII, and fraudulent conveyance in Count VIII. Soley contends that over the last three decades Wasserman has consistently defrauded her in connection with a number of loans and securities transactions.

      Wasserman moves to dismiss the Complaint under Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. He argues that his sister has failed to state a viable claim, that her claims are time barred, and that fraud has not been plead with the requisite particularity. Wasserman also argues that the Complaint is so prolix and confusing that it runs afoul of Rule 8(a)'s directive that pleadings provide "a short and

1

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

**I) Facts as Alleged in the Complaint and Assumed to be True**

Wasserman is Soley's younger brother, and since 1981 he has repeatedly asked her to invest in, and loan money to, his various business ventures. (Compl. ¶ 10.) According to Soley, Wasserman also continuously served as her "investment advisor." (Id.) Soley asserts that despite her repeated requests, Wasserman has refused to provide an accounting of the various interfamilial business ventures, has neglected to repay many of the loans she made, and has failed to pay her the proceeds of her investments. (Id. ¶ 14.)

In 1981, Soley loaned Wasserman 10,444 shares of Harris Corporation common stock (the "Harris stock"). (Id. ¶ 15.) Wasserman promised to return the Harris stock and to pay Soley between $10,000 and $15,000 for the loan by August 1, 1982. (Id. at 17.) According to the Complaint, at the time of the loan Wasserman was Soley's "investment advisor." (Id. at 19.) When Soley called Wasserman shortly before August 1, 1982 and asked about the return of the Harris stock, Wasserman was incensed and told her that he had "bigger problems to deal with." (Id. at 20.) Over the years, Soley repeatedly asked Wasserman about the Harris stock, and each time Wasserman told her not to worry because he would "make her money" and that she should continue "to trust and rely upon him as her investment advisor." (Id. ¶ 21.) Wasserman, however, never returned the Harris stock, and in a letter dated February 15, 2007, he stated "[a]s to the

Harris Corp. stock, after all these years I do not recall with any degree of certainty the precise back and forth on the issue." (Id. ¶ 23.) Soley believes that the Harris stock is now worth $2.5 million. (Id. ¶ 25.)

On February 25, 1991, Wasserman formed Patriot Partners, L.P. ("Patriot Partners") as a Delaware limited partnership, for the stated purpose of investing in securities and other investment instruments on its own account. (Id. ¶ 27.) As Patriot Partner's general partner, Wasserman was responsible for the partnership's investment decisions and management of its investment portfolio. (Id.) On November 23, 1992, Wasserman and John Soley, Wasserman's nephew and Soley's son, formed Patriot Group as a New York general partnership. (Id. ¶ 56.) Patriot Group was formed to distribute, through public offerings, the securities of various companies which trade at a premium on the secondary market. (Id. ¶ 57.) According to the Complaint, Wasserman personally ran Patriot Group and oversaw all of its transactions. (Id. ¶ 58.)

After its formation, Patriot Partners distributed a Private Offering Memorandum ("POM") dated April 1, 1991. (Id. ¶ 28.) The POM explained that investors in Patriot Group would receive the benefit of Wasserman's investment prowess and assured investors that "the General Partner is accountable to the Partnership as a fiduciary, and consequently, must exercise good faith and integrity in handing Partnership affairs." (Id. ¶ 32.) A partnership agreement (the "Partnership Agreement") was annexed to the POM which by its terms governed "the business and affairs of the Partnership, [and] the respective rights and obligations of the Partners . . . ." (Id. ¶ 29.) In September, 1991, Soley was provided a copy of the POM. (Id. ¶ 31.) According to the Complaint, Wasserman asked Soley to become a limited partner in Patriot Partners, and based on his

3

"numerous oral and written representations," Soley signed a subscription agreement (the "Subscription Agreement"), entered into the Partnership Agreement, and ultimately invested over $500,000 to become a limited partner.  (Id. ¶ 33.)

