UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JUDY W. SOLEY,

Plaintiff,

-against-

PETER J. WASSERMAN,

Defendant.
--------------------------------------------------------X

OPINION AND ORDER
08 Civ. 9262 (KMW) (FM)

On October 29, 2008, Plaintiff Judy W. Soley, a citizen of the State of New York, filed this diversity action against her brother, Defendant Peter J. Wasserman, a citizen of the State of California, asserting a variety of claims arising out Wasserman's conduct as Soley's financial advisor over the past approximately thirty years. After multiple claims in her original complaint were dismissed, Soley filed an amended complaint on May 14, 2010. (See Amended Complaint ("AC") (Dkt. No. 20).) In the AC, Soley asserts claims under New York state law for breach of contract, breach of fiduciary duty, common law fraud, an equitable accounting, and alter ego liability. On July 6, 2010, Wasserman moved to dismiss the AC pursuant to Federal Rules of Civil Procedure 8(a)(1), 12(b)(1), and 12(b)(6). (Dkt. No. 24.)

On February 9, 2011, the Court referred Wasserman's motion to Magistrate Judge Frank Maas for a Report and Recommendation ("R&R"). On August 11, 2011, Judge Maas issued an R&R, recommending that the Court deny Wasserman's Rule 12(b)(6) motion with respect to certain aspects of Soley's accounting claim, but dismiss the remainder of Soley's claims. (Dkt. No. 30.) Both Wasserman and Soley have filed objections to the R&R. (Dkt. Nos. 31 & 32.)

For the reasons stated below, the Court adopts the R&R in part. Accordingly, Wasserman's motion to dismiss the AC is granted in part and denied in part.

## I. Background[1]

The facts of this case are set forth in the R&R, familiarity with which is assumed. The Court restates only those facts that are relevant in addressing the parties' objections to the R&R.

Sometime during the late 1970s and or early 1980s, Wasserman, who had worked for more than thirty years in the securities industry, sought to take a more active role in his sister's financial affairs, assuring her, "this is my field." (AC ¶ 7.) After Soley agreed to end her relationship with her then-financial advisor, Wasserman "took on the role of Soley's agent and trusted financial advisor." (Id.)

### A. Investments

During the following years, at Wasserman's insistence, Soley opened brokerage accounts with multiple firms, including Fagenson & Company, Inc. ("Fagenson"). Soley designated Wasserman as her agent for those accounts, allowing Wasserman full trading authority. Wasserman gained "complete control" over Soley's investments. (Id. ¶ 8.) Soley did not have contact with the brokers associated with her accounts; the communication was through Wasserman. (Id. ¶¶ 11-12.)

Soley, along with Wasserman and Wasserman's close friend, invested in the stock of four companies in 1997 (the "Joint Stock Investments"). Soley's initial investment in the four companies totaled $70,000. (Id. ¶ 46.) As of June 2007, the total value of those investments was $75,469. (Id. ¶ 47.) In 2006 and 2007, Soley made multiple attempts to obtain more information about the status of the Joint Stock Investments but was not successful, even after Wasserman promised to "gather the necessary and appropriate information regarding those investments. (Id. ¶¶ 48-53.)

[1] A court considering a Rule 12(b)(6) motion must "accept[] all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt., LLC, 595 F.3d 86, 91 (2d Cir. 2010).

B. Patriot Partners

On February 25, 1991, Wasserman founded Patriot Partners, L.P., a Delaware limited partnership. The purpose of Patriot Partners was to invest "for its own account in securities and other investment instruments traded on established markets in the United States." (Id. ¶ 14.) Wasserman was the General Partner, and was responsible for all of Patriot Partner's investment decisions. (Id.)

In September 1991, after being solicited by Wasserman, Soley agreed to purchase a limited partnership interest in Patriot Partners, and signed a subscription agreement. A month later, Soley transferred $500,000 from her Fagenson account to her Patriot Partners account to purchase the limited partnership interest. (Id. ¶ 18.) Soley entered into a partnership agreement (the "Partnership Agreement"), under which Wasserman, as general partner, was obligated to "exercise good faith and integrity in handling Partnership affairs." (Id. ¶ 15.) The Partnership Agreement required Wasserman to maintain accurate and complete accounting records, and to provide various financial statements within 60 days after the close of each of the first three fiscal quarters, and within 120 days after the close of each fiscal year. (Id. ¶ 16.) The Partnership Agreement also required Wasserman to "take all action which may be necessary or appropriate for the preservation of the Partnership's properties and the conduct of its business." (Id. ¶ 17.) On October 19, 1998, Soley transferred an additional $150,000 to Patriot Partners from her Fagenson account, at the request of Wasserman. (Id. ¶ 19.) This amount was never credited to Soley's Patriot Partners account, because it was deposited into another one of Soley's investment accounts. (Id.)

