UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JUDY W. SOLEY,                                  :
                                                :
                     Plaintiff,                 :
                                                :               **OPINION & ORDER**
           -against-                            :
                                                :               08 Civ. 9262 (KMW) (FM)
PETER J. WASSERMAN,                             :
                     Defendant.                 :
------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

      Plaintiff Judith W. Soley brings this diversity action against her younger brother, Defendant Peter J. Wasserman, asserting a variety of claims arising out Wasserman's conduct as Soley's financial advisor over approximately the past thirty years. On May 14, 2010, after multiple claims in her original complaint were dismissed, Soley filed an Amended Complaint. [Dkt. No. 20]. On July 6, 2010, Wasserman moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a)(1), 12(b)(1), and 12(b)(6). [Dkt. No. 24]. The Court granted in part and denied in part Wasserman's motion to dismiss on September 29, 2011. *See Soley v. Wasserman*, 823 F. Supp. 2d 221, 225 (S.D.N.Y. 2011) (Wood, J.) [Dkt. No. 36]. In relevant part, the Court denied the motion to dismiss Soley's claims for breach of fiduciary duty and equitable accounting.

      Following discovery, both parties now move for summary judgment. (*See* Def.'s Mot. for S.J. & In Limine Relief [Dkt. No. 62]; Pl.'s Mot. for Partial S.J. [Dkt. No. 66]). In the alternative, Wasserman seeks in limine relief. For the reasons that follow, the Court grants Wasserman's motion in part and denies the motion in part. The Court also denies Soley's motion.

1

I.     STANDARD OF REVIEW

A.  **Summary Judgment**

Summary judgment is appropriate only if the record before the court establishes that there is no "genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating that no dispute of a material fact exists. *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005). In evaluating whether the moving party has met its burden, a court must "construe the evidence in the light most favorable to the non-moving party and . . . draw all reasonable inferences in the non-moving party's favor." *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 208 (S.D.N.Y. 2010) (Wood, J.) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)); *see also In re "Agent Orange" Prod. Liab. Litig.,* 517 F.3d 76, 87 (2d Cir. 2008).

A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 178-79 (2d Cir. 2008); *see also* Fed. R. Civ. P. 56(e). Accordingly, where adjudication of a claim requires assessing credibility or deciding between conflicting versions of events, summary judgment is not appropriate. *See Jeffreys*, 426 F.3d at 553-54; *Hayes v. N.Y.C. Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir. 1996). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), but must show that there is "significant, probative evidence" on which a reasonable factfinder could decide in its favor. *Anderson,* 477 U.S. at 247.

B. <u>In Limine Relief</u>

The Federal Rules of Evidence favor the admission of all relevant evidence. *See* Fed. R. Evid. 402. Evidence is relevant if it "tend[s] to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Similarly, Rule 702, which governs the admissibility of expert testimony, "embodies a liberal standard of admissibility." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). Expert testimony shall be excluded, however, when it is "unhelpful and therefore superfluous and a waste of time." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 493-94 (S.D.N.Y. 2009) (Scheindlin, J.).

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Carofino v. Forester*, 450 F. Supp. 2d 257, 270 (S.D.N.Y. 2006) (Leisure, J.) (citing *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984)). A district court will "exclude evidence . . . *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar,* 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006) (Leisure, J.).

II. FACTUAL BACKGROUND

This Court's September 29, 2011 Opinion, familiarity with which is assumed, details the factual allegations set forth in the Amended Complaint. *See Soley*, 823 F. Supp. 2d at 225-28. That Opinion permitted only Soley's breach of fiduciary duty and equitable accounting claims to proceed. *Id.* at 225. The Court further limited those claims to the allegations relating "to Patriot Partners and those investment accounts over which Wasserman had discretionary authority." *Id.*[1] After reviewing the Parties' summary judgment submissions, the Court recounts only the

---

[1] Having limited the remaining scope of this case, the Court does not consider allegations, Rule 56.1 statements, or legal arguments relating to any already dismissed claims.

