USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6 / 6 / 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDY W. SOLEY,

                Plaintiff,

    - against -

PETER J. WASSERMAN,

                Defendant.

Case No. 08 Civ. 9262 (KMW) (FM)

APR 2 4 2013

**<u>JOINT PRETRIAL ORDER</u>**

1

**ii. The names, addresses (including firm names), and telephone and fax numbers of trial counsel.**

Counsel for Plaintiff:

LOUIS F. BURKE, P.C.
460 Park Avenue, 21st Floor
New York, NY 10022
Tel. 212-682-1700
Fax 212-808-4280

Attorneys:
Louis F. Burke, Esq.
Leslie Wybiral, Esq.
Alexander Tripp, Esq.

Counsel for Defendant:

TOFEL & PARTNERS LLP
730 Third Ave., 25th Floor
New York, New York 10017
Tel. 212-752-0007
Fax 212-752-8881

Attorneys:
Lawrence E. Tofel, Esq.
Mark Lopeman, Esq.

**iii. A brief statement by plaintiff as to the basis for subject matter jurisdiction, and a brief statement by each of the other parties as to the presence or absence of subject matter jurisdiction. Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount.**

**Plaintiff's Statement:**

It is undisputed that plaintiff is a citizen of the state of New York and that defendant is a citizen of the state of California.  Plaintiff alleges the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiff's expert report states that her damages, exclusive of pre-judgment interest and costs, is at least $647,242.50.  Title 28 of the United States Code § 1332(a)(1) gives this court diversity jurisdiction over this matter.

**Defendant's Statement:**

Defendant previously filed his motion to dismiss contending, *inter alia*, that the Court lacks diversity jurisdiction over this matter.  The Court denied that portion of defendant's motion.  Defendant does not believe that 28 U.S.C. § 1367(a) has any application to this case.

Regarding plaintiff's expert's report, defendant notes that in this Court's February 13, 2013 Opinion & Order, the Court granted summary judgment and dismissed plaintiff's breach of fiduciary duty claim in respect of the Joint Stock investments.  In excess of $200,000 of plaintiff's expert's damage calculations concern claims which have been dismissed.  Plaintiff's remedy with respect to the Joint Stock investments will be determined at a bench trial pursuant to this Court's April 17, 2013 Opinion & Order.

3

**iv. A brief summary by each party of the claims and defenses that party has asserted which remain to be tried, without recital of evidentiary matter but including citations to all statutes relied on. Such summaries shall identify all claims and defenses previously asserted which are not to be tried.**

1. **PLAINTIFF'S STATEMENT OF HER CLAIMS**

    a. **Plaintiff's Claims Remaining to be Tried**

        i.    Breach of Fiduciary duty re: Patriot Partners

        ii.    Accounting re: Patriot Partners

        iii.    Breach of Fiduciary Duty re: Accounts over which defendant had discretionary authority

        iv.    Accounting re: Accounts over which defendant had discretionary authority

    b. **Plaintiff's Claims Not to be Tried**

        i.    Securities Fraud

        ii.    Conversion

        iii    Unjust Enrichment

        iv.    Fraudulent Conveyance

        v.    Breach of Contract as Investment Manager

        vi.    Breach of Contract for Joint Stocks

        vii.    Accounting re: Patriot Group

        viii.    Common Law Fraud

        ix.    Alter Ego Liability

## 2.    DEFENDANT'S STATEMENT OF HIS DEFENSES

**Defendant submits that plaintiff's statement overstates her claims to be tried and understates claims not to be tried.  Defendant's motion *in limine* will address these issues.**

Defendant's contends that the evidence at trial will show that:

1.    The parties understood and agreed that the October, 1998 transfer was a personal loan by plaintiff to defendant, not to Patriot Partners or an investment by plaintiff in Patriot Partners.  No fiduciary duty between plaintiff and defendant arose from that personal loan.  Patriot Partners and defendant acted in accordance with this agreement and the transaction was accounted for in Patriot Partners' books as a loan from defendant.  There are no documents of any kind supporting plaintiff's claim that Partners, as opposed to defendant, was obligated to repay her.

If plaintiff's claim were now interpreted as a claim against defendant personally to repay her loan, such claim would be barred by the applicable statute of limitations (NY CPLR §213 or 214).

Because the October, 1998 transfer was not a capital investment by plaintiff in Partners, defendant did not have a fiduciary duty to plaintiff with respect to this sum or the repayment thereof.  Nevertheless, defendant did not breach any duty to plaintiff, fiduciary or otherwise, with respect to that transaction.

Not only did defendant not have any fiduciary duty with respect to these sums, but there was no breach as plaintiff alleges.  Plaintiff alleges that defendant breached his fiduciary duties by not keeping adequate or accurate records, but the evidence will

5

show otherwise.

Finally, to the extent plaintiff claims that defendant breached some fiduciary duty in not treating the October, 1998 transfer as plaintiff's further investment in Patriot Partners, plaintiff's claim is also barred by the applicable statute of limitations (10 Del.C. §8106). The claim accrued at the latest when plaintiff wrote to defendant in August, 1999 to demand repayment, and the complaint was not filed until October, 2008. Defendant did not mislead plaintiff or do any other act that could support tolling of the statute of limitations; plaintiff timely received all required tax information in the form of, at least, forms K-1 that showed her in 1999 that the October, 1998 transfer was not treated as an increase to or payment into her capital account at Partners.

2.     Defendant did not breach his fiduciary duties to plaintiff in connection with her admitted investment in Patriot Partners concerning the windup of Partners' affairs. By mid-2004 plaintiff and defendant were the sole remaining partners, whose interests stood at 60% and 40% respectively. Payments during 2004 were made to each partner in accordance with those percentage interests, $300,000 to plaintiff and $200,000 to defendant. Shortly after year-end 2005, in January and February, 2006, Partners' remaining assets were properly distributed to plaintiff and defendant, again in accordance with those 60/40 interests.

Plaintiff's original claim that Patriot Partners failed to pay out plaintiff's partnership interest in the proper amount is fully disproven. The reduction in plaintiff's account between year-end 2003 and year-end 2005 is fully explained by the amounts paid out to her and defendant, and the fluctuations in value of the securities held by the

company.