Under the Partnership Agreement, Patriot Partners (according to the Complaint, "in effect Wasserman") was required to maintain accurate accounting records and provide various financial statements sixty days after the first three fiscal quarters and one-hundred and twenty days after the close of each fiscal year.  (Id. ¶ 35.)  Between 1991 and 2004, Wasserman provided Soley with annual letters purporting to disclose her contributions, withdrawals and year-end capital balance, though the letters were provided "sporadically."  (Id. ¶ 36.)  Wasserman also provided Soley with annual Schedule K-1 statements.[1]  Soley asserts, however, that she never received the various other reports required by the Partnership Agreement.  (Id.)

At Wasserman's request, in November, 1992, Soley made a $200,000 loan to Patriot Group which was evidenced by a demand promissory note.  (Id. ¶ 58.)  While the Complaint is far from clear on the point, it seems that the loan was made through an account Wasserman told Soley to open at Merrill Lynch funded with "approximately $200,000 in tax free bonds."  (Id. ¶ 60.)  The bonds were placed in the account "so that Patriot Group would have additional funds for short-term loans as needed."  (Id.)  While Wasserman assured Soley that Patriot Group would pay all the fees associated with the Merrill Lynch account, Soley ended up paying the fees.  (Id.)

---

[1] "A Schedule K-1 is used as part of the tax return to report the partner's share of income, credits, deductions and other items resulting from the partnership."  Hansen v. Comm'r of Internal Revenue, 471 F.3d 1021, 1026 n.6 (9th Cir. 2006).

Soley alleges that, at Wasserman's request, she made over $1 million in loans to Patriot Group between 1992 and 1998. (Id. ¶ 63.)[2] At the request of Patriot Group's counsel, on June 10, 1997, Soley, Wasserman and John Soley signed a "Certificate" in connection with counsel's issuance of an opinion regarding Patriot Group's participation in a stock distribution. (Id. ¶ 61.) The Certificate states that Wasserman and John Soley are the sole partners of Patriot Group, but also that "Judy W. Soley has loaned funds to Patriot [Group] which may be deemed to constitute a beneficial interest in Patriot [Group]." (Id.) The Complaint states that as a result of her loans to Patriot Group, Soley became a creditor of the general partnership and that "[i]t was, at all times, her [Soley's] understanding that the loans would be repaid with interest." (Id. ¶ 64.)

In or around July, 1998, Wasserman asked Soley for $150,000, which he said was to be used as a short-term loan to Patriot Group. (Id. ¶ 37.) Wasserman told Soley to open and fund an account at Merrill Lynch for purposes of making the loan. (Id.) Soley then handed Wasserman a $150,000 check payable to Patriot Group and drawn on her Merrill Lynch margin account. (Id.) The Complaint alleges that, unbeknownst to Soley, Wasserman deposited the check in Soley's personal brokerage account at Fagenson & Co., Inc. ("Fagenson"). (Id. ¶ 38.) A few months later, Wasserman asked Soley for a $150,000 investment in Patriot Partners. (Id. ¶ 39.) Soley claims that "[a]s her trusted investment advisor," Wasserman asked Soley to make the investment from her Fagenson account and assured her that she had enough money in the account to make the investment. (Id.) Soley agreed to make the additional $150,000 investment in Patriot Partners, but she was unaware that the investment was made out of the "same money" she

---

[2] While the Complaint sets forth a number of loans allegedly made by Soley to Patriot Group, it is not clear how Soley arrives at the "over $1 million" figure. (Compl. ¶ 63.)

5

believed she had lent to Patriot Group.  (Id.)  Soley alleges, on information and belief, that the $150,000 investment was never credited to her Patriot Partners capital account.  (Id. ¶ 41.)  While the Complaint says that Soley agreed to make a $150,000 short-term loan to Patriot Group, and a $150,000 investment in Patriot Partners, Soley explained to Wasserman in an August 1, 1999 letter that she had been unable to reach him for weeks and stated that "I would like to be repaid the remainder of the $150,000 'loan'.  That money was to be invested temporarily in 'Patriot Partners'.  At this point, I have not received any accounting on that sum."  (Id. ¶ 41.)  According to Soley, Wasserman never accounted for, "nor repaid, any portion of her $150,000 investment in Patriot Partners."  (Id. ¶ 43.)