Between 1991 and 2004, Soley never received any of the financial documents to which she was legally entitled under the Partnership Agreement other than an occasional letter. The

letters that Soley did receive were misleading. (Id. ¶ 20.) Although Wasserman returned $552,361 to Soley, Patriot Partners still owes Soley at least $423,000 in "unreturned capital." (Id.) This amount does not include the $150,000 that Soley transferred to Patriot Partners from her Fagenson account in October 1998. (Id.)

On or about December 31, 1995, Patriot Partner's certificate of limited partnership was canceled by the Secretary of State of Delaware "for neglect, refusal, or failure to pay its annual taxes." (Id. ¶ 23.) Wasserman never informed Soley of this event. (Id.) Patriot Partners continued to operate after the cancelation of its certificate.

Beginning in 2002, Soley repeatedly told Wasserman that she wanted Patriot Partner's affairs wound up, and her shares returned to her. On December 29, 2004, Wasserman sent Soley an email, stating that he "had not ended Patriot Partners as of yet" but that he expected to do so in 2005. (Id. ¶ 22.) In 2008, Soley learned, through counsel, about the cancellation of Patriot Partners' certificate. (Id. at 23.)

C. Patriot Group

In November 1992, Wasserman founded Patriot Group, a New York state general partnership with only two partners: himself and Soley's son, John. (Id. ¶ 24.) The purpose of Patriot Group was to profit from "hot issues," defined as newly issued stocks that sell at a premium over the public offering price on the first day of trading. (Id. ¶ 25.)

In or about November 1992, Wasserman asked Soley to loan Patriot Group $200,000 evidenced by a promissory note. In 1993, Soley loaned Patriot Group "an additional $225,228." (Id. ¶ 26.) Wasserman promised to pay Soley interest on her loans "at a rate of 7%." (Id.) Soley has never received an interest payment from Patriot Group. (Id.)

In 1994, Soley opened an account at Merrill Lynch, and funded it with $200,000 in tax-free bonds so that Patriot Group would have access to additional funds. (Id. ¶ 27.) That $200,000 was to be used "for short term loans only." (Id.)

On or about July 10, 1998, at Wasserman's request, Soley wrote a $150,000 check from her Merrill Lynch account, payable to "Patriot Group/Fagenson." (Id. ¶ 37.) Wasserman represented to Soley that this sum "was to be used as a short-term loan" to Patriot Group. (Id.) However, after receiving the check from Soley, Wasserman deposited the check into Soley's personal account at Fagenson without Soley's knowledge. Soley claims that, when she subsequently transferred $150,000 from her Fagenson account to her Patriot Partner's account on October 19, 1998, she was in effect transferring the money she believed she had loaned to Patriot Group three months earlier. (Id. ¶ 37; ¶ 19.) Because the July 1998 check was drawn on a Merrill Lynch account, Soley incurred interest at the rate of 9.125% from the date it was negotiated. (Id. ¶ 37.) Wassermann told Soley that Patriot Group would be responsible for all fees associated with her Merrill Lynch account, but Soley has paid those fees. (Id. ¶ 27.)

Between 1992 and 1998, Soley extended seventeen loans to Patriot Group, totaling more than $1.4 million. (Id. ¶ 29.) These loans gave Soley "a beneficial interest" in Patriot Group. (Id. ¶ 28.) Patriot Group has repaid Soley only $877,150, leaving an outstanding balance of $575,487. (Id. ¶ 29.) As noted above, Soley has never been paid interest on these loans, despite Wasserman's promise that she would be paid interest at a rate of 7%. (Id. ¶ 30.)

In 1999, Soley wrote to Wasserman about closing Patriot Group and about repayment of her loans. (AC ¶ 38.) In October 2006, Soley again wrote to Wasserman, as well as to Patriot Group's accountant, Peter Kamras. In January 2007, Kamras provided Soley with a spreadsheet which purported to account for all of Soley's loans. (Id. ¶ 35.) According that spreadsheet,

Patriot Group has paid Soley $240,150 more than she was owed. (Id. ¶ 36.) Soley contends that the spreadsheet failed to account for six loans, totaling $690,000, that Soley had made to Patriot Group between 1994 and 1998. (Id.)

Wasserman and Soley exchanged a series of letters between December 2006 and February 2007 addressing these discrepancies. On January 25, 2007, Wasserman sent Soley a letter promising to "respond as promptly as possible" to her inquiries, provided that she send him documentation supporting her claim that Patriot Group still owed her money. (Id. ¶ 40.) On February 2, 2007, Soley provided Wasserman with the documentation that he had asked for. On February 15, 2007, Wasserman wrote Soley, stating that Patriot Group had actually overpaid her, and that, with respect to any loans advanced during or prior to 1994, "there no longer exists any legally enforceable obligation." (Id. ¶ 42.)

E. Procedural History

Soley commenced this action on October 29, 2008. (Dkt. No. 1.) On April 23, 2009, Wasserman moved to dismiss the complaint. (Dkt. No. 10.) On March 10, 2010, the Honorable Paul A. Crotty, to whom this case was originally assigned, granted in part and denied in part Wasserman's motion. (Dkt. No. 17.) The motion to dismiss was denied with respect to Soley's breach of contract, unjust enrichment, and accounting claims. Soley was granted leave to replead claims for breach of fiduciary duty, fraud, and fraudulent conveyance. (Id.)