3

undisputed facts relevant to Soley's remaining claims. These facts are drawn from the Parties' Rule 56.1 Statements of Fact. ("Def.'s 56.1;" "Pl.'s 56.1").[2]

Since 1974, Wasserman "has traded equities and options for his own account and through various entities." (Def.'s 56.1 ¶ 3). In 1991, Wasserman formed and served as the General Partner of Patriot Partners, L.P., a partnership used "to invest for its own account in securities and other investment instruments." (*Id.* ¶¶ 4-5). Soon after, Patriot Partners distributed a "Private Offering Memorandum . . . to potential investors, including Soley." (*Id.* ¶ 6). Soley entered into a Partnership Agreement and purchased a partnership interest by transferring $500,000 from her personal brokerage account to Patriot Partner's account. (*Id.* ¶¶ 7-8). The Partnership Agreement imposed various obligations, including requiring Wasserman to "maintain books and records at the principal office of the Partnership." (Pl.'s 56.1 ¶¶ 59-61). In 2004 and 2005, Soley and Wasserman were the sole partners of Patriot Partners. (*Id.* ¶ 112).

From its inception until 2003, Patriot Partners utilized the accounting services of Grant Thorton, LLP to perform independent, certified audits and tax preparation services. (Def.'s 56.1 ¶ 11). Discovery has yielded auditing records for 1991, 1996-2001, and 2003. (*Id.* ¶ 13). "Throughout the period of [Patriot] Partners' existence, from 1991 through 2005, Soley's accountant, Barry Kamras, received . . . financial and tax reporting of Soley's interest in Partners and used that information in preparing Soley's personal tax returns." (*Id.* ¶ 19 (citing Barry Kamras Dep. 6-10, 17-19, 22-24, 59, 144-45)).

In October 1998, Soley directed the transfer of $150,000 from her personal account to Patriot Partners' account ("the October 1998 transfer"). (Def.'s 56.1 ¶¶ 21-22; Pl.'s 56.1 ¶ 66).

---

[2] Each party has submitted a response to the opposing party's Rule 56.1 Statement. Plaintiff's counsel, through a letter to the Court, objects to the timeliness, form, and substance of Defendant's response. The Court finds Plaintiff's objections to be without merit, but nonetheless relies on the responses only to determine whether certain facts are disputed. Thereafter, the Court draws only upon the documentary and testimonial evidence to determine whether genuine issues of material fact actually exist.

The October 1998 transfer was accounted for in Patriot Partner's books as "Wasserman Recap: Loan to Partnership (10/98)." (Pl.'s 56.1 ¶ 67). In January 1999, $50,000 was transferred from Patriot Partners' account to Soley's account. (Def.'s 56.1 ¶ 23; Pl.'s 56.1 ¶ 68). In August 1999, Soley wrote to Wasserman to request repayment of "the remainder of the $150,000 'loan.'" (Def.'s 56.1 ¶ 31; Pl.'s 56.1 ¶ 96). As discussed in detail below, the Parties dispute the nature of the October 1998 transfer, whether Patriot Partners properly accounted for the transfer on its books, and whether the October 1998 transfer was properly repaid. (*See infra* Parts III, IV).

Beginning around 1997, based on Wasserman's suggestions, "Wasserman, Soley[,] and a mutual family friend, Arthur (Casey) Stern, made investments together in certain stocks," including investments in "TAPI," "NEXM," "NTII," and "CRDM" (collectively, the "Joint Stock Investments"). (Def.'s 56.1 ¶¶ 40-42; Pl.'s 56.1 ¶¶ 120, 122). These investments were purchased at private offerings, and each "became publically tradeable before October, 2002." (Def.'s 56.1 ¶¶ 44-45). Since the time of the investments, Wasserman has sold some shares (Pl.'s 56.1 ¶ 127) and still owns others (*id.* ¶ 129). Wasserman admits he "has not paid Soley for her interest in any of the Joint Stock Investments" (*id.* ¶ 132), but the Parties dispute whether Wasserman has provided an accounting of these investments.

### III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. Breach of Fiduciary Duty Claim

As noted above, this Court previously held that the Amended Complaint stated a claim for breach of a fiduciary duty "with respect to (1) Patriot Partners, and (2) investment accounts over which Wasserman had full trading authority." *Soley*, 823 F. Supp. 2d at 233. "To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary relationship; (2) misconduct by defendant constituting a breach of its fiduciary duty to plaintiff;

5

and (3) damages to plaintiff directly caused by defendant's misconduct." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 726 F. Supp. 2d 291, 305-06 (S.D.N.Y. 2010) (Wood, J.) (citing *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008) (Patterson, J.)). Although Wasserman does not dispute the existence of a fiduciary relationship, the Parties disagree regarding whether Wasserman breached his duties and whether Soley can prove damages resulting from any breach.