While Partners' investments lost value during 2004 and 2005, that loss in value was a risk that plaintiff assumed by investing in the partnership and is not a loss that may be attributed to defendant or that was for his account as opposed to plaintiff's. Defendant had no obligation, under the Partnership's organizing documents or otherwise, to invest the partnership's money in any particular manner or according to any particular plan. Such investments were within his discretion. Particularly where defendant had a considerable investment of his own money in the same fund, there is no ground here for attributing to him any liability for the loss in value.

The theory propounded by defendant's expert, that Partners "ceased conducting business" at year-end 2003, is flatly contradicted by all available evidence; Partners maintained investments in 6 stocks for approximately two more years and plaintiff and defendant communicated during that period concerning its continuation. Even though Partners engaged in no further active trading after January, 2004, its continued existence as a partnership is not disputed or disputable. The evidence will also show that plaintiff never seriously intended to liquidate her interest immediately, and never made any enforceable demand to liquidate and distribute her interest. Plaintiff was aware that the partnership agreement required the delivery of a written demand, but she never made one. Whatever conversations she had with defendant during the period did not amount to an actionable demand and if she made any such demand or request, she acceded in the extended windup-period.

3.     Plaintiff's claim that she is or was entitled to any "accounting", separate or

7

apart from that which has been made available to her by reason of this litigation, is completely without merit. (Her continued assertion of this claim is frivolous, harassing and will needlessly complicate and prolong the trial of this action because it requires defendant to submit voluminous evidence to show that plaintiff already has the information she purports to be seeking.)

It is undisputed that during Partners' existence plaintiff's accountant, Barry Kamras, received the information, including required K-1 forms, necessary for plaintiff to timely complete her personal federal and state income tax returns. Partners retained a major accounting firm, Grant Thornton, to perform complete certified financial audits of its books, from 1991 through 2003. Grant Thornton conducted those audits and prepared yearly audited financial statements for Partners, almost all of which have been discovered and produced. All of Partners' banking statements from 2004-2006 (as well as almost all of them from 1991-2003) have been produced and they show exactly what transactions Partners engaged in. There is no lack of information. Plaintiff's own accountant has examined these and all other financial records pertaining to Partners and has found no basis for plaintiff to make any further claims of damage.

Thus, plaintiff was not deprived of significant information during Partners' existence and does not stand in need of any further information now. The purpose of an "accounting" remedy, "to require a fiduciary to show what he did with the principal's property." (Soley v. Wasserman, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011)) has already been fulfilled. This is not a case in which "the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them.

(Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962)).

Plaintiff has an "adequate remedy at law" for all the claims she has asserted and no other remedy is necessary or appropriate.

4.      Plaintiff delayed in bring suit and such delay has deprived defendant of certain discovery and otherwise prejudiced defendant.

5.      Plaintiff's claims arising from the so-called "Joint Stock investments" are similarly frivolous and misguided.  Her central [and incredible] contention concerning them, that defendant was obligated to sell the stocks as soon as they became "publicly tradeable", was dismissed by the Court, which concluded that the claim for breach of fiduciary duty in respect of the Joint Stock is barred by the statute of limitations (DE73 at 8-9.)

Plaintiff continues and refuses to drop her claim that she is entitled to an "accounting" of her interest in these investments, even though (i) she always knew what monies she invested and in which stocks, so that the amount of her own interest was not and could not have been concealed from her; and (ii) the present value of the four (4) stocks is not disputed and is publicly available.  The evidence will show that the agreement between plaintiff, defendant and Stern gave defendant total discretion over how long to hold the Joint Stocks, including discretion to retain the proceeds of the earlier sale until the sale of all the investments had been concluded.

**v.  A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days anticipated.**

Plaintiff anticipates a 3-day trial before a jury.

On April 17, the Court granted in part and denied in part defendant's motion to strike plaintiff's jury demand.  Based on that Opinion & Order (DE782), defendant believes the jury portion of this case (which should concern only Patriot Partners) can be concluded in two (2) days.

**vi. A statement as to whether or not all parties have consented to trial of the case by a magistrate judge (without identifying which parties have or have not so consented).**

All parties do not consent to a trial by a Magistrate Judge.

**vii. Any stipulations or agreed statements of fact or law which have been agreed to by all parties.**

**STIPULATED FACTS**

**<u>Patriot Partners</u>**

1.    Judy Soley is a resident of New York State.

2.    Peter Wasserman is a resident of California.

3.    Plaintiff filed her original complaint in this action on October 29, 2008.

4.    Since 1974 Wasserman has traded equities and options for his own account through various entities.

5.    Wasserman caused the formation of Patriot Partners, L.P. ("Partners") as a Delaware limited partnership on or about February 25, 1991, to invest for its own account in securities and other investment instruments traded on established markets in the United States.

6.    Wasserman was the General Partner of Partners.

7.    In 1991, Partners offered partnership interests to potential investors, including Soley through a Private Offering Memorandum.

8.    The number of Judy Soley's account at Fagenson & Co., Inc. ("Fagenson") was 74296141 ("Soley's Fagenson Account").

9.    The number of Partners' account at Fagenson was 65505742 ("Partners' Fagenson Account").

10.   The number of Peter Wasserman's account at Fagenson was 83264065 ("Wasserman's Fagenson Account").

12

11.   On or about September 11, 1991, Soley signed and submitted to Partners a Subscription Agreement, a Questionnaire and a Partnership Agreement.

12.   On October 11, 1991 Soley transferred $500,000 from Soley's Fagenson Account to Partners' Fagenson Account for the purchase of the partnership interest in Partners.

13.   A number of other individuals and entities purchased interests in Partners.

14.   In April 1993 Soley purchased from Gerald Kaminsky the limited partnership interest in Partners owned by him for $124,233.

15.   From 1991 through 2003, Grant Thornton, LLP ("Grant Thornton") performed and prepared annual audits, annual financial statements and provided tax preparation services for Partners.