Soley claims that at some point in 2003, Wasserman withdrew $100,000 from Patriot Partners, allegedly as "repayment of loan payable to general partner."  (Id. ¶ 44.)  At some point, Soley told Wasserman that she wanted Patriot Partner's affairs wound up and her share of its assets returned.  (Id. ¶ 45.)  And in a December 29, 2004 email to Soley, Wasserman stated, "I am sorry that I have not ended Patriot Partners as of yet, but I expect to do it this next year, it is getting closer."  (Id. ¶ 46.)  Soley alleges that as of December 31, 2003, she had at least $876,907 in her Patriot Partner's capital account.  (Id. ¶ 52.)  While Soley received two distributions from Patriot Partners amounting to $555,361, she believes that her remaining investment in the limited partnership is no less than $423,740.  (Id.)  Soley has repeatedly asked Wasserman to return the remainder of her pro-rata investment in Patriot Partners and for an accounting of her investment in the limited partnership.  (Id. ¶ 55.)  Wasserman has, however, "refused and/or failed" to return Soley's investment and to provide an accounting.  (Id. ¶ 55.)

6

While the Partnership Agreement required Wasserman to "take all action which may be necessary or appropriate for the preservation of the Partnership's properties and the conduct of its business in accordance with the provisions of this Agreement and applicable laws and regulations," in September, 2008, Soley learned for the first time that on or about December 31, 1995, Patriot Partner's certificate to operate under Delaware law had been "Cancelled-Voided" by the Delaware Secretary of State.  (Id. ¶ 49.)  The Patriot Partner's certificate was cancelled for "neglect, refusal, or failure to pay its annual taxes."  (Id.)  Soley alleges that Wasserman never told her that Patriot Partners "had not been in existence in the State of Delaware since December 31, 1995."  (Id. ¶ 51.)

Soley has repeatedly asked Wasserman to repay her loans to Patriot Group, with interest, and to provide an accounting of the loans.  (Id. ¶ 65-66.)  Since Wasserman avoided communicating with Soley directly, she turned to Patriot Group's accountant, Barry Kamras ("Kamras") for assistance.  (Id. ¶ 67.)  In 2006 and 2007, Soley communicated with Kamras about Patriot Group and Kamras apparently communicated with Wasserman.  (Id. ¶ 67-75.)  At some point, Kamras sent Soley a handwritten spreadsheet that purported to account for all of Soley's loans to Patriot Group; Soley, however, contends that the spreadsheet is inaccurate and misleading because it omits most of her short-term loans to the general partnership.  (Id. ¶ 75.)  Soley asserts that Patriot Group "wound up its activities in or about 2008 without informing [her]."  (Id. ¶ 77.)  Soley believes that the outstanding balance on her loans to Patriot Group is at least $575,487, plus interest of at least $547,792.08.  (Id. ¶ 78.)  According to the Complaint, Wasserman has "failed and/or refused" to return the principal of, and pay the interest on,

7

Soley's loans. (Id.) While refusing to reimburse Soley, the Complaint alleges that Wasserman received more than $850,000 in profits from Patriot Group. (Id. ¶ 79.)