On May 14, 2010, Soley filed an AC, asserting New York state law claims for breach of contract, breach of fiduciary duty, common law fraud, an accounting, and alter ego liability. (Dkt. No. 20.) On July 6, 2010, Wasserman moved to dismiss the AC pursuant to Federal Rules of Civil Procedure 8(a)(1), 12(b)(1), and 12(b)(6). (Dkt. Nos. 24 & 25.) Wasserman contends that dismissal is required by Rules 8(a)(1) and 12(b)(1) because Soley has failed to establish that

the amount in controversy exceeds $75,000. (Dkt. No. 25 at 18-21.) Wasserman further contends that the AC fails to state a claim under Rule 12(b)(6). (Id. at 21-22.)

On February 9, 2011, Wasserman's motion was referred to Judge Maas. On August 11, 2011, Judge Maas issued an R&R, recommending that the Court deny Wasserman's Rule 12(b)(6) with respect to certain aspects of Soley's accounting claim, but dismiss the remainder of her claims. (Dkt. No. 30.) Both Wasserman and Soley have filed objections to the R&R. (Dkt. Nos. 31 & 32.)

## II. Standard of Review

### A. Report and Recommendation

When reviewing an R&R, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

The court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997) (internal citations omitted); see also Huelbig v. Auroroa Loan Servs., LLC, No. 10 cv. 6215, 2011 WL 4348275, at *1 (S.D.N.Y. Sept. 16, 2011) (Holwell, J.) ("[T]he court is required to make a de novo determination of those portions of a report to which specific objection is made . . . by reviewing the Report, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies.") (citations omitted). However, to the extent that a party makes only "conclusory or general objections, or simply reiterates the original arguments, the [c]ourt reviews the Report and Recommendation only for clear error." See Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343, 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) (Knapp, J.).

The Court will review for clear error those portions of the R&R to which the parties do not object. See Fed. R. Civ. P. 72(b) advisory committee's note; see also Rodriguez v. Morton, No. 04 Civ. 3787, 2009 WL 414033, at *1 (S.D.N.Y. Feb. 13, 2009) (Batts, J.). Pursuant to "clear error" review, the Court considers whether the Report—or an applicable provision thereof—is free of "clear error on the face of the record." Fed. R. Civ. P. 72(b) advisory committee note; Rodriguez, 2009 WL 414033, at *1.

B. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must have pleaded sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949 (2009). Where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570. The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## III. Analysis

### A. Portions of the R&R to Which There Have Been No Objections

#### 1. Amount in Controversy

Wasserman moves for dismissal of the entire complaint for lack of subject matter jurisdiction pursuant to Rules 8(a)(1) and 12(b)(1), asserting that Soley failed to establish that the amount in controversy exceeds $75,000. (Dkt. No. 25 at 18-21.)

The R&R finds that Soley's claim for an accounting satisfies the amount in controversy requirement. See R&R at 16 (finding that Soley's complaint "unquestionably seeks an accounting of Soley's financial affairs," and that Wasserman has "utterly failed" to prove to a legal certainty that the value of those loans for which Soley seeks an accounting is no more than $75,000). Neither party has objected to this finding.

The Court has reviewed this portion of the R&R and finds it to be well-reasoned and free of any clear error on the face of the record. Accordingly, the Court adopts this portion of the R&R.

2. Alter Ego Liability

In her claim for "alter ego liability," Soley alleges that Patriot Partners and Patriot Group were "the alter egos of Wasserman" and that Wasserman used these two entities to commit "fraud and wrongs . . . which caused wrongful and inequitable consequence and injury to [her]." (AC ¶¶ 102-03.) Soley asks the Court to "disregard the partnership forms" and hold Wasserman personally liable for the frauds he committed. (Id.) Wasserman has moved to dismiss this claim, contending that "alter ego liability" or "veil piercing" is not an independent cause of action. (Def. Mem. at 16.)

The R&R recommends dismissal of this claim, finding that, because both Patriot Partners and Patriot Group are partnerships—not corporations—there is no need to pierce any corporate veil in order to hold Wassermann individually and personally liable for debts and obligations. (R&R at 36.) The R&R further notes that "New York does not recognize an independent cause

of action to pierce the corporate veil; rather it is an assertion of facts and circumstances which will persuade the court to impose corporate obligation on its owners." (Id. at 36-37 (citing Bd. Of Mgrs. of the 195 Hudson St. Condo v. Jeffrey M. Brown Assocs., Inc., 652 F. Supp. 2d 463, 478 n.10 (S.D.N.Y. 2009)).) Neither party has objected to this finding.

The Court has reviewed this portion of the R&R, and finds it to be well-reasoned and free of any clear error on the face of the record. Accordingly, this portion of the R&R is adopted. The Court grants Wasserman's motion to dismiss Soley's claim for alter ego liability.