Plaintiff's expert, Stuart L. Fleischer, calculates damages based on several asserted breaches of Wasserman's fiduciary duties, including:

> (1) Damages resulting from Wasserman's "failure to fully and timely repay money [Soley] loaned [Patriot Partners]" in the October 1998 transfer.
>
> (2) Damages resulting from Wasserman's "failure to distribute [Soley's] remaining partnership interest (her capital) at the time that Patriot Partners effectively ceased business [on December 31, 2003]."
>
> (3) Damages resulting from Wasserman's failure "to adhere to the investment strategy [Wasserman] communicated to and was understood by . . . Soley at the time these investments were made."

*(See* Tofel Aff. Ex. A, Fleischer 5/31/12 Corrected Expert Report 1-2.). In the instant motion, Wasserman seeks summary judgment as to each of these contentions.

### *(1) Characterizing the October 1998 Transfer*

Wasserman contends that any claim based on the October 1998 transfer is untimely. Characterizing the transfer as a loan with no specified repayment date, Wasserman argues that any resulting claim accrued on the date of the loan. (*See* Def.'s Mem. in Supp. of S.J. 11 ("Def.'s Mem.") (citing *In re Kharisma Jewelry, Inc.*, 165 B.R. 371 (Bankr. E.D.N.Y. 1994))). Applying the six year statute of limitations,[3] Wasserman argues that this claim is untimely because the original complaint was filed nearly ten years after the transfer. [Dkt. No. 1].

---

[3] The Parties agree that a six year statute of limitations applies but disagree as to whether to characterize this claim as a breach of a contractual obligation or a breach of fiduciary duty.

Although Wasserman characterizes the transfer as a loan from Soley to Wasserman, Soley contends that the transfer was actually an investment or loan to Patriot Partners, not Wasserman individually. Based on its review of the Parties' submissions, the Court finds that the nature of the October 1998 transfer remains in dispute. (*Compare* Luttinger Aff., Ex. G02302 (characterizing transfer as a loan from Wasserman to Patriot Partners), *with* Soley Aff. ¶ 15 (describing transfer as a "short-term investment" in Patriot Partners), *and* Soley Aff., Ex. J (characterizing the transfer as a "short-term" "loan" to Patriot Partners)). This dispute is material to the resolution of this claim because although Wasserman argues that a claim for non-payment of a personal loan will accrue on the date of the loan (in 1998), Soley points out that an action for non-payment of liabilities invested by a Partriot Partners partner would accrue upon the partnership's dissolution (in 2006). (*See* Soley Aff. Ex. B., at 35-36 (Partnership Agreement noting that debts or liabilities of the Partnership are "due and payable" "immediately prior to the termination of the Partnership")). Accordingly, because the nature of the October 1998 transfer remains a disputed material fact, summary judgment is denied.

### *(2) Whether Soley Requested Return of Her Partnership Interest, and, If So, When*

Based on a review of Patriot Partners' activities, Soley's expert concluded that the Partnership "effectively ceased conducting business at December 31, 2003." (Tofel Aff. Ex A, Fleischer 5/31/21 Corrected Report 1). The report calculates damages for Wasserman's "failure to distribute [Soley's] remaining partnership interest (her capital)" from this date. Wasserman argues that this claim was not pled in the Amended Complaint and contends that Soley "cannot show . . . any basis on which [Wasserman] would have been obligated to distribute her interest at any particular point in time." (*See* Def.'s Mem. 14-15; Def.'s Reply Mem. in Supp. 7 (arguing

7

that Soley cannot demonstrate "that she made the required written request to redeem her interest as of year-end 2003, and that she did not withdraw or alter such request")).