16.   At all relevant times, substantially all of Partners' assets were held in Partners' Fagenson Account.

17.   From 1991 through 2005, Soley's accountant, Barry Kamras prepared Soley's tax returns.

18.   At times prior to 1999, Soley made personal loans to Wasserman.

19.   The following financial records of Partners were among those produced in discovery:

   a.   Schedule K-1, Form 1065, ("K-1") for Soley's interest in Partners for the years 1994; 1996-2005.

   b.   Partners' U.S. Return of Partnership Income (Form 1065) tax returns for the years 2003, 2004 and 2005.

     c.     Partners' audited financial statements prepared by Grant Thornton for the years 1991-1993, 1995-2001 and 2003.

     d.     Statements of Partners' Fagenson Account for 1991, 1996-2001; 2003-2006.

20.    Based on Grant Thornton's audited financial statements of Patriot Partners, on December 31, 1997, the value of Partners' total assets was $3,458,471.

21.    Based on Grant Thornton's audited financial statement of Patriot Partners, the value of Soley's capital account in Partners as of December 31, 1997 was $1,051,943.

22.    Based on Grant Thornton's audited financial statement of Patriot Partners, the value of Wasserman's capital account in Partners as of December 31, 1997 was $506,347.

23.    Based on Grant Thornton's audited financial statements of Patriot Partners and Partners' documents, in January 1998, Partners had seven partners, who held the following partnership interests:  Larry Aldrich Trust - 3.32%; Coconut Grove Trustee for Charles Carroll, Jr. - 3.32%; Barbara Cohn - 15.881%; Fagenson & Company, Employees Pension Trust - 8.299%; Judy Soley - 41.099%; Starr Securities, Inc. Employees Pension Trust - 8.299%; and Peter Wasserman - 19.783%.

24.    Soley instructed Fagenson, by letter, dated October 19, 1998, to transfer $150,000 from Soley's Fagenson Account to Partners' Fagenson Account.

25.   On October 21, 1998, Fagenson transferred $150,000 from Soley's Fagenson Account to Partners' Fagenson Account (the "October 1998 Transfer").

26.   On January 13, 1999, $50,000 was transferred from Partners' Fagenson Account to Soley's Fagenson Account.

27.   The October 1998 Transfer was accounted for in Partners' records and by Grant Thornton in its accounting records, supporting work papers and the 1998 audited financial statement as a liability of Partners' to Wasserman. The Partners' 1998 audited financial statements describe as a "noninterest-bearing loan," with no set repayment date, "due to the General Partner."

28.   During 1999, a series of transactions and payments by Partners were reflected in Partners' accounting records and Grant Thornton work papers as payments by Partners of the loan "due to the General Partner" as follows:

a.   January 13, 1999, $50,000 transferred from Partners' Fagenson Account to Wasserman.

b.   Fagenson check issued to Wasserman, in the amount of $20,000, dated April 13, 1999.

c.   Fagenson check issued to Wasserman, in the amount of $50,000, dated September 14, 1999.

d.   September 29, 1999, $20,000 transferred from Partners' Fagenson

15

Account to Wasserman's Fagenson Account.

e.    November 3, 1999, $20,000 transferred from Partners' Fagenson Account to Wasserman's Fagenson Account.

f.    Accounting of withdrawals by Barbara Cohn from her capital account at Partners.

29.   Based on Grant Thornton's audited financial statements of Patriot Partners, as of December 31, 2003, the value of Partners' total assets aggregated $1,668,403, of which Soley's capital account was $876,906; Wasserman's capital account was $584,420, and that of the remaining other investor, Coconut Grove Bank, was $70,829.

30.   In 2004, Coconut Grove withdrew all of its partnership capital from Partners.

31.   After Coconut Grove withdrew from Partners in 2004, Soley and Wasserman were the sole partners.

32.   Between January 31, 2004 and December 31, 2005, Partners maintained the same positions in securities and no securities were either bought or sold.

33.   Based on Partners' Fagenson statement for the period ending January 31, 2004, the cash and money market funds had a value of $391,577 and the equities had a value of $870,925, for a total account value of $1,262,502.

34.   Based on Partners' Fagenson statement for the period ending December 31, 2005, the money market funds had a value of $32,967.56 and the

equities had a value of $346,590.00, for a total account value of $379,557.56.

35.    In 2004, Soley received distributions of cash from Partners of $300,000 and Wasserman received a distribution of cash from Partners of $200,000.

36.    During January and February 2006, substantially all of Partners' remaining cash and equities were distributed: 60% to Soley, 40% to Wasserman.

37.    On or about January 4, 2006, Partners transferred $17,680.54 to Soley's Fagenson Account and (a) 33,600 shares of Boston Restaurant Assoc., Inc., (b) 47,700 shares of NexMed, Inc., (c) 12,000 shares of Emisphere Tech., Inc., (d) 41,700 shares of NTN Communications, Inc., and 20,400 shares of Vermont Pure Holdings (all of which shares were later sold by Soley for approximately $234,681).

### Joint Stocks [*]

38.    Wasserman offered to Soley and Arthur ("Casey") Stern ("Stern") opportunities to invest with Wasserman in private placement equities of certain companies, which opportunities were not available to the general public.

39.    The companies in which Soley elected to invest with Stern and Wasserman were Neurobiological Technologies, NexMed, Tapistron, and Cardima (the "Joint Stocks").

---

[*]    Bench Trial only per Court's February 13, 2013 and April 17, 2013 Orders.  Plaintiff disagrees with this contention by defendant.

40.  Soley, Stern and Wasserman agreed that Wasserman had sole control over the Joint Stocks.

41.  Soley, Stern and Wasserman made the following initial investments in the Joint Stocks:

   a.  Tapistron:   Soley - $20,000, Stern - $10,000 and Wasserman - $15,000; jointly purchased 300,000 shares in or about September 1997

   b.  Nexmed:   Soley - $20,000, Stern - $15,000 and Wasserman - $25,000; jointly purchased 40,000 shares in or about September 1999

   c.  Neurobiological Technologies:   Soley - $20,000, Stern - $15,000 and Wasserman - $25,000; jointly purchased 75,000 shares in or about November 1999

   d.  Cardima:   Soley - $10,000, Stern - $10,000 and Wasserman - $80,000; jointly purchased 172,414 shares in or about May 3, 2001

42.  During 2001, Wasserman sold 75,000 shares of the Neurobiological Technologies stock for a total sale price of $302,586.