Soley alleges that Wasserman, as her "trusted investment advisor," solicited her to invest in five different companies. (Id. ¶ 80.) The Complaint does not, however set forth when the alleged solicitations took place. The Complaint states only that Soley "gave" Wasserman $25,000 to invest in the stock of NOMOS Corporation ("NOMOS"). (Id. ¶ 81.) Wasserman also allegedly solicited Soley to join him and his "best friend," Arthur Stern, III ("Stern"), in investing in the stock of four other companies. (Id. ¶ 82.) In response, Soley allegedly "gave" Wasserman $40,000 to invest in "InSite Vision, Inc. and/or Tapiston" ("TAPI") stock; $20,000 to invest in NexMed, Inc. ("NEXM") stock; $10,000 to invest in Cardima, Inc. ("CRDM") stock; and $20,000 to invest in Neurobiological Technologies, Inc. ("NTII") stock. (Id. ¶ 82.) Whenever Soley asked Wasserman about the stock, he told her to call Stern. (Id. ¶ 83.) After avoiding Soley for months, Stern met with her in June, 2007, but his answers to Soley's questions about the stock were "evasive" and he promised to "get back to her with more information." (Id.) Soley has asked Stern for copies of the brokerage statements regarding the purchase and sale of the stock, but her requests have been ignored. (Id.) Despite Soley's repeated requests in 2007 and 2008 for an accounting, "no accounting for these investments has ever been made and the stock of these companies, or their value, has never been turned over to Mrs. Soley." (Id. ¶ 84.)

Soley ends her recitation of the facts in the Complaint with a number of conclusory factual assertions about the trust she reposed in Wasserman, "who was her brother, investment advisor, and confidant." (Id. ¶ 85.) While the Complaint alleges that

over the years Wasserman consistently refused to provide information and payment to Soley, she says that "[p]rior to 2007, . . . [she] never suspected that Wasserman would not fully pay her all monies owed[,]" and that "[i]t was not until 2007 that . . . [she] had any idea that Wasserman had converted her funds and defrauded her."  (Id. ¶ 86-88.)

## II) Procedural History

Soley instituted this action on October 29, 2008.  On April 23, 2009, Wasserman moved to dismiss.  Soley invokes the Court's federal question, diversity and supplemental jurisdiction.  28 U.S.C. §§ 1331, 1332, 1367.  The parties do not contest jurisdiction.

## DISCUSSION

### III. Motion to Dismiss Standard

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the complaint are true, and draws all reasonable inferences in favor of the plaintiff.  Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).  Incantation of the "elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009).  To avoid dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," that is to say facts that "nudge [] [the plaintiff's] claims across the line from conceivable to plausible . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Plausibility, in turn, requires only that the allegations in the complaint "raise a reasonable expectation that discovery will reveal

evidence" in support of the claim.  Id. at 555; see also Arar v. Ashcroft, 585 F.3d 559, 617 (2d Cir. 2009).

**IV. The Claims**

**a. Securities Fraud**

Soley's securities fraud claim under Section 10(b) of the Exchange Act and Rule 10b-5 in Count I is based on her September, 1991 purchase of a limited partnership interest in Patriot Partners.  (Compl. ¶¶ 90-96.)  While the substantive viability of Soley's securities fraud claim is in doubt, the Court need not address the merits because the claim is clearly time-barred.  Claims under Section 10(b) and Rule 10b-5 arising out of pre-July 30, 2002 activity must be brought within one year after discovery of the facts constituting the violation, but in no event more than three years after the violation itself.  See Glonti v. Stevenson, No. 08 Civ. 8960(CM), 2009 WL 311293, at *5 (S.D.N.Y. Feb. 6, 2009) (citing Lampf, Pleva, Lipkind, Prubis & Pettigrow v. Gilbertson, 501 U.S. 350, 363-64 (1991)).[3]  Wasserman's violation of Section 10(b) and Rule 10b-5, if any, occurred in 1991, when Soley purchased her interest in Patriot Partners.  Soley filed her complaint in 2008, and so her claim is untimely.