B. Portions of the R&R to Which There Have Been Objections

1. Breach of Contract Claim

Wasserman has moved to dismiss Soley's breach of contract claim pursuant to Rule 12(b)(6). The R&R recommends dismissal of this claim, and Soley has objected to this recommendation. The Court must thus conduct a de novo review of this portion of the R&R.

For the reasons that follow, the Court ADOPTS this portion of the R&R, and grants Wasserman's motion to dismiss Soley's breach of contract claim.

a. Applicable Law

"To prevail on a breach of contract claim under New York law, a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." Williams v. Time Warner, No. 09 cv. 2962, 2010 WL 846970, at * 6 (S.D.N.Y. Mar. 3, 2010) (Sullivan, J.) (citing Terwilliger v. Terwilliger, 206 F. 3d 240, 245-46 (2d Cir. 2000)).

New York law recognizes implied contracts as well as express contracts. Jemzura v. Jemzura, 36 N.Y. 2d 496, 503-04 (1975). "[A]bsent a written agreement between the parties, 'a contract may be implied where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct.'" Bader v. Wells Fargo Home

Mortg. Inc., 773 F. Supp. 2d 397, 413 (S.D.N.Y. 2011) (Holwell, J.) (citations omitted); see also Hercules Inc. v. United States, 516 U.S. 417, 424 (1996) ("An agreement implied in fact is founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.").

"An implied-in-fact contract is just as binding as an express contract arising from declared intention, since in law there is no distinction between agreements made by words and those made by conduct." Bader, 773 F. Supp. 2d at 413 (citations and quotation marks omitted). "However, 'a contract cannot be implied in fact where the facts are inconsistent with its existence ... or where there is an express contract covering the subject-matter involved.'" Id. (citing Ludemann Elec., Inc. v. Dickran, 74 A.D. 3d 1155, 903 (2d Dep't 2010)).

b. Application

In the AC, Soley states that she and Wasserman entered into a "valid, binding, and enforceable agreement and contract . . . formed through the course of the parties' dealings . . . [under which] Wasserman agreed to perform certain services on behalf of Soley pursuant to the prevailing standard of care and professionalism in the relevant industry." (AC ¶¶ 55-56.) These services Soley states Wasserman agreed to perform consisted of Wasserman providing Soley with financial and investment advice and serving as her financial advisor. Soley states that she performed her obligations under the contract, but does not define those obligations. Soley states that Wasserman breached numerous obligations in the contract, by, inter alia, failing to maintain adequate records of Soley's finances, failing to provide financial and investment advice consistent with the prevailing standard of care, and failing to provide Soley and her authorized

representatives complete copies of Soley's records. Finally, Soley states that Wasserman's multiple breaches of contract have directly and foreseeably damaged her. (AC ¶¶ 56-59.)

The R&R interprets the AC as attempting to allege a breach of an implied-in-fact contract rather than an express contract,[2] and this Court agrees. See AC ¶ 55 ("[T]he contract was formed through the course of the parties' dealings and based on their communications about the services Defendant would provide to Plaintiff as her trusted financial advisor."). Accordingly, the Court will evaluate Soley's breach of contract claim under an implied-in-fact contract theory.

The R&R recommends dismissal of Soley's breach of implied-in-fact contract claim, finding that Soley "has failed to describe a course of conduct that would define [the contract']s terms." (R&R at 21.) Soley has objected to this finding, asserting that dismissal of her breach of implied contact claim at this stage is "inappropriate," because "it is a factual matter as to whether an implied-in-fact contract exists, and, if it does, the extent of its terms." (Soley Obj. at 2.)

Although the allegations in the AC allege that Wasserman played a significant role in Soley's financial affairs, and that Wasserman broke some of the commitments that he made to Soley, the AC alleges neither (1) specific terms of a purported agreement, nor (2) specific interactions between Wasserman and Soley that would establish those specific terms and demonstrate the parties' intent to be bound by those terms.

Soley alleges that, "under the terms of the contract," Wasserman agreed to provide her with financial and investment advice, and to serve as her financial manager. (AC ¶ 56 (emphasis added).) However, Soley does not state what specific terms were agreed upon between herself and Wasserman. Among other deficiencies, Soley does not state (1) how Wasserman and Soley

[2] The R&R found that Soley does not sufficiently allege the formation of an express contract because the AC does not identify any specific written or oral communications between the parties that establish the terms of Soley's alleged contract with Wasserman or Wasserman's intention to be bound by those terms. (R&R at 22.)

defined their relationship at the outset; (2) with some exceptions, what exact kinds of records Wasserman agreed to maintain in return for managing her money; (3) when and how often Wasserman was supposed to supply Soley with those records; (4) in what form Soley was supposed to receive those records; (5) with some exceptions, what kind of interest, if any, Soley was to supposed to receive on her investments; (6) when and how often that interest was to be paid; and (7) what kind of benefit Wasserman was receiving as her advisor.