As an initial matter, the Court finds that the allegations of the Amended Complaint gave Wasserman fair notice of this claim.  *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).  The Complaint alleges that Wasserman "[d]ominated and controlled [Soley's] financial affairs without regard to her interests," and specifically notes that Soley "repeatedly" requested that her partnership affairs be "wound up and her share of its assets returned."  (*See* Am. Compl. ¶¶ 63, 22).  Moreover, the Complaint includes measurements of Soley's capital investments in Patriot Partners as of the end of 2003, followed by indications that no actions appeared to have been taken between 2004 and 2006.  (*See id.* ¶¶ 20-21 & accompanying tbl.).  These allegations clearly put Wasserman on adequate notice.

Furthermore, in a sworn affidavit to this Court, Soley directly states that "[b]eginning in or about 1999, [she] repeatedly asked Wasserman to redeem [her] interest in Patriot Partners."  (*See* Soley Aff. ¶ 22).  Although Soley's testimony is the most direct evidentiary support for a demand date this early, Soley provides additional documentary evidence indicating that she did in fact make a demand well prior to the close of the partnership in 2006.  (*See* Wybrial Aff., Ex EE (Dec. 29, 2004 email from Wasserman to Soley)).  Accordingly, because there remains a dispute of fact as to when (and whether) Soley requested the return of her partnership share and also as to Wasserman's response, summary judgment is inappropriate.

### *(3) Alleged Failure to Adhere to Stated Investment Strategy*

Soley's expert report considers a third basis for damages: that Wasserman allegedly failed "to adhere to the investment strategy [that he] communicated to and was understood by . . . Soley at the time these investments were made."  (*See* Fleischer Report 2).  In particular, the

Report contends that Soley believed the Joint Stock Investments "would be sold when those securities were allowed to trade publically." (*Id.*)  Wasserman characterizes this basis for damages as a claim for breach of contractual obligations, which, under New York law, is subject to a six year statute of limitations.  (*See* Def.'s Mem. 18-19 (citing N.Y.C.P.L.R. § 213)).

Wasserman argues that this claim accrued when he assertedly breached his obligation to sell the investments, that is, "when those securities were allowed to trade publically."  (Fleischer Report 2).  Wasserman argues that Soley's claim is untimely because although each of the investments became freely tradeable *prior* to October 2002, Soley did not file her original Complaint until October 2008, after the six year limitations period had expired.  (Def.'s Mem. 18-19).

Soley's arguments to the contrary are unconvincing.  First, both Soley and her expert acknowledge that the stocks became publically (or "freely") tradeable prior to October 2002, more than six years prior to filing the Complaint.  (*See* Def.'s 56.1 ¶¶ 44-45; Tofel Aff., Ex. L 156 (Fleischer Tr.)).  Second, although the Parties dispute whether Wasserman was obligated to sell the Joint Stock Investments once they became publically tradeable, this dispute does not preclude summary judgment because Wasserman's limitations defense applies *even assuming* Soley's version of Wasserman's obligations is correct.  Finally, Soley's tolling argument—that Wasserman concealed his actions by creating false accounting documents—applies only to claims arising out of the October 1998 transfer, and thus does not toll the limitations period on the Joint Stock Investments.  Summary judgment is thus granted with regard to this aspect of Soley's breach of fiduciary duty claim.

B. **Accounting Claim**

In its earlier Opinion, this Court also allowed Soley's accounting claim to proceed "with respect to Patriot Partners and those investment accounts over which Wasserman had discretionary authority." *Soley*, 823 F. Supp. 2d at 237. Under New York law, "a plaintiff seeking an accounting . . . must allege both a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary duty by the defendant." *Soley*, 823 F. Supp. 2d at 237 (quoting *Bezuszka v. L.A. Models Inc.,* No. 04 Civ. 7703, 2006 WL 770526, at *17 (S.D.N.Y. Mar. 24, 2006) (Buchwald, J.)); *see also Palazzo v. Palazzo*, 121 A.D.2d 261, 265 (N.Y. App. Div. 1st Dep't 1986) (same).

In seeking summary judgment as to this claim, Wasserman argues that "[Soley]'s claim for an accounting as to Patriot Partners should be denied as moot." (Def.'s Mem. 15). Wasserman claims that as a result of the discovery conducted in this case, "there is literally nothing left for Wasserman to provide beyond the documents and information that have already been produced." (*Id.* at 16). Accordingly, Wasserman contends that "were an accounting granted, there would be no more information that anyone could now provide." (*Id.* at 18).