43.  Wasserman has not sold the shares of Tapistron, Nexmed or Cardima.

44.  The Joint Stocks investment in Tapistron has been without value since before July 2001.  Tapistron declared bankruptcy on or about July 2, 2001.

45.  In or about September, 2010, NexMed changed its name to Apricus BioSciences, Inc.

46.  The Joint Stocks investment in Cardima had a value at $0.58 per share when it was purchased in or about May, 2001.  By July, 30, 2007, Cardima's stock had dropped to $0.046 per share.  The Joint Stocks

18

investment in Cardima is without value.

## STIPULATIONS OF LAW

1.    The Patriot Partners Subscription Agreement and partnership agreement, which incorporate the Offering Memorandum, are a contract binding on Soley, Wasserman and Patriot Partners.

2.    New York law governs plaintiff's claim in respect of the Joint Stocks.

3.    The elements of breach of fiduciary duty are (A) the existence of a fiduciary relationship; (B) misconduct by defendant constituting a breach of its fiduciary duty to plaintiff; and (C) damages to plaintiff directly caused by defendant's misconduct.

4.    New York law governs any loan by plaintiff to Wasserman individually.

**viii. A statement by each party as to the witnesses whose testimony is to be offered in its case in chief, indicating whether such witnesses will testify in person or by deposition.**

      **A.**     **PLAINTIFF'S WITNESSES**

             Judy Soley
             Stuart Fleischer
             Grant Thornton
             Peter Wasserman
             David Pass

      **B.**     **DEFENDANT'S WITNESSES**

             Peter Wasserman
             Judy Soley
             David Pass
             Barry Kamras
             Grant Thornton

     ix. A designation by each party of deposition testimony to be offered in its case in chief, with any cross-designations and objections by any other party.

**Plaintiff's Designation of Deposition Testimony**

## BARRY KAMRAS DEPOSITION DESIGNATIONS[*]

p. 7, ln 22 – p. 10, ln. 20
p. 11, ln. 7 – p. 14, ln. 15.
p.17, ln. 14 – p. 20, Ln, 15.
p. 22, ln 3 – p. 26, ln. 6
p. 35, ln. 3-11
p. 49, ln 7 – p. 53, ln. 8
p. 59, ln. 17 – 22.
p. 74, ln 6 – p. 77 ln. 24.
p. 103, ln 17 – p. 105, ln 7
p. 105, ln. 20 – p. 106, ln 17
p. 109, ln 8 – 22.
p. 132, ln 14 – p. 133, ln 17.
p. 144, ln 2 – p. 146, ln 4.

---

[*] Defendant objects to plaintiff's deposition designations as untimely.

While counsel for both parties exchanged email comments and revisions concerning some sections of the pretrial order over the course of two weeks or more, plaintiff withheld her deposition designations and never disclosed them to defendant's counsel (stating plaintiff had no designations) until a late-night transmission Sunday, April 21, the day before the parties were required to submit the complete and final pretrial order (and three days AFTER April 19, the date the pretrial order had originally been due to be filed).  Plaintiff's delayed disclosure makes it impossible for defendant's counsel to review plaintiff's designations, to object to or to provide counter-designations in the pretrial order.

In fact, despite the parties' various prior communications and repeated urging from defendant's counsel, plaintiff never even purported to provide a "complete" draft of the pretrial order until Thursday, April 18.  Said draft did not, as noted above, include any deposition designations from plaintiff; it also did not designate any interrogatory answers as exhibits, it omitted certain other documents that plaintiff later designated, and it changed the statement in prior drafts that plaintiff would not be filing any motion *in limine*, to reveal for the first time that plaintiff now "anticipated" filing a motion *in limine*, still without providing any description of such motion as required by the Court's rules.  (Plaintiff's new iteration sent Sunday night still failed to include the required description of her motion *in limine*.)  Plaintiff never provided **any** version of Plaintiff's Requests to Charge until Wednesday, April 17.

Because plaintiff emailed a substantially revised draft pretrial order, and substantially different Requests to Charge, on Sunday, April 21 and on the morning of Monday, April 22 (respectively), defendant's counsel is unable both to review plaintiff's deposition designations, and to review and respond to the volume of other new material and new revisions presented at the last minute by plaintiff.  Defendant requests that plaintiff be precluded from introducing at trial any deposition testimony.

23

## BARRY KAMRAS DEPOSITION CROSSDESIGNATIONS

p. 14, ln. 16 – p. 16, ln. 25.

## CASEY STERN DEPOSITION DESIGNATIONS

p. 23, ln. 17-19
p. 28, ln 21-25.
p. 39, ln 11 – p. 43, ln 20
p. 44, ln 16 – p. 46, ln. 3.
p. 48, ln. 13 – p. 50, ln. 23.
p. 51, ln. 10 --  p. 52, ln. 22.
p. 62, ln. 25 – p. 63, ln 23.
p. 65, ln. 5-14.
p. 66, ln 2-10, 18-25.
p. 67, ln 1-13, 19-25.
p. 68, ln. 1-10, 17-25.
p. 69, ln 1-23.
p. 70, ln 7 – p. 73, ln. 17.
p. 74, ln 4 – p. 75, ln. 13.
p. 76, ln. 3 – p. 82, ln. 20.
p. 84, ln 13 – p. 88, ln 2
p. 88, ln. 15 --  p. 90, ln. 23.