Soley's equitable tolling and estoppel arguments are of no moment because "[t]he three year limit is a period of repose," Lampf, 501 U.S. at 363, and is therefore "not subject to tolling, equitable or otherwise." Glonti, 2009 WL 311293, at *10; see also Malhotra v. Equitable Life Assurance Soc'y of the U.S., 364 F. Supp. 2d 299, 305

---

[3] The Public Company Accounting Reform and Investor Protection Act of 2002, Pub. L. No. 107-204, § 804, 115 Stat. 745, 801 (2002), commonly known as Sarbanes-Oxley, extended the statute of limitations for private securities fraud cases.  Claims under Section 10(b) and Rule 10b-5 must now "be brought by no later 'than the earlier of: (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation.'" Plymouth County Ret. Ass'n v. Schroeder, 576 F. Supp. 2d 360, 375 (E.D.N.Y. 2008) (quoting 28 U.S.C. § 1658(b)).  The extended time limitations were not, however, made retroactive. See Glonti, 2009 WL 311293, at *5.  But even if they were, Soley's claim would still be untimely.

10

(E.D.N.Y. 2005) ("a claimant has no more than three years after the occurrence of the conduct inducing the Plaintiff to make its securities purchase to file a section 10(b) or Rule 10b-5 claim.") (internal quotation marks omitted).  Count I of the Complaint is dismissed.

**b. Common Law Fraud**

In Count IV, Soley asserts a claim of common law fraud.  "Under New York law, the elements of common law fraud are 'a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'"  Chanayil v. Gulati, 169 F.3d 168, 171 (2d Cir. 1999) (quoting Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970-71 (2d Cir. 1987)).  Wasserman argues that any fraud claim Soley might have is time-barred.  See N.Y. C.P.L.R. § 213(8) ("an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.").  In response, Soley says that her fraud claim is timely because she could not have discovered Wasserman's fraud until 2007.  Soley also invokes the fraudulent concealment and continuous representation doctrines and claims that Wasserman is equitably estopped from raising a statute of limitations defense.

The basis for Soley's fraud claim is not at all clear, and the Complaint does not satisfy the heightened pleadings requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  To satisfy Rule 9(b), "the complaint must: (1) specify the statement that the speaker contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements where made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). The only statement set forth in the Complaint that might be deemed fraudulent is Wasserman's request for a $150,000 short term loan to Patriot Group. (Compl. ¶ 37-38.) While the Complaint alleges that when Soley provided the loan, Wasserman deposited the money in Soley's Fagenson account, it is unclear how this harmed Soley. Since "damage to the plaintiff" is an element of fraud, Soley has failed to set forth a viable fraud claim. While the Court has serious reservations about the timeliness of Soley's fraud claim, if Soley is able to plead fraud with the requisite particularity, an opportunity to do so will be provided. Count IV of the Complaint is dismissed, with leave to replead.

**c. Fraudulent Conveyance and Breach of Fiduciary Duty**

In Count VIII, Soley asserts a claim of fraudulent conveyance. Soley seeks to set aside the $100,000 withdrawal Wasserman made from Patriot Partners in 2003, and the $850,000 profits Wasserman received from Patriot Partners, as actually or constructively fraudulent conveyances under New York's Uniform Fraudulent Conveyance Act ("UFCA"), N.Y. Debt. & Cred. Law §§ 270-281. (Compl. ¶¶ 139-147.) Count III is for breach of fiduciary duty. Soley contends that Wasserman breached his fiduciary duty under the Partnership Agreement by, among other things, making numerous misrepresentations and false promises to Soley, and failing to "release" her interest in Patriot Partners. (Id. ¶ 108.) Soley also claims that Wasserman breached his fiduciary duty as Soley's "investment advisor and trusted confidant." (Id. ¶ 109.) Wasserman argues that Soley's fraudulent conveyance and breach of fiduciary duty claims also fall short of Rule 9(b)'s heightened pleading requirements.