Nor are there allegations that the course of conduct between Wasserman and Soley actually provided for those specific terms. There are no allegations that Soley and Wasserman engaged in a pattern of consistent interaction that established terms of an implied-in-fact contract to which Wasserman agreed to be bound and that he later breached. As R&R noted, "Soley fails to allege that Wasserman ever, in fact, maintained adequate records, provided Soley with sound financial advice, or furnished her with complete copies of records upon her request." (R&R at 22.) In other words, there are no specific allegations demonstrating that, beyond agreeing to invest her money, Wasserman ever agreed to be bound by any specific standard of conduct. See Beth Israel Med. Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F. 3d 573, 582 (2d Cir. 2006) ("On the Record before us, we cannot say that the parties' course of conduct provides any evidence of the adoption of such specific terms.").

For the foregoing reasons, the Court dismisses Soley's breach of contract claim, without prejudice and with leave to replead that claim. If Soley can allege more specific facts about the terms of any implied-in-fact contract between herself and Wasserman—including the parties' intent to be bound by those terms and the ways in which those terms were breached—she may be able to sufficiently allege a breach of contract claim. The Court thus grants Soley leave to replead her breach of contract claim with greater specificity.

2. Breach of Fiduciary Duty Claim

Wasserman has moved to dismiss Soley's breach of fiduciary duty claim pursuant to Rule 12(b)(6). The R&R recommends dismissal of this claim, and Soley has objected to this recommendation. The Court must therefore conduct a de novo review of this portion of the R&R.

For the reasons that follow, the Court does not adopt this portion of the R&R, and accordingly denies Wasserman's motion to dismiss Soley's breach of fiduciary claim.

a. Applicable Law

A fiduciary duty is found "when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." Reuben H. Donnelley Corp. v. Mark I Marketing Corp., 893 F. Supp. 285, 289 (S.D.N.Y. 1995) (Conner, J.) "Whether one party is a fiduciary of another depends on the relationship between the parties." Id.

"To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary relationship; (2) misconduct by defendant constituting a breach of its fiduciary duty to plaintiff; and (3) damages to plaintiff directly caused by defendant's misconduct." Sokol Holdings, Inc. v. BMB Munai, Inc., 726 F. Supp. 2d 291, 305-06 (S.D.N.Y. 2010) (Wood, J.) (citing Berman v. Sugo LLC, 580 F. Supp. 2d 191, 204 (S.D.N.Y.2008)).

With respect to the first element, "[i]t is undisputed under New York law that general partners owe a fiduciary duty to the limited partners of the partnership." Anwar v. Fairfield Greenwich Ltd., 728 F.Supp.2d 372, 439 (S.D.N.Y. 2010) (Marrero, J.). When partners continue to operate a partnership after the partnership ends, "they in effect create a new partnership at will." Peirez v. Queens P.E.P. Assoc., Corp., 148 A.D. 2d 596, 597 (2d Dept. 1989). The

fiduciary relationship continues "as long as the partnership in fact exists." Ebker v. Tan Jay Intern. Ltd., 741 F. Supp. 448, 469 (S.D.N.Y. 1990) (Cooper, J.). A fiduciary relationship may also exist between a financial advisor and his or her client, if the financial advisor possesses discretionary authority to manage the client's accounts. Howell v. Freifeld, 631 F. Supp. 1222, 1224 (S.D.N.Y. 1986) (Leisure, J.).

With respect to the second element of a breach of fiduciary duty claim, a court must identify the particular obligations owed before determining whether there has been a breach. Ross v. FSG PivatAir, Inc., No. 03 cv. 7292, 2004 WL 1837366, at *7 (S.D.N.Y. Aug. 17, 2004 (Buchwald, J.). One such duty is the duty "to keep accurate and complete records concerning transactions entrusted to him." Shlomchik v. Richmond 103 Equities Co., 662 F. Supp. 365, 375 (S.D.N.Y. 1986) (Newman, J.).

Finally, the third element requires that the plaintiff show causation. Sokol Holdings, 726 F. Supp. 2d at 306. Under New York law, "the level of causation required in breach of fiduciary duty . . . cases depends on the type of remedy sought." LNC Invs., Inc. v. First Fid. Bank, N.A. New Jersey, 173 F.3d 454, 465 (2d Cir. 1999) (citations omitted). When the plaintiff seeks money damages, she "must establish that the alleged breach of fiduciary duty was both a 'but for' and proximate cause of [her] damages." Sheehy v. New Century Mortg. Corp., 690 F. Supp. 2d 51, 64 (E.D.N.Y. 2010). When the remedy sought is restitution, the plaintiff need only show that the breach was a "substantial factor" contributing to the plaintiff's injury. LNC, 173 F.3d at 465 (internal quotation marks omitted).

b. Application

Soley states that Wasserman, as her financial advisor, owed her fiduciary duties at all material times, and that he repeatedly breached those duties. (AC ¶¶ 62-63.) The R&R recommends dismissal of Soley's breach of fiduciary duty claim, finding that, although there was a fiduciary relationship between Soley and Wasserman with respect to Patriot Partners and with respect to certain investment accounts, the AC "is utterly devoid of any allegations from which the Court could infer that Soley has suffered any financial loss as a result of Wasserman's alleged misconduct related to her investment accounts," (R&R at 27-28), or that Wasserman's "failure to keep [] records was a substantial factor in preventing the return of her funds." (R&R 27-28; 29.)