Wasserman's argument, however, finds no support in New York law. Courts applying New York law have repeatedly observed that an action for an accounting is not mooted by the production of financial documents. *See, e.g., Scholastic, Inc. v. Harris*, 259 F.3d 73, 90 (2d Cir. 2001) ("Even if Scholastic already possesses detailed financial information regarding the joint venture, there is nevertheless still an absolute right to an accounting." (internal quotation omitted)); *Sriraman v. Patel*, 761 F. Supp. 2d 7, 21-22 (E.D.N.Y. 2011) ("[T]he cause of action for an accounting is not to be confused with a partner's right of access to the partnership's books and records."); *Ordinary Guy, Inc. v. Juniper Releasing, Inc.*, 199 A.D.2d 251, 252 (N.Y. App.

Div. 2d Dep't 1993) (holding that agreement providing plaintiffs with the ability to audit defendant's books and records "is not a substitute for a judicial accounting."); *Koppel v. Wien, Lane & Malkin,* 125 A.D.2d 230, 234 (N.Y. App. Div. 1st Dep't 1986) (rejecting argument that there was no right to an accounting because plaintiffs had received documents relating to their venture).[4]

Moreover, Wasserman admits that a variety of documents have not been produced during discovery because no one has retained copies. (*See* Def.'s Mem. 4, 15 (noting that five years of accounting documents and broker statements were not produced); Pl.'s Mem. in Opp. 6 (pointing to "[o]ther significant gaps in discovery")). Although Wasserman disputes the relevance of some of these records and flatly denies some of Soley's other contentions, these disputes reveal questions that are inappropriate for summary judgment.[5]

For all the reasons mentioned above, Soley's motion for summary judgment is granted in part and denied in part.

## IV.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A. Breach of Fiduciary Duty Claim

Soley cross-moves for summary judgment with respect to the issue of whether Wasserman breached his fiduciary duties, arguing that Wasserman breached his duties by: (i)

---

[4] Wasserman cites authority from a variety of jurisdictions, but none from New York. (*See* Def.'s Mem. 17-18 (citing *Eigles v. Kim*, No. 07 Civ. 2223, 2011 WL 3651802, at *10 (D. Md. Aug. 17, 2011)). These citations are of limited persuasive weight to the extent they rely on the particular nuances of other states' laws. *See, e.g., Eigles*, 2011 WL 3651802, at *10 (granting summary judgment on accounting claim while noting that "in Maryland, a request for accounting is no longer a cause of action").

[5] Wasserman similarly contends that Soley's claim for an accounting of the Joint Stock Investments is moot, but offers little additional argument in support. (*See* Def.'s Reply Mem. 7). To the extent that Wasserman's argument overlaps with its argument opposing Soley's request for an accounting from Patriot Partners, the Court denies the motion.

self-dealing and falsifying documents, (ii) neglecting Soley's investments, and (iii) refusing to account for the Private Placement Investments. (Pl.'s Mem. in Supp. of Partial S.J. 19, 21, 22).

### (1) *Self-Dealing and Falsifying Documents*

Soley repeatedly asserts that Wasserman falsified documents by stating that the October 1998 transfer constituted a loan from Wasserman to Patriot Partners (funded by Soley), rather than from Soley to Patriot Partners. Wasserman maintains that the transfer was properly accounted for. The outcome of this dispute turns on the intended nature of the transfer, which Soley and Wasserman sharply dispute. (*Compare* Soley Aff. ¶ 15, *with* Wasserman Aff. ¶ 4). In light of this material factual dispute, this claim is inappropriate for summary judgment.

### (2) *Neglecting Investments*

Soley next argues that Wasserman breached his fiduciary duty by neglecting Soley's investment in Patriot Partners during 2004 and 2005. (Pl.'s Mem. 21). It is undisputed that during this period, Wasserman conducted no trades (Pl.'s 56.1 ¶ 113) and the value of the Patriot Partners investments declined by approximately sixty percent. (*Id.* ¶¶ 114-17).