24

**Defendant's Designation of Deposition Testimony**

## BARRY KAMRAS DEPOSITION DESIGNATIONS

p. 5, ln. 21 – p. 10, ln. 4
p. 12, ln. 9 – p. 14, ln. 15
p. 17, ln. 14 – p. 18, ln. 10
p. 22, ln. 18 – p. 23, ln. 5
p. 26, lns. 8-14
p. 26, ln. 21 – p. 28, ln. 8
p. 29, ln. 4 – p. 30, ln. 3
p. 33, ln. 6 – p. 34, ln. 4
p. 49, ln. 7 – p. 51, ln. 9
p. 52, ln. 7 – p. 53, ln. 9
p. 53, ln. 18 – p. 54, ln. 12
p. 59, ln. 17 – p. 60, ln. 16
p. 61, lns. 13-18
p. 72, ln. 23 – p. 74, ln. 3

## CASEY STERN DEPOSITION DESIGNATIONS

p. 9, ln. 17 – p. 18, ln. 22
p. 20, ln. 21 – p. 21, ln. 14
p. 22, lns. 6 – 25
p. 28, ln. 15 – p. 29, ln. 4
p. 31, ln. 24 – p. 32, ln. 9
p. 33, lns. 5-12
p. 33, ln. 25 – p. 35, ln. 17
p. 36, lns. 19-24
p. 37, lns. 12-22
p. 37, ln. 24 – p. 38, ln. 3
p. 39, lns. 4 – 10
p. 40, ln. 16 – p. 41, ln. 10
p. 41, ln. 18 – p. 43, ln. 20
p. 44, ln. 16 – p. 46, ln. 3
p. 48, ln. 13 – p. 50, ln. 16
p. 51, ln. 10 – p. 52, ln. 14
p. 69, ln. 24 – p. 70, ln. 5
p. 88, ln. 15 – p. 90, ln. 23
p. 91, lns. 16 - 22

**x. A list by each party of exhibits to be offered in its case in chief, with one star indicating exhibits to which there are objections, but no party objects on grounds of authenticity, and two stars indicating exhibits to which no party objects on any ground.**

## PLAINTIFF'S EXHIBIT LIST

| Ex. | Description | Bates No. | Authenticity Agreed | Other Obj. | Basis of Obj. |
|---|---|---|---|---|---|
| P-1 | Private Offering Memo, dated April 1, 1991 | P1-104 | X | X | completeness |
| P-2 | Partnership Agreement | P105-153 | X | X | completeness |
| P-3 | Subscription Agreement | P182-218 | X | | |
| P-4 | April 20, 1993 Soley Letter re: purchase of Kaminsky interest | P299 | X | | |
| P-5 | April 20, 1993 Soley letter re: sale of Kaminsky interest | P297 | X | X | Unasserted claims; relevance; Rule 403; foundation; (dismissed claims) |
| P-6 | Pg. 9 of Merrill Lynch monthly statement of Soley account for period ending July 31, 1998 | Fleischer 4478 | X | X | relevance; Rule 403; foundation; (dismissed claims) hearsay |
| P-7 | Oct 19, 1998 Soley letter to Fagenson requesting $150,000 transfer | P296 | X | | |
| P-8 | Soley Fagenson statement for period ending Oct. 30, 1998 | P1027-28 | X | | |
| P-9 | Soley Fagenson statement for period ending Jan. 29, 1999 | P706-709 | X | | |
| P-10 | Grant Thornton work papers – "Partners 1999 Financials" showing $150,000 transfer and repayment | G2866 | X | | |

26

| Ex. | Description | Bates No. | Authenticity Agreed | Other Obj. | Basis of Obj. |
|---|---|---|---|---|---|
| P-11 | Partners monthly Fagenson Statement for period ending 1/29/99 | G2957-74 | X | | |
| P-12 | Partners monthly Fagenson Statement for period ending 10/29/99 | G3133-48 | X | | |
| P-13 | Partners monthly Fagenson statement for period ending 11/28/99 | G3149-61 | X | | |
| P-14 | Partners monthly Fagenson Statement for period ending 1/31/04 | PW1-3 | X | | |
| P-15 | Partners monthly Fagenson Statement for period ending 12/31/05 | PW65-66 | X | | |
| P-16 | Partners 1998 Audited Financial Statement | PW151-169 | X | | |
| P-17 | Partners 1999 Audited Financial Statement | PW170-183 | X | | |
| P-18 | Partners 2000 Audited Financial Statement | PW184-194 | X | | |
| P-19 | Partners 2001 Audited Financial Statement | PW195-206 | X | | |
| P-20 | Partners 2002 Audited Financial Statement | G3936-53 | X | | |
| P-21 | Partners 2003 Audited Financial Statement | G3920-34 | X | | |
| P-22 | Soley monthly Fagenson Statement for period ending July 31, 1998 | P1031-33 | X | X | relevance; Rule 403; dismissed claims |
| P-23 | Partners monthly Fagenson Statement for period ending October 30, 1998 | G2606-07 | X | | |

| Ex. | Description | Bates No. | Authenticity Agreed | Other Obj. | Basis of Obj. |
|---|---|---|---|---|---|
| P-24 | Grant Thornton work papers - Partners March 1, 2000 letter to Cohn with handwritten notes about withdrawals | G2906 | X | X | Relevance; hearsay |
| P-25 | Grant Thornton work papers – "Partners Wasserman Recap" | G2302 | X | | |
| P-26 | Grant Thornton work papers – "Partners Accrued Expenses 12/31/98" | G2301 | X | | |
| P-27 | Grant Thornton work papers – "Balance Comparison" - Partners | G2110 | X | | |
| P-28 | Grant Thornton work papers – "1999 Wasserman Payable Transactions" | G2891 | X | | |
| P-29 | Grant Thornton 1996 Retainer letter, letter to client and Audit Planning Memo | G370-77 | X | | |
| P-30 | Grant Thornton Retainer letter, letter to client, 1997 Audit Planning Memo and letter to Wasserman | G1389-97 | X | | |
| P-31 | Grant Thornton Retainer letter, letter to client and 1998 Audit Planning Memo | G2097-106 | X | | |
| P-32 | March 31, 1999 Partners letter to Grant Thornton re: 1998 audit | G2202-05 | X | | |
| P-33 | Grant Thornton Retainer letter, letter to client and fiscal year 2000 Audit Planning Memo | G3329-35 | X | | |