Claims of actual fraud under New York's UFCA are subject to Rule 9(b); claims of constructive fraud are not. See Apace Commc'ns, Ltd. v. Burke, 522 F. Supp. 2d 509, 519 (W.D.N.Y. 2007) ("Courts have not applied Rule 9(b) to claims of constructive, rather than actual, fraud."). Rule 9(b) also applies to breach of fiduciary duty claims "where the breach is premised on the defendant's fraudulent conduct, such as an attempt to induce action or inaction on the part of . . . investors by means of falsehoods or material omissions." Henneberry v. Suitomo Corp. of Am., 532 F. Supp. 2d 523, 555 (S.D.N.Y. 2007). The heightened pleadings standards do not, however, extend to breach of fiduciary duty claims premised on conduct "not amounting to fraud, such as . . . breach . . . [of the] dut[y] of care, disclosure and loyalty." Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Secs. Corp., No. 00 Civ. 8688(WHP), 2002 WL 362794, at *8 (S.D.N.Y. Mar. 6, 2002).

Soley has not plead her fraudulent conveyance claim based on actual fraud with the particularity required by Rule 9(b). To prove actual fraud under the UFCA, "a creditor must show intent to defraud on the part of the transferor." Drenis v. Haligiannis, 452 F. Supp. 2d 418, 429 (S.D.N.Y. 2006). Soley's conclusory assertion that the transfers Wasserman received from Patriot Partners were part of his "fraudulent scheme" (Compl. ¶ 144) does not satisfy Rule 9(b). While under the UFCA fraudulent intent may be inferred from circumstantial evidence such as "the close relationship between the parties to the transfer," Drenis, 452 F. Supp. at 429, without more, Soley's allegation that Wasserman withdrew funds from Patriot Partners likewise fails to satisfy Rule 9(b). To the extent Count VIII of the Complaint asserts a claim for fraudulent conveyance based on actual fraud, the claim is dismissed with leave to replead. Since constructive fraud

claims are not subject to Rule 9(b), Wasserman's motion to dismiss Soley's constructive fraud under Rule 9(b) claim is denied.

To the extent Soley's breach of fiduciary duty claim is premised on Wasserman's alleged fraudulent conduct – for example, Wasserman's alleged "numerous misrepresentations and material omissions" and "false promises of payments" – the claim fails to satisfy Rule 9(b) for the same reasons Soley's common law fraud claim fails to meet the rule.  Among the Complaint's other shortcomings, it fails to identify the statements Soley contends were fraudulent and why they were fraudulent.  See Lerner v. Fleet Bank, N.A., 459 F.3d at 290.  Thus, to the extent the breach of fiduciary claim in Count III of the Complaint is based on Wasserman's alleged fraudulent conduct, the claim is dismissed with leave to replead.  Since breach of fiduciary duty claims not involving fraudulent conduct are not subject to Rule 9(b), Wasserman's motion to dismiss the remainder of the breach of fiduciary duty claim is denied.

**d. Claims Based on the Harris Stock**

Wasserman argues that any claim based on Soley's 1981 loan of the Harris stock, regardless of how it is styled, is barred by the statute of limitations.  While all of Soley's factual allegations are incorporated into each count of the Complaint, it appears that only her conversion claim is based on the 1981 loan.  In her opposition to the motion to dismiss, however, Soley seems to argue that her fraud claim is also founded on the decades old loan.  Soley contends that she could not have discovered Wasserman's fraud in connection with her loan of the Harris stock until 2007, when Wasserman emailed her saying that "after all these years I do not recall with any degree of clarity the precise back

and forth on the issue." (Compl. ¶ 23.) Soley also invokes various tolling doctrines in a vain attempt to salvage her claims based on the loan.

The Complaint alleges that Wasserman promised Soley that he would return the Harris stock, and pay her between $10,000 and $15,000, on or before August 1, 1982. (Id. ¶ 17.) Any claim Soley had based on the Harris stock, be it for fraud, conversion, or otherwise, accrued on August 1, 1982 or shortly thereafter, and is accordingly time-barred.