1. Element 1- Fiduciary Relationship

The Court agrees that Wasserman and Soley had a fiduciary relationship with respect to (1) Patriot Partners, and (2) investment accounts over which Wasserman had full trading authority. Neither party has objected to that particular finding.

The R&R found that Wasserman and Soley did not have a fiduciary relationship with respect to Patriot Group, because Soley merely loaned Wasserman money. See R&R 26 (citing BCH Interim Funding, L.P. v. Finantra Capital, Inc., 283 F. Supp. 2d 968, 989 (S.D.N.Y. 2003) ("[T]he relationship between a lender and borrower is not fiduciary in nature.").) Soley has objected to this finding, stating that she was more than a lender, because her loans to Patriot Group made her the owner of a beneficial interest in Patriot Group. (Soley Obj. at 4; see also AC ¶ 28.)

Soley has not offered any facts to suggest that she and Wasserman had any relationship beyond that of a lender and borrower with respect to Patriot Group. A beneficial interest is defined as "[a] right or expectancy in something (such as a trust or an estate), as opposed to legal

title to that thing." Black's Law Dictionary (9th ed. 2009). Soley has not explained how the term "beneficial interest" means anything beyond that of a lender and borrower in the context of Patriot Group. Nor has she cited any documentation surrounding her role in Patriot Group.[3] The law is clear that "the relationship between a lender and borrower is not fiduciary in nature." BCH Interim Funding, 283 F. Supp. 2d at 989; see also Village On Canon v. Bankers Trust Co., 920 F. Supp. 520, 532 (S.D.N.Y. 1996) (Koeltl, J.) ("[U]nder New York law no fiduciary relationship arises from a long-standing debtor-creditor or creditor-guarantor relationship as alleged in the Complaint."); Bank Leumi Trust Co. of N.Y. v Block 3102 Corp.,180 A.D. 2d 588, 589 (1st Dep't 1992) ("The legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or its guarantors."). The Court thus agrees that there is no fiduciary relationship between Soley and Wasserman with respect to Patriot Group.

2. Elements 2 - Breach

The AC cites ten examples of misconduct that allegedly amount to a breach of Wasserman's fiduciary duty. Specifically, Soley alleges that Wasserman knowingly:

- Failed to maintain adequate and accurate records of her investments and to deal with her honestly;
- Failed to represent her interests, rather than the interests of others, including other clients or companies in whom Wasserman invested her funds;
- Failed to provide unbiased, objective and unconflicted professional financial advice;
- Dominated and controlled her financial affairs without regard to her interests;
- Utilized a margin account for long-term loans, which was contrary to her best interests;
- Prevented her from receiving access to information regarding her investment portfolio;
- Engaged in self-dealing, by, among other things, failing to disclose fully material conflicts of interest that existed with regard to the investments he made and continued to retain for her account;
- Maintained inadequate, misleading and inaccurate records of her investments and finances;

[3] Documentation surrounding Patriot Group was attached to the Original Complaint, but not to the AC.

- Failed to provide accurate information to her and knowingly provided her false, misleading, or incomplete information regarding her financial affairs; and
- Failed to provide complete copies of the records requested by her.

(AC ¶¶ 63(a)-(j)).

The R&R finds that the assertion that Wasserman failed to provide unbiased, objective, and non-conflicted advice is conclusory and must be disregarded. (R&R at 27.) Beyond that, the R&R does not address breach.

Although some of Soley's assertions of breach are conclusory, the AC offers many specific allegations of Wasserman failing to maintain accurate and adequate records, and failing to provide her with the information she has requested. In addition, Soley alleges that Patriot Partners owes her at least $423,000 in "unreturned capital." (AC ¶ 20.) The Court thus finds that Soley has sufficiently alleged a breach of fiduciary duty.[4]

3. Elements 3 - Causation

With respect to causation, the R&R recommends dismissal of Soley's breach of fiduciary duty claim because the AC "is utterly devoid of any allegations from which the Court could infer that Soley has suffered any financial loss as a result of Wasserman's alleged misconduct related to her investment accounts." (R&R at 27-28). The R&R also finds that "Soley has failed to set forth any facts from which one could infer that [Patriot] Partners did not lose money after she made capital contributions, and therefore, had sums beyond those that Wasserman returned to

[4] However, some of Soley's assertions in the AC cannot be used to support her breach of fiduciary claim. For example, Soley states that Wasserman "utilize[ed] a margin account for long-term loans, which was contrary to [her] best interests." (AC ¶ 63(e).) Soley has failed to establish that Wasserman owed her any fiduciary duties with respect to the Merrill Lynch account. Wasserman had to secure Soley's permission to advance funds from her Merrill Lynch account to Patriot Group, and thus, it was not a discretionary account. (See R&R at 28.) Accordingly, this assertion cannot be used to support Soley's breach of fiduciary duty claim.