Given Wasserman's broad discretion to set investment strategy, he contends that his purported inaction, and the corresponding decline in the investment's value cannot constitute a breach of his fiduciary duties. (*See* Soley Aff. Ex. A 36-43 (Patriot Partners Offering Memorandum)). Wasserman argues that he did not neglect the investments during the relevant period, but rather believed that they "continued to be prudent." (*See* Wasserman Aff. ¶ 7). He supports this position by noting that he personally had money invested in Patriot Partners at the same time, and therefore suffered similar losses when the investments declined in value. (*See* Def.'s 56.1 ¶¶ 35, 38-39).

At a minimum, the Parties are materially at odds over the intended nature of Wasserman's obligations, and whether Wasserman's purported inaction breached these obligations. Accordingly, the Court finds that summary judgment is inappropriate.

### *(3) Refusing to Account for the Joint Stock Investments*

In Part III.A.3, above, the Court granted Wasserman's motion for partial summary judgment, holding that the statute of limitations barred any contractual claim based on Soley's contention that Wasserman failed to sell the Joint Stock Investments as soon as they became freely tradeable. This determination, however, does not preclude Soley from asserting a claim that Wasserman violated his fiduciary duty "by refusing to account" for the Joint Stock Investments when Soley requested an accounting. (*See* Pl.'s Mem. 22).

In this claim, Soley contends that she "repeatedly sought" information about her investments but Wasserman failed to provide her with an accounting. (*See* Soley Aff. ¶¶ 34-38 (citing Exs. U, V, W)). Soley made similar assertions in her Rule 56.1 Statement, which Wasserman specifically disputed. (*See* Pl.'s 56.1 ¶ 133). In fact, Wasserman contends that Soley "has always had complete information about the status of her investments." (*See* Def.'s Mem. in Opp. (citing Wasserman Aff. in Opp. ¶ 9)). Given the material disputes regarding the information Soley sought and was provided, this claim cannot be resolved on summary judgment.

### B. Accounting Claim

Soley also contends that she is entitled to summary judgment with regard to her equitable accounting claim. Under New York law, a plaintiff seeking an accounting must establish "both a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary duty by the defendant." *Soley*, 823 F. Supp. 2d at 237 (quoting *Bezuszka*, 2006 WL 770526, at *17).

13

The Court has determined that Soley is not entitled to summary judgment with respect to the issue of whether Wasserman breached his fiduciary duties. *See supra* Part IV.A. Because Soley has not yet established this element of her accounting claim, summary judgment is denied.

## V.     DEFENDANT'S MOTION IN LIMINE

Wasserman also seeks in limine relief with respect to the proposed testimony of Soley's expert, Mr. Stuart Fleischer, as summarized in his Report. (Tofel Aff. Ex. A).

Motions in limine are meant "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted). A court's ruling regarding a motion in limine "'is subject to change when the case unfolds . . . . Indeed even if nothing unexpected happens at trial, the district judge is free—in the exercise of sound judicial discretion—to alter a previous in limine ruling.'" *Id.* at 139 (quoting *Luce v. United States*, 469 U.S. 38, 41-42 (1984)). Accordingly, this portion of this Opinion constitutes a preliminary determination subject to change.

Wasserman initially asks the Court to strike the entire Report because it "contain[s] no opinions or other material which would be helpful to any finder of fact." (Def.'s Mem. 19). Wasserman argues, in essence, that the damages calculations in the Report are so simple that "[t]he jury should be presumed capable of" making these calculations on its own. (*Id.* at 24). This argument does not take into account the value provided in culling the relevant information from the mass of discovery, arranging this information in an understandable form, and interpreting the information. *See Weinstein's Federal Evidence* § 702.03[1] (Rule 702 permits expert testimony regarding "matters beyond the understanding of the average person," even if the

testimony "will simply help the trier of fact to understand the facts already in the record"). Accordingly, the Court finds no basis to wholly exclude Mr. Fleischer's Report.

Wasserman also objects to several particular aspects of the Report. Wasserman argues that: (1) the testimony concerning damages is not clearly related to any specific basis of liability and that the Report appears to state legal conclusions regarding liability (Def.'s Mem. 19-20); (2) the Report improperly calculates pre-judgment interest (*Id.* at 20); and (3) the Report inappropriately calculates damages on money distributed to Soley in 2004 and 2006, beginning on December 31, 2003 (*Id.*).[6] The Court addresses each objection in turn.