| Ex. | Description | Bates No. | Authenticity Agreed | Other Obj. | Basis of Obj. |
|---|---|---|---|---|---|
| P-34 | Partners letter to Grant Thornton re: 2000 audit | G3358-61 | X | | |
| P-35 | Grant Thornton Retainer Letter for 2002 audit and letter from Wasserman | G3658-65 | X | | |
| P-36 | Partners' 2002 accounting documents | PW337-39 | | X | Description not verified; hearsay; relevance; Rule 403 |
| P-37 | Aug 1, 1999 Soley letter to Wasserman re: to repayment of "loan" | P529 | X | X | relevance; Rule 403; dismissed claims |
| P-38 | Feb. 29, 2000 e-mail from Pass to Grant Thornton | G2952 | X | X | relevance, Rule 403 |
| P-39 | Dec 29, 2004 Wasserman email to Soley | Fleischer 1874 | X | | |
| P-40 | Aug 28, 2006 Soley letter to Wasserman re: 150,000 debt | PW1777 | X | X | relevance; Rule 403; dismissed claims |
| P-41 | Sept 23, 2006 Wasserman letter to Soley | PW1778 | X | | |
| P-42 | October 31, 2006 Soley e-mail to Kamras | P179 | X | X | relevance; Rule 403 |
| P-43 | December 15, 2006 Soley email to Kamras | P550 | X | X | relevance; Rule 403 |
| P-44 | Jan. 25, 2007 Wasserman letter to Soley | Fleischer 1740 | no | X | relevance; Rule 403; completeness; foundation |
| P-45 | Feb 2, 2007 Soley letter to Wasserman | PW1775-76 | X | X | relevance; Rule 403; foundation; (dismissed claims); joint stock portion not for jury (bench trial only) |

| Ex. | Description | Bates No. | Authenticity Agreed | Other Obj. | Basis of Obj. |
|---|---|---|---|---|---|
| P-46 | Feb 15, 2007 Wasserman letter to Soley | PW1773-74 | X | X | relevance; Rule 403; foundation; (dismissed claims) ; joint stock portion not for jury (bench trial only) |
| P-47 | February 25, 2007 Soley letter to Wasserman | Fleischer 3458-59 | NO | X | relevance; Rule 403; foundation; document not produced by plaintiff; joint stock portion not for jury (bench trial only) |
| P-48 | March 20, 2007 Tofel letter to Soley | Fleischer 1771 | X | X | Relevance; Rule 403 |
| P-49 | Dec 24, 2007 Soley letter to Wasserman re: joint stocks | Fleischer 3461 | X | X | foundation; relevance; not for jury (bench trial only) |
| P-50 | Chart – NTII | P285 | no | X | foundation; relevance; hearsay; not for jury (bench trial only) |
| P-51 | Chart – Nexmed | P286 | no | X | foundation; relevance; hearsay; not for jury (bench trial only) |
| P-52 | Chart – CRDM | P287 | no | X | foundation; relevance; hearsay; not for jury (bench trial only) |
| P-53 | Chart – TAPI | P288 | no | X | foundation; relevance; hearsay; not for jury (bench trial only) |
| P-54 | Chart of Joint Stock | P289 | no | X | foundation; relevance; hearsay; not for jury (bench trial only) |

| Ex. | Description | Bates No. | Authenticity Agreed | Other Obj. | Basis of Obj. |
|---|---|---|---|---|---|
| P-55 | Chart – NexMed | P290 | no | X | foundation; relevance; hearsay; not for jury (bench trial only) |
| P-56 | Chart – TAPI | P291 | no | X | foundation; relevance; hearsay; not for jury (bench trial only) |
| P-57 | Chart – NTII | P292 | no | X | foundation; relevance; hearsay; not for jury (bench trial only) |
| P-58 | Chart – NEXM | P294 | no | X | foundation; relevance; hearsay; not for jury (bench trial only) |
| P-59 | Joint Stock chart | PW421 | No | X | foundation; relevance; hearsay; not for jury (bench trial only) |
| P-60 | Soley check for Tapistron purchase | P337-38 | X | X | Relevance; not for jury (bench trial only) |
| P-61 | Cardima Registration Statement Questionnaire | PW514 | X | X | relevance; not for jury (bench trial only) |
| P-62 | Tapistron Stock Certificate | PW352 | X | X | relevance; not for jury (bench trial only) |
| P-63 | NTII stock certificate | PW355 | X | X | relevance; not for jury (bench trial only) |
| P-64 | Dec. 7, 1999 letter re: NTII | PW356 | | X | relevance; not for jury (bench trial only) |
| P-65 | NTII subscription agreement | PW398-407 | X | X | relevance; not for jury (bench trial only) |
| P-66 | NTII Warrant | PW357-66 | | X | relevance; not for jury (bench trial only) |

| Ex. | Description | Bates No. | Authenticity Agreed | Other Obj. | Basis of Obj. |
|-----|-------------|-----------|---------------------|------------|----------------|
| P-67 | NTII purchase documents | PW368-388 | | X | relevance; not for jury (bench trial only) |
| P-68 | NexMed stock certificate | PW823 | | X | relevance; not for jury (bench trial only) |
| P-69 | Jan. 20, 2000, letter re: exercise of NexMed warrant | PW814 | | X | relevance; not for jury (bench trial only) |
| P-70 | Group Fagenson Statement for period ending 7/31/05 | PW986 | | X | not for jury (bench trial only) |
| P-71 | Group Fagenson Stmt, Oct. 1, 2011 – Dec 31, 2011 | PW1220-26 | X | X | Cumulative of stipulations; not for Jury (bench trial only) |
| P-72 | Check from Stern to Wasserman, 9/29/99 | PW813 | | X | Cumulative of stipulations; not for Jury (bench trial only) |
| P-73 | NTII chart | PW422 | N | X | Cumulative of stipulations; not for Jury (bench trial only) |
| P-74 | Stern Check 4107 | PW367 | N | X | relevance, hearsay, cumulative of stipulations, not for jury (bench trial only) |
| P-75 | Fleischer Expert Report with exhibits | | X | X | same objections as stated in our motion in limine; plus, material re: joint stocks should be deleted in light of Feb. 2013 Decision (see p.69 and n.6 on p15 thereof) |

| Ex. | Description | Bates No. | Authenticity Agreed | Other Obj. | Basis of Obj. |
|-----|-------------|-----------|---------------------|------------|---------------|
| P-75 | TAPI chart produced by Kamras | Kamras 1187 | no | X | foundation; relevance; hearsay; not for jury (bench trial only) |
| P-76 | NEXM chart produced by Kamras | Kamras 1188 | no | X | foundation; relevance; hearsay; not for jury (bench trial only) |
| P-77 | Defendant's Responses to Plaintiff's First Set of Interrogatories, verified January 31, 2012 | | | | See Footnote below* |
| P-78 | Delaware Division of Corp. – Patriot Partners entity information | P534-58 | no | X | No claim; prejudice, authenticity |
| P-79 | Matthew Luttinger Affidavit | | | | |
| P-80 | Demonstrative Exhibit - poster size | G2302 | X | | |
| P-81 | Demonstrative Exhibit - poster size | G2891 | X | | |
| P-82 | Demonstrative Exhibit - poster size | G2866 | X | | |

---

* Defendant objects to those portions of the interrogatory responses that relate only to dismissed claims, to claims that are to be the subject only of a bench trial and not a jury trial; to submission to the jury of objections none of which was ever challenged by plaintiff; on the bases of relevance, and under Rule 403 on the basis of unfair prejudice, likelihood of confusion, and cumulative.