As noted, fraud claims must be filed within six years from the date the cause of action accrues, or within "two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). Soley knew that Wasserman had agreed to return the Harris stock on August 1, 1982, when Wasserman failed to return the stock as promised, Soley was on notice of any fraud she now claims. Conversion claims are subject to a three year statute of limitations, see N.Y. C.P.L.R. § 214(3), and such claims "generally accrue[] when the conversion takes place." Fromer v. Fromer, No. 6161-2006, 17 Misc. 3d 1106(A), 2007 WL 2850456, at *3 (Sup. Ct. Queens Co. Sept. 4, 2007). Where, as here, "the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." Johnson v. Gunner, 94 A.D.2d 955, 955 (App. Div. 4th Dep't 1983). Both before and after the date Wasserman was to return the Harris stock, Soley asked for its return and each time her request was denied. (Compl. ¶¶ 20-22.) Assuming, as Soley contends, that Wasserman was her agent or fiduciary, "where [the] right [to demand] grows out of the receipt or detention of money or property by a trustee, agent . . . or other person acting in a fiduciary capacity, the time within

15

which to action must be commenced shall be computed from the time when the person having the right to make the demand discovered the facts upon which the right depends." Fromer, 2007 WL 2850456, at *3 (quoting N.Y. C.P.L.R. § 206(a)(1)). As alleged in the Complaint, Soley knew of her right to demand return of the Harris stock on August 1, 1982. (Compl. ¶ 17.)

Soley's arguments for tolling the statute of limitations are unavailing. Soley first invokes the fraudulent concealment and equitable estoppel doctrines as grounds to toll the statute of limitations. "Under New York law, cases referencing fraudulent concealment rely on the same analysis as that provided for under equitable estoppel. In fact, cases regarding fraudulent concealment as a tolling principle point to the same cases as those which discuss the doctrine of equitable estoppel." Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia, 23 F. Supp. 2d 439, 446 n.4 (S.D.N.Y. 1998) (collecting cases); see also N.Y. Jur. 2d Limitations and Laches § 270 (2010).[4] Equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff "was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Pahlad v. Brustman, 33 A.D.3d 518, 519 (App. Div. 1st Dep't 2006). The defendant's "affirmative wrongdoing" must be the cause of the delay, and the plaintiff's reliance on the misrepresentation must be reasonable. Id. (quoting General Stencils, Inc. v. Chiappa, 18 N.Y.2d 125, 128 (N.Y. 1966). "'Due diligence on the part of the plaintiff in bringing [an] action,' . . . is an essential element of equitable relief." Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (quoting Doe v. Holy See (State of Vatican City), 17 A.D.3d 793, 794

---

[4] Soley discusses the distinction this Court has made between fraudulent concealment and equitable estoppel as those doctrines apply to federal law claims. The discussion is not relevant; "[w]here, as here, a plaintiff seeks to toll a state statute of limitations on purely state law claims, state law rather than federal law governs." In re Rezulin Prods. Liab. Litig., No. 00 Civ. 2843(LAK), 2006 WL 695253, at *1 (S.D.N.Y. Mar. 15, 2006) (internal quotation marks omitted).

(App. Div. 3d Dep't 2005)). And "[t]he plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the . . . equitable estoppel claim 'have ceased to be operational.'" Id. (quoting Holy See, 17 A.D.3d at 796).

On August 1, 1982, Wasserman allegedly failed to abide by his promise to return the Harris stock and to pay Soley $10,000 to $15,000. In Soley's own words, when she asked Wasserman about the Harris stock shortly before it was due to be returned, he was "infuriated" and said that he had "bigger problems to deal with." (Compl. ¶ 20.) While Soley alleges that when she asked Wasserman about the Harris stock in the decades following August 1, 1982, "he told her that he needed to continue to hold onto the Harris stock because he would make her money – and that she should continue to trust and rely upon him as her investment advisor," such statements do not excuse the 26 year, 2-month and 28 day delay from the time Wasserman failed to return the stock to the date Soley commenced this action. Soley's reliance on Wasserman's alleged statements was not reasonable; she did not exercise due diligence in bringing this action; and she has not borne her burden "of showing that the action was brought within a reasonable period of time after the facts giving rise to the . . . equitable estoppel claim . . . ceased to be operational." Abbas, 480 F.3d at 642 (internal quotation marks omitted).[5]