The Court also finds that the assertions that (1) Wasserman failed to provide unbiased, objective and non-conflicted professional advice and (2) that Wasserman engaged in self dealing are conclusory and not supported by the allegations contained in the AC. Those assertions, therefore, cannot be used as support for Soley's breach of fiduciary claim.

her in 2004 and 2006 to which she is entitled." (R&R at 29.) In other words, the R&R finds that Soley's breach of fiduciary duty claim must be dismissed because Soley has failed to connect her monetary loss to any breach by Wasserman.

The R & R's conception of monetary loss is too narrow, because it does not include losses due to loss of opportunities to make money. As noted above, Soley has adequately alleged a fiduciary relationship (with respect to certain investments) and a breach of fiduciary duty. Throughout the AC, Soley alleges that Wasserman failed to provide her with accurate accounting with respect to her investments. This accounting would have enabled Soley to be adequately informed of the status of her investments. Wasserman's failure to provide Soley with records and reports of her finances damaged Soley. Soley may be able to establish that her lack of access to the documentation chronicling her investments caused her losses insofar as they prevented her from making further financial decisions based on accurate, complete information.[5] Cf. BLT Restaurant Group LLC v. Tourondel, No. 10 cv. 064882011, WL 3251536, at * 7 (S.D.N.Y. July 19, 2011) (Daniels, J.) (denying a motion to dismiss a breach of fiduciary duty claim, finding that the "the loss of a lucrative . . . opportunity" was "sufficient for pleading purposes.").

In addition, with respect to economic loss, accurate accounting and documentation from Wasserman are the only means by which Soley can obtain the information she needs to determine whether the decline in value in her accounts is traceable to Wasserman.

For the foregoing reasons, the Court declines to adopt this portion of the R&R. The Court denies Wasserman's motion to dismiss Soley's breach of fiduciary duty claim, but grants the motion with respect to Patriot Group.

---

[5] For example, in 2008, Soley learned from her lawyer that, back in 1995, the state of Delaware had cancelled Patriot Partner's certificate of limited partnership. (AC ¶ 23.) Between 1991 and 2006, Soley invested over $500,000 in Partners. (Id. ¶ 20.) Thus, for over ten years, Soley was making investments into a partnership that had ceased to be a legal entity.

3. Common Law Fraud Claim

Wasserman has moved to dismiss Soley's common law fraud claim pursuant to Rule 12(b)(6). The R&R recommends dismissal of this claim, and Soley has objected to this recommendation. However, her objection does not speak directly to any finding outlined in the R&R. Rather, in a conclusory manner, Soley simply restates (partially) the elements of a fraud claim. Therefore, the Court will review this portion of the R&R for clear error. Pearson-Fraser, 2003 WL 43367, at *1.

a. Applicable Law

"The elements of common law fraud under New York law are: (1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff." Anwar, 728 F. Supp. 2d at 414.

Although fraud claims typically involve misrepresentations or omissions of material facts, "the failure to fulfill a promise to perform future acts," (or statements of future intent) can support a fraud action provided that "there existed intent not to perform at the time the promise was made." Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (citations omitted) (emphasis added).

For the reasons that follow, the Court adopts this portion of the R&R, and thus, grants Wasserman's motion to dismiss Soley's common law fraud claim.

b. Application

In the AC, Soley identifies multiple "material misstatements" of fact that form the basis of her fraud claim. (See R&R 30-31.) The R&R found that all but two of those misstatements were promises or statements of future intent. (R&R at 31.) The R&R recommends that the

Court dismiss Soley's fraud claims to the extent that they are predicated on those statements of future intent or promise, because "Soley has failed to allege facts which plausibly show that Wasserman had a present intention not to perform when he made his alleged promises." (Id.)

Soley also seeks to rely on Wasserman's allegedly false statement that "there no longer existed any legally enforceable obligation with respect to [Soley's] claims." (AC ¶¶ 42; 80.) The R&R found that this statement was not actionable, because "Soley has not shown why it is plausible that she could have reasonably relied to her detriment on her brother's opinion that he no longer had any legally enforceable obligation." (R&R at 32.)

Next, Soley seeks to rely on Wasserman's allegedly false statement surrounding the $150,000 check she wrote to Patriot Group. (AC ¶ 37.) As noted above, Soley drew a check payable to "Patriot Group/Fagenson" in the amount of $150,000 against her Merrill Lynch account. Although she intended this to be a loan to Patriot Group, the proceeds were, instead, deposited into her Fagenson personal account. (Id.) Soley subsequently wrote another $150,000 check from that Fagenson account for an investment in Patriot Partners, not realizing that the Fagenson account contained the funds from her Merrill Lynch account that she previously had intended to lend to Patriot Group. (Id. ¶ 19.). The Court agrees that "Soley's theory, to say the least, is perplexing." (R&R at 33.) As explained in the R&R:

> Soley alleges, in substance, that she intended to spend $300,000 at Wasserman's request, but, as a result of his financial skullduggery, was able to transfer (and presumably lose) only half that amount. Precisely how this amounts to fraud is not explained. In any event, even if aspects of this alleged scheme somehow involved material misstatements or omissions upon which Soley reasonably relied, the Amended Complaint suggests that Soley did not suffer any pecuniary damage as a result of these particular transactions since she apparently saved –rather than lost – $150,000. It follows that Soley has not plausibly alleged that she was defrauded in connection with the $150,000 loan she thought she had made.

(Id.) Finally, Soley seeks to rely upon several alleged material omissions of fact. The R&R finds these omissions to be wholly conclusory, or not material, and the Court agrees.

The Court has reviewed this portion of the R&R, and finds it to be well-reasoned and free of any clear error on the face of the record. Accordingly, the Court grants Wasserman's motion to dismiss Soley's common law fraud claim.

4. Accounting Claim

Soley seeks an "an order requiring Wasserman to provide a complete, open and honest accounting of her financial affairs and assets, and to provide complete records of her financial affairs and assets." (AC ¶ 96.)

The R&R recommends that "Soley is entitled to an accounting with respect to [Patriot] Partners and the subsequent partnership-at-will," but not with respect to Patriot Group, because there was no fiduciary relationship between Soley and Wasserman with respect to Patriot Group. (R&R at 36.)

Wasserman has not objected to the portion of the R&R granting Soley an accounting of her investments with Patriot Partners. Soley, however, has objected to this portion of the R&R, asserting that she is also entitled to an accounting of her investments with Patriot Group.

a. Applicable Law

Under New York law, "a plaintiff seeking an accounting, which is an equitable remedy, must allege both a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary duty by the defendant." Bezuszka v. L.A. Models, Inc., No. 04 cv. 7703, 2006 WL 770526, at *17 (S.D.N.Y. Mar. 24, 2006) (Buchwald, J.). See also Palazzo v. Palazzo, 121 A.D. 2d 261, 264 (1st Dep't 1986).

The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property. Kramer v. Lockwood Pension Services, Inc., 653 F. Supp. 2d 354, 396 (S.D.N.Y. 2009) (Batts, J.) (citing Wilde v. Wilde, 576 F. Supp. 2d 595, 607 (S.D.N.Y. 2008)). If a plaintiff is successful in an accounting claim, in addition to returning the property, a fiduciary must return any profits generated by the use of the property. Wilde, 576 F. Supp. 2d at 607 (Cedarbaum, J.).

b. Application

For the reasons discussed above,[6] the Court has found that there was no fiduciary relationship between Soley and Wasserman with respect to Patriot Group. Accordingly, the Court finds that Soley is entitled to an accounting with respect to Patriot Partners and those investment accounts over which Wasserman had discretionary authority, but not with respect to Patriot Group.[7]

## IV. Conclusion

For the foregoing reasons, the Court adopts the R&R in part.

The Court GRANTS Wasserman's motion to dismiss Soley's claims for alter ego liability and for common law fraud. The Court dismisses those claims with prejudice, because any attempt by Soley to replead the claims would be futile. The Court GRANTS Wasserman's motion to dismiss Soley's breach of contract claim, without prejudice with leave to replead the

---

[6] See supra Section III.B.2.

[7] The R&R states that "Soley is entitled to an accounting." (R&R at 36.) Wasserman has asked that the Court decline to adopt that precise language. He states that there are numerous defenses he wishes to raise to Soley's accounting claim, which will be developed through discovery. He asks the Court to instead hold that "Soley will be entitled to the equitable remedy of accounting if and only if she prevails on a cause of action which defendant has not yet answered." (Dkt. No. 34.) Wasserman is correct that the impact of the Court's Opinion and Order is to permit Soley's claim for accounting to survive beyond a motion to dismiss.

claim. The Court DENIES Wasserman's motion to dismiss Soley's breach of fiduciary duty claim, but finds that there was no fiduciary relationship with respect to the Patriot Group. The Court DENIES Wasserman's motion to dismiss Soley's claim for an equitable accounting, but grants the motion with respect to the Patriot Group.[8]

If Soley wishes to replead her breach of contract claim, she must do so by Friday, October 7, 2011.

By no later than October 28, 2011, the parties shall submit via facsimile (1) a joint status letter stating (a) how they intend to proceed; (b) whether they wish to be referred to a magistrate judge for settlement discussions; and (c) whether, in the event of trial, they consent to trial by a magistrate judge; and (2) a scheduling order with all blanks filled in, setting a Ready Trial date by December 13, 2011, at 9:30 a.m. A scheduling order and other relevant documents will be forwarded under separate cover.

SO ORDERED.

Dated: New York, New York
September 29, 2011

Kimba M. Wood
United States District Judge

[8] Wasserman asks the Court to award him attorney's fees and costs. The Court declines to consider Wasserman's request at this time, as it has denied Wasserman's motion to dismiss with respect to two of Soley's claims.