First, the Court finds that the Report does clearly tie its damages calculations to specific bases of liability. (*See* Report at 1-3 (describing background of each calculation)). Moreover, the Report does not unfairly or unhelpfully suggest opinions as to ultimate issues of liability. Under Federal Rule of Evidence 704, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Moreover, as discussed above, the Report appears to be "helpful," Fed. R. Evid. 701, will "assist" the trier of fact, Fed. R. Evid. 702, and is not unduly prejudicial or misleading, Fed. R. Evid. 403. The Report does not merely offer testimony regarding legal conclusions but instead is clearly intended to distill useful information regarding the balance of Soley's accounts and estimate corresponding damages. To the extent that there may be any confusion as to this point, the Court may offer a limiting instruction to the jury. *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 571 (S.D.N.Y. 2007) (Sheindlin, J.) ("This Court has routinely relied upon limiting instructions to remind the jury of its role and of the limits of

---

[6] Wasserman also briefly argues that Mr. Fleischer should not be considered an expert with regard to Soley's Joint Stock Investment damages. (Def.'s Mem. 24). Because this Opinion finds the claim that the Joint Stock Investments should have been sold once immediately tradeable is time-barred, the Court does not address this aspect of Wasserman's motion in limine. Of course, a proposed expert witness with credentials to render certain opinions may not testify beyond such demonstrated expertise. *See Weinstein's Federal Evidence* § 702.04[6] (citing *Pan Am. World Airways v. Port Auth.*, 995 F.2d 5 (2d Cir. 1993)). To the extent this objection becomes relevant, the Court shall address it at that time.

expert testimony and clarify the extent of their consideration of such testimony." (internal quotation omitted)).

Second, the Court rejects Wasserman's attack on the Report's calculation of prejudgment interest. Courts routinely accept expert testimony regarding calculations of prejudgment interest. *See, e.g.*, *Rosco, Inc. v. Mirror Lite Co.*, No. CV-96-5658, 2009 WL 3587344, at *2 & n.3 (E.D.N.Y. Oct. 26, 2009); *Mody v. Gen. Elec. Co.*, No. 04-cv-358, 2006 WL 3050834, at *1 (D. Conn. Oct. 25, 2006); *cf. In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2010 WL 1924708, at *3 (considering, for New York state law claim, expert's damages calculation in present-value, accounting for "interest that would have accrued from 2002 until 2009"). Of course, where damages are ultimately awarded pursuant to New York state law, New York Civil Practice Law and Rules will govern any award of pre-verdict or post-verdict interest. *See* N.Y. C.P.L.R. §§ 5001, 5002. Given that the Report clearly differentiates between calculations that include interest and those that do not (*see* Fleischer Report 3), and because the Court is free to "adopt[] or disregard[]" these calculations (*see* Pl.'s Mem. in Opp. 23), the Court will not strike this aspect of the Report at this time.

Third, Wasserman argues that the Report's inclusion of damages on certain investments from as early as December 31, 2003 is inappropriate because it was not raised in the Complaint. The Court disagrees. The factual allegations of the Complaint, which are incorporated into the breach of fiduciary duty claim, include measurements of Soley's capital investments in Patriot Partners as of December 31, 2003, followed by indications that no actions appeared to have been taken between 2004 and 2006. (*See id.* ¶¶ 20 & tbl., 2). Thus, damages calculations from December 31, 2003 forward fall within the ambit of the Complaint. *See supra* Part III.A.2 (citing Am. Compl. ¶¶ 20 & tbl., 21, 22, 63).

## VI.  CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment and in limine relief, and DENIES Plaintiff's motion for summary judgment.[7]

The parties shall, by February 25, 2013, submit to the Court a joint letter outlining any steps that need to be taken before the case is Ready for Trial.  The parties must file a joint pretrial order by March 22, 2013.  The parties shall advise the Court by March 22, 2013 whether they consent to trial of this case before a Magistrate Judge.  The case will be deemed Ready for Trial April 4, 2013.

SO ORDERED.

Dated: New York, New York
February _11_, 2013

_____
Kimba M. Wood
United States District Judge

---

[7] Given that the Court has denied the majority of each motion for summary judgment, the Court does not award either side fees or costs.