Further, with respect to individual interrogatories:

#1 – not an issue for the jury and relates only to dismissed claims

#2 – not an issue for the jury and relates only to dismissed claims

#3 – identification of potential witnesses is inappropriate, confusing and a waste of time

#4 – identification of potential witnesses is inappropriate, confusing and a waste of time

#5 – responses consists entirely of objections

#6 – not an issue for the jury

#7 – relates only to dismissed claims; response consists only of objections

## DEFENDANT'S EXHIBIT LIST

| Ex. | Description | Bates No. | Authenticity Agreed | Other Obj.[*] | Basis of Obj. |
|---|---|---|---|---|---|
| A | Matt Luttinger Affidavit | | X | | |
| B | Documents referred to in Luttinger affidavit, paragraph 6 | G0304-0313; G3938-3939; G3940-3953 | X | | |
| C | Documents referred to in Luttinger affidavit, paragraphs 9 and 10 | G2026; G2067-2096; G2097-2103; G2108-2109; G2681-2706 | X | Y | Mischaracterized – G2901, G2904-09 not referred to in cited locations |
| D | Documents referred to in Luttinger affidavit, paragraphs 12, 13 and 14. | GG2110; G2293; G2301-2303; G2606; G2734; G2890-2894; G2901; G2904-2909 G2961;G3133; G3149; G3162 | X | | |
| E | Soley K-1, Form 1065 for the years 1992, 1993, 1994, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005 | P160-162; P163-165; Kamras804-806; G733-736; G1656-1659; Kamras1364; Kamras1360 – 1362; Kamras 1355 - | x | | |

[*] Based on defendant's failure to make proper designations of individual documents, plaintiff reserves her right to object at trial to admissibility of any document defendant designates.

| | | | | | |
|---|---|---|---|---|---|
| | | 1357; Kamras1284 - 1286; PW228-230; Kamras 1340 - 1342; P264-265; Kamras1325. | | | |
| F | Partners' U.S. Returns of Partnership Income (Form 1065) for the years 2003, 2004, 2005 | Kamras1328 - 1346; Kamras1313 - 1320; Kamras1321 - 1327 | X | | |
| G | Partners' audited financial statements prepared by Grant Thornton for the years 1991, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, and 2003 | G0003-0012; G0304-0313; G0696-0715; G2028-2046; G2681-2706; G3295-3315; G3275-3293; G3667-3685; G3936-3953; G3920-3934. | X | | |
| H | Partners' Fagenson account statements for the years 1991, 1996-2002 and 2003-2006 | G0124-0137; G0832-1305; G0814-0831; G1678-2008; G2009-2025; G2358-2659; G2957-3185; G3492-3653; G3759-3891; G3892-3901; G3894-4011 PW001-037; PW038-067; PW068-078 | X | | |
| I | Soley's Subscription Agreement to Patriot Partners | P182-199 | X | | |

| J | Patriot Partners Private Offering Memorandum with Partnership Agreement, dated April 1, 1991 | P001-153 | X | | |
|---|---|---|---|---|---|
| K | Grant Thornton document production | G1-4016 | X | Y | Improper failure to designate individual documents |
| L | Fagenson subpoena and letter-response | Fagenson001-Fagenson010; | X | Y | Improper failure to designate individual documents |
| M | Fagenson Statements produced by defendant | PW1-131 | X | Y | Improper failure to designate individual documents |
| N | Wasserman note re: transfer to Soley account | PW132 | X | | |
| O* | Spreadsheet | PW133 | X | Y | Misdescribed – document is a ledger |
| P | Patriot Partners' 1099's | PW134-137 | X | | |
| Q | Patriot Partners' Grant Thornton statements produced by Wasserman | PW138-227 | X | Y | Improper failure to designate individual documents |
| R | Patriot Partners' tax return document produced by | PW228-269 | X | Y | Improper failure to designate individual |

*     Documents with "Asterisk ("*") indicate documents that relate to Joint Stocks and therefore should be offered, if at all, during the Bench Trial.

36

| | | | | | |
|---|---|---|---|---|---|
| | Wasserman | | | | documents |
| S | Patriot Partners' confirm documents produced by Wasserman | PW270-341 | X | Y | Improper failure to designate individual documents |
| T | Chase Bank statements produced by Wasserman | PW342-351 | X | | |
| U* | Tapistron document produced by Wasserman | PW352-354 | X | | |
| V* | NTII documents produced by Wasserman | PW355-420 | X | | |
| W* | Joint Stock documents produced by Wasserman | PW421-422 | X | | |
| X* | Cardima documents produced by Wasserman | PW455-546 | X | Y | Improper failure to designate individual documents |
| Y* | Nexmed documents produced by Wasserman | PW813-931 | X | Y | Improper failure to designate individual documents |
| Z* | Documents showing Nexmed/Apricus stock produced by Wasserman | PW932-1226 | X | Y | Improper failure to designate individual documents |
| AA | Patriot Partners' 2001 transaction confirms produced by Wasserman | PW1227-1772 | X | Y | Improper failure to designate individual documents |

**xi. In jury cases, proposed voir dire questions and requests to charge. Prior to submitting their requests to charge to the Court, parties shall (1) provide their proposed jury charges to each other; (2) meet to discuss their charges in an effort to agree to as many proposed charges as possible; and (3) prepare a single compact disc ("CD") for the Court which provides, for each charge, either (a) the agreed to proposed charge, or, to the extent the parties cannot agree on a proposed charge, (b) Plaintiff's proposed charge with (i) Defendant's objections to that charge (both cuts and additions) reflected in red-line edits to the proposed charge, or, if Defendants object to Plaintiff's charge in its entirety, (ii) Defendant's own proposed charge. In preparing the foregoing, the parties must provide legal authority for any jury charge they jointly or singly propose, as well as for any objection they raise to another party's proposed charge. They shall submit this CD to the Court with their pretrial order**

See accompanying documents

**xii. In nonjury cases, a statement of the elements of each claim or defense involving such party, together with a summary of the facts relied upon to establish each element**

<u>Plaintiff's Statement</u>

1) <u>Accounting – Patriot Partners</u>
   a) Elements of Accounting:  (a) fiduciary relationship, (b) breach of fiduciary duty. *Soley v. Wasserman*, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011).

   i) <u>Fiduciary relationship</u>
   based on Private Placement Memo, Partnership Agreement, Soley's entrusting Wasserman with funds to invest, parties' deposition testimony

   ii) <u>Breach</u>

   (1) $100,000 stolen based on $150,000 check from Soley's Merrill Lynch account made out to Group and deposited into Soley's Fagenson account, $150,000 later transferred to Partners' account, $50,000 repaid to Soley, remaining $100,000 paid to Wasserman, Grant Thornton accounting documents show funds inaccurately described as loan due to Wasserman, Grant Thornton accounting documents provided by Partners describe Soley's Fagenson account as a Wasserman account and describe the stolen funds as being transferred to Group, 1998 Partners' Financial Statement note describing Soley funds as loan due to Wasserman, inquiries from Soley in 1999 and 2006 and deposition questions to Wasserman about the funds, Wasserman and Tofel evasive responses to inquiries about the funds and failure to identify a loan.

   (2) Failure to account for October 1998 transfer in response to Soley Aug 1. 1999 letter

   (3) Failure to disclose that October 1998 Transfer of funds to Partners' account was a loan in response to Soley Aug 1, 1999 letter (if those funds are determined to be a personal loan to Wasserman)

   (4) Commingling of personal and Partners' funds in violation of Partnership Agreement, based on Soley Oct. 1998 transfer to Partners and Jan 1999 transfer from Partners to Soley  (if the Oct 1998 Transfer is determined to be a personal loan to Wasserman)

   (5) Failure to liquidate account when requested – based on 12/04 email from Wasserman acknowledging failure to comply with Soley request to

liquidate.

(6) Failure to trade in 2004 and 2005 – based on Fagenson account records, partnership agreement.

(7) Failure to maintain accurate records – based on Partners' 1998 Financial Statement describing Soley funds as loan due Wasserman, Grant Thornton accounting documents and those provided by Partners concerning October 1998 Transfer to Partners from Soley, failure to note Soley investment/loan to Partners in annual and quarterly statements 1998-2006, admissions by Partners noted in Grant Thornton documents that Partners failed to provide quarterly reports, no annual or quarterly reports for 2004 and 2005

b) <u>Accounting – Patriot Partners</u>
Also accounting claim based on dissolution of partnership, request by Soley for repayment of sums due and for an accounting, and defendant's failure to pay or provide an accounting.

2) <u>Accounting – Joint Stock</u>

a) Elements of Accounting Elements of Accounting:  (a) fiduciary relationship, (b) breach of fiduciary duty.  *Soley v. Wasserman*, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011).

(1) <u>Fiduciary relationship</u> – based on offer by Wasserman and agreement to entrust him with funds to invest, based on testimony of Soley, Wasserman and Stern; Wasserman control of funds and investments; checks to Wasserman and Group; Stern charts
(2) <u>Breach</u> – based on Wasserman testimony re: Sale of NTII and retaining of joint stocks; failure to provide information when requested based on Wasserman testimony re: accuracy of joint stock charts; Soley letter demanding accounting and complaining of failure to pay.
(3) <u>Damages</u> – based on facts set forth in expert report for failure to pay Soley for sold NTII stock

b) <u>Accounting</u> –Accounting also based on request by Soley for her funds and for an accounting, and failure of Wasserman to pay her or provide accurate information.

40

**<u>Defendant's Statement</u>**

**See Section IV above.**

**xiii. In all cases, a statement describing motions addressing any evidentiary or other issues which should be resolved in limine**

Plaintiff does not currently anticipate filing a motion or motions *in limine*.

Defendant will file a motion *in limine* seeking an order, or orders:

1.   precluding plaintiff from introducing evidence or argument at trial concerning or relating to any claims previously dismissed by the Court or as to which summary judgment has been granted;

2.   limiting the evidence to be offered by plaintiff's expert Stuart Fleischer;

3.   determining that Delaware law should be applied to the portions of plaintiff's claims that arise from her investment in Patriot Partners; and

4.   precluding plaintiff from arguing at trial, or introducing testimony or other evidence intended to support, any contention or suggestion that Patriot Partners was a "Ponzi scheme" or other fraudulent "pyramid scheme".

**xiv. In any case where such party believes it would be useful, a pretrial memorandum.**

Dated: New York, New York
        April 22, 2013

TOFEL & PARTNERS LLP                    LOUIS F. BURKE P.C.


/s/ *with permission (lsw)*              /s/
_____                 _____
Lawrence E. Tofel, Esq.                 Leslie Wybiral, Esq.
letofel@tofellaw.com                    lwybiral@lfblaw.com
Mark Lopeman, Esq.                      Louis F. Burke, Esq.
mlopeman@tofellaw.com                   lburke@lfblaw.com
                                        Alexander Tripp, Esq.
                                        atripp@lfblaw.com

730 Third Ave., 25th Floor              460 Park Avenue, 21ST Floor
New York, New York 10017                New York, NY 10022
Tel. 212-752-0007                       Tel:  (212) 682-1700
Fax 212-752-8881                        Fax:  (212) 808-4280
*Attorneys for Defendant*               *Attorneys for Plaintiff*




SO ORDERED: 6 - 6 - 13




_____
Hon. Kimba Wood, USDJ

44