---

[5] Soley contends that because Wasserman was her "fiduciary," her burden in proving equitable estoppel is lessened. It is not at all clear that Wasserman acted as Soley's fiduciary regarding the Harris stock loan. See generally, United States v. Chestman, 947 F.2d 555, 568 (2d Cir. 1991) ("'Mere kinship does not in itself establish a confidential relation.' . . . Rather, the existence of a confidential relationship must be determined independently of a preexisting family relationship." (quoting United States v. Reed, 601 F. Supp. 685, 706 (S.D.N.Y. 1985)). In any event, while "concealment without actual misrepresentation may form the basis for invocation of the doctrine [of equitable estoppel] if there was a fiduciary relationship which gave the defendant an obligation to inform [the] plaintiff of facts underlying the claim," Holy See, 17 A.D.3d at 795, a party to a fiduciary relationship must still satisfy the other elements of estoppel.

Soley maintains that the continuous representation doctrine applies to toll the limitations period because Wasserman was her "investment advisor." "The continuous representation doctrine tolls the running of the statute of limitations on a claim arising from the rendition of professional services only so long as the defendant continues to advise the client 'in connection with the particular transaction which is the subject of the action and not merely during the continuation of a general professional relationship." Booth v. Kriegel, 36 A.D.3d 213, 314 (App. Div. 1st Dep't 2006).  Despite her conclusory assertion to the contrary, Wasserman was not Soley's "investment advisor" with regard to the loan she made of the Harris stock.  An "investment advisor" is defined by statute as a "person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities . . . ." 15 U.S.C. § 80b2(11).  Soley alleges that Wasserman agreed to pay her for lending the Harris stock, not that she agreed to pay him for advice regarding the stock.  Since Soley's claim does not arise out of Wasserman's rendition of professional services, the continuous representation doctrine does not apply.[6]  Soley's claims based on the Harris stock are dismissed.

### d. Accounting, Breach of Contract and Unjust Enrichment

Soley alleges breach of contract, unjust enrichment and accounting claims in Counts II, VI and VII.  Wasserman argues that these claims should be dismissed for failure to satisfy Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While the Complaint is far from pellucid, dismissal under Rule 8(a)(2) is "usually reserved for those

---

[6] There is uncertainty as to whether investment advisors are "professionals" subject to the continuous representation doctrine.  See Wainwright v. Matrix Asset Advisors, No. 05 Civ. 227(DLC), 2004 WL 3418933, at *2 n.2 (S.D.N.Y. July 27, 2004).

cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). With respect to these Counts, the Complaint is not so unintelligible that dismissal for failure to comply with Rule 8(a)(2) is warranted. Wasserman's motion to dismiss Counts II, VI and VII is accordingly denied.

## CONCLUSION

For the foregoing reasons, Wasserman's motion to dismiss is GRANTED in part and DENIED in part. All claims based on Soley's 1981 loan of the Harris stock are DISMISSED. Count I asserting a claim for federal securities fraud is DISMISSED. To the extent the breach of fiduciary duty claim in Count III is based on Wasserman's alleged fraudulent conduct, the claim is DISMISSED with leave to replead. Count IV asserting a claim for common law fraud is DISMISSED with leave to replead. To the extent Soley's fraudulent conveyance claim in Count VIII is based on actual fraud, the claim is DISMISSED with leave to replead. If Soley intends to file an amended complaint, she shall do so within thirty days of entry of this order. The Clerk is directed to close the motion at docket number 10.

Dated: New York, New York
March 1, 2010

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge