UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JUDY W. SOLEY,                                    :
                                                  :
                        Plaintiff,                :        08 Civ. 9262 (KMW) (FM)
                                                  :        <u>OPINION & ORDER</u>
        -against-                                 :
                                                  :
PETER J. WASSERMAN,                               :
                                                  :
                        Defendant.                :
-------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

      Courts rely on forthright and accurate representations by counsel in making their decisions.  Part and parcel of such representations are the accurate attribution of legal research and argument.  For those reasons, the Court was disappointed to discover that nearly two of the nine pages of legal argument in Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for in Limine Relief ("Pl.'s Mem.") are copied from a judicial opinion—nearly verbatim—without any attribution.  [Dkt. No. 86].  Plaintiff's Memorandum argues, in relevant part:

> When a party relies exclusively on one forum's law throughout the course of an action only to argue later that a different forum's law should be applied, courts engage in an estoppel analysis. *See, e.g., Wiener v. Unumprovident Corp.*, No. 00 Civ. 9315 (NRB), 2002 U.S. Dist. LEXIS 17828, 2002 WL 31108182, at *2 n.2 (S.D.N.Y. Sept. 20, 2002); *Nat'l Utility Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d 438, 444-45 (D.N.J. 1999); *Pereira v. Aetna Cas. & Sur. Co. (In re Payroll Express)*, 921 F. Supp. 1121, 1123-24 (S.D.N.Y. 1996). In *National Utility*, for example, the plaintiff relied on New Jersey law throughout the litigation, including when it moved for summary judgment. After defendants opposed the motion and agreed that New Jersey law applied, the plaintiff contended for the first time in its reply papers that Virginia law governed. 45 F. Supp. 2d at 444. The court applied the doctrine of judicial estoppel, a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts. *Id.*

1

(*quoting In re Chambers Dev. Co.*, 148 F.3d 214, 229 (3d Cir. 1998) (*quoting Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996))).

       The courts have applied two different tests for determining estoppel in this choice of law context. *See Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995) (discussing majority and minority views). In *Payroll Express*, the court applied what the Ninth Circuit has termed the "majority view": a party is judicially estopped where "1) it argued an inconsistent position in a prior proceeding; and 2) this position was adopted by the court in some manner." 921 F. Supp. at 1124 (citing *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037-38 (2d Cir.), *cert. denied*, 510 U.S. 992 (1993)); *accord Stichting Ter Behartiging Van De Belangen v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005); *see Gen. Signal*, 66 F.3d at 1505 (majority view looks at whether court has adopted party's earlier inconsistent position).

       This "majority view" estoppel analysis has been adopted by the Second Circuit. *See, e.g., Bates*, 997 F.2d at 1037-38. Under this view, defendant is estopped from arguing that Delaware law governs.

(Pl.'s Mem. 11-13).  Plaintiff's brief then concludes with two sentences of original argument.

The lion's share of Plaintiff's analysis is lifted from a 2008 decision by then District Judge Chin:

       [W]here a party relied exclusively on one forum's law only to argue later that a different forum's law applied, the courts have engaged in an estoppel analysis. *See, e.g., Wiener v. Unumprovident Corp.*, No. 00 Civ. 9315 (NRB), 2002 WL 31108182, at *2 n. 2 (S.D.N.Y. Sept. 20, 2002); *Nat'l Utility Serv., Inc. v. Chesapeake Corp.*, 45 F.Supp.2d 438, 444-45 (D.N.J. 1999); *Pereira v. Aetna Cas. & Sur. Co. (In re Payroll Express)*, 921 F. Supp. 1121, 1123-24 (S.D.N.Y. 1996). In *National Utility,* for example, the plaintiff relied on New Jersey law throughout the litigation, including when it moved for summary judgment. After defendants opposed the motion and agreed that New Jersey law applied, the plaintiff contended for the first time in its reply papers that Virginia law governed. 45 F.Supp.2d at 444. The court applied the doctrine of judicial estoppel,

> 'a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts.'

2

> *Id.* (quoting *In re Chambers Dev. Co.*, 148 F.3d 214, 229 (3d Cir.1998) (quoting *Ryan Operations, G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996))).
>
> The courts have applied two different tests for determining estoppel in this choice of law context. *See Gen. Signal Corp. v. MCI Telecomm. Corp.,* 66 F.3d 1500, 1505 (9th Cir. 1995) (discussing majority and minority views). . . .
>
> In *Payroll Express,* the court applied what the Ninth Circuit has termed the "majority view": a party is judicially estopped where "1) it argued an inconsistent position in a prior proceeding; and 2) this position was adopted by the court in some manner." 921 F.Supp. at 1124 (citing *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1037-38 (2d Cir.), *cert. denied,* 510 U.S. 992 (1993)); *accord Stichting Ter Behartiging Van De Belangen v. Schreiber,* 407 F.3d 34, 45 (2d Cir.2005); *see Gen. Signal,* 66 F.3d at 1505 (majority view looks at whether court has adopted party's earlier inconsistent position). . . .
>
> Here, the majority view governs, as that is the view adopted by the Second Circuit. *See, e.g., Bates,* 997 F.2d at 1037-38. Under either view, however, Khubani is not estopped from arguing that California law governs.

<u>Khubani v. Ionic White, Inc.</u>, No. 05 Civ. 3706, 2008 WL 878717, *1-2 (S.D.N.Y. Apr. 3, 2008) (Chin, J.). It is further worth noting that in <u>Khubani</u>, Judge Chin ultimately rejected a judicial estoppel argument very similar to the one pressed by Plaintiff in this case.

Despite Plaintiff's egregious conduct, Plaintiff has not misrepresented the state of the law. Accordingly, the Court does not consider this plagiarism when ruling on the merits of the arguments presented below. Plaintiff's counsel is urged to proceed with greater care in the future.

**I.   Background**

In this case, Plaintiff Judith W. Soley ("Soley") asserts various causes of action against her brother, Defendant Peter J. Wasserman ("Wasserman"), arising out Wasserman's conduct as Soley's financial advisor over approximately the past thirty years. This Court's prior decisions in

this matter,[1] familiarity with which is assumed, substantially narrowed the factual issues remaining to be tried.  The Court's most recent decision set Soley's breach of fiduciary duty claim for a jury trial, and set Soley's accounting claim for a bench trial.  See Soley v. Wasserman, No. 08 Civ. 9262, 2013 WL 1655989 (S.D.N.Y. Apr. 17, 2013) (Wood, J.).

The Parties have since submitted a joint pre-trial order, [Dkt. No. 89 ("JPTO")],[2] and are schedule to commence trial on July 29, 2013.  Wasserman has also filed a motion in limine. [Dkt. No. 83].  For the reasons that follow, Wasserman's motion is GRANTED in part and DENIED in part.

## II.   Legal Standards

The Federal Rules of Evidence ("FRE") favor the admission of all relevant evidence.  See Fed. R. Evid. 402.  Evidence is relevant if it "tend[s] to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Where the probative value of relevant evidence is slight, however, FRE 403 may preclude its admission.  Under FRE 403, the Court has discretion to exclude relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Similarly, FRE 702, which governs the admissibility of expert testimony, "embodies a liberal standard of admissibility."  Nimely v. City of New York, 414 F.3d 381, 396 (2d Cir. 2005).  Expert testimony shall be excluded, however, when it is "unhelpful and therefore

---

[1] Soley v. Wasserman, No. 08 Civ. 9262, 2010 WL 931888 (S.D.N.Y. Mar. 12, 2010) (Crotty, J.) (Wasserman's motion to dismiss); Soley v. Wasserman, 823 F. Supp. 2d 221 (S.D.N.Y. 2011) (Wood, J.) (same); Soley v. Wasserman, No. 08 Civ. 9262, 2013 WL 526732 (S.D.N.Y. Feb. 13, 2013) (Wood, J.) (resolving cross-motions for summary judgment).

[2] Wasserman has objected to Soley's deposition designations in the JPTO.  [Dkt. No. 85].  The Court has requested that the Parties provide the Court with highlighted copies of their deposition designations, and the Court will rule on Wasserman's objections once the parties comply with this request.  [Dkt. No. 90].

superfluous and a waste of time." In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 643 F. Supp. 2d 482, 493-94 (S.D.N.Y. 2009) (Scheindlin, J.).

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." Carofino v. Forester, 450 F. Supp. 2d 257, 270 (S.D.N.Y. 2006) (Leisure, J.) (citing Luce v. United States, 469 U.S. 38, 41 n.4 (1984)). Where such a motion requests that certain evidence be precluded, the court must "make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." Allen v. City of New York, 466 F. Supp. 2d 545, 547 (S.D.N.Y. 2006) (citation omitted). At the motion in limine stage, a district court will exclude evidence "only when the evidence is clearly inadmissible on all potential grounds." In re MTBE, 643 F. Supp. 2d at 492 (quoting United States v. Ozsusamlar, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006) (Wood, J.)).

"[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context." United States v. Chan, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) (Leisure, J.). Such rulings, of course, are "subject to change when the case unfolds." Luce, 469 U.S. at 41.

**III.    Analysis**

Wasserman's motion in limine raises four distinct issues: First, Wasserman requests that the Court preclude Soley from presenting evidence relating to various claims that have already been dismissed by the Court. Second, Wasserman requests an order limiting the testimony of Soley's expert witness. Third, Wasserman requests that Soley be precluded from referring to Patriot Partners as a "Ponzi Scheme." Fourth, Wasserman argues that Delaware law should apply to Soley's claims relating to Patriot Partners. The Court addresses each issue in turn.

5

**(1) Evidence Relating to Claims that Have Been Dismissed**

Wasserman seeks an order prohibiting Soley "from mentioning or adducing evidence regarding claims" that have been dismissed by prior court orders. (Def.'s Mem. of Law in Supp. of Mot. for in Limine Relief 3 ("Def.'s Mem.")). Wasserman contends that evidence relating to these topics should be precluded as irrelevant, unduly prejudicial, and likely to confuse the jury. Id. In particular, Wasserman seeks an order precluding reference to the following topics: (a) the Harris Corporation Stock, (b) Securities Fraud, (c) Patriot Group, (d) the Kaminsky Interest, (e) Investment Advisor, (f) Other Investment Accounts, and (g) the Joint Stock Investment Damages. (Id. at 5-8)

Soley acknowledges that many of her original claims have been dismissed.[3] She represents to the Court that she "will not introduce evidence to establish th[ose] claim[s]." (Pl.'s Mem. 5). Soley insists, however, that a blanket order precluding any reference to these topics is inappropriate because some of the evidence is necessary to understand her remaining claims.

(a) Harris Corporation Stock

In deciding Wasserman's motion to dismiss the original complaint, District Judge Crotty summarized Soley's allegations regarding the Harris stock:

> In 1981, Soley loaned Wasserman 10,444 shares of Harris Corporation common stock (the "Harris stock"). Wasserman promised to return the Harris stock and to pay Soley between $10,000 and $15,000 for the loan by August 1, 1982. According to the Complaint, at the time of the loan Wasserman was Soley's "investment advisor." When Soley called Wasserman shortly before August 1, 1982 and asked about the return of the Harris stock, Wasserman was incensed and told her that he had "bigger problems to deal with." Over the years, Soley repeatedly asked Wasserman about the Harris stock, and each time Wasserman told her not to worry because he would "make her money" and that she should continue "to trust and rely upon him as her investment advisor." Wasserman,

---

[3] The JPTO specifies claims that are "not to be tried," including: securities fraud, conversion, unjust enrichment, fraudulent conveyance, breach of contract as investment manager, breach of contract for the Joint Stock Investments, accounting with respect to Patriot Group, common law fraud, and alter ego liability. (See JPTO 4).

6

>however, never returned the Harris stock, and in a letter dated February 15, 2007, he stated "[a]s to the Harris Corp. stock, after all these years I do not recall with any degree of certainty the precise back and forth on the issue." Soley believes that the Harris stock is now worth $2.5 million.

Soley, 2010 WL 931888, at *1 (citations omitted).  Judge Crotty determined that Soley's claims relating to the Harris Stock were time-barred because Soley filed her complaint well after the statute of limitations for fraud had run.  Id. at *8.

In opposition to Wasserman's motion in limine, Soley argues that reference to "[her] loan to [Wasserman] of 10,444 common shares of Harris Corporation Stock is relevant and essential, because it provides necessary context for [the Parties'] longstanding and often conflicted investment advisory relationship."  (Pl.'s Mem. 5).  Soley also contends that "[Wasserman]'s failure to honor his commitment to return the Harris Corporation Stock is also consistent with his habit of ignoring plaintiff's requests and his disregard of her inquiries whether written or verbal."  (Id.).  The Court rejects these arguments.

Any evidence regarding the Parties' dispute over the Harris loan and stock purchase concerns matters that occurred in the early 1980s.  Soley's contentions about these matters were never adjudicated.  They thus have little or no probative value, and would be unfairly prejudicial to Wasserman.[4]

Soley's attempt to characterize the Harris stock evidence as "habit" evidence is flawed.  FRE 406 provides that "[e]vidence of the habit of a person . . . is relevant to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit or routine practice."  The relevant Committee Note defines "habit" as "the person's regular [semi-automatic] practice of meeting a particular kind of situation with a specific type of conduct, such

---

[4] In February 2012, Magistrate Judge Maas quashed two subpoena requests relating to the Harris Stock.  [Dkt. No. 44].  Judge Maas noted that "any issues related to the Harris Stock have not been part of this case for nearly two years" and therefore the subpoenas sought "information which simply is not relevant to any claims that remain in this suit."  [Id. at 4 (emphasis added)].

7

as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn." Fed. R. Evid. 406 advisory committee's note (internal quotation marks omitted); see also Zubulake v. UBS Warburg LLC., 382 F. Supp. 2d 536, 542 (S.D.N.Y. 2005) (Scheindlin, J.) ("Habit is conduct that is situation-specific, i.e., specific, particularized conduct capable of almost identical repetition."). The Court finds no merit to Soley's position that Wasserman's actions regarding the Harris stock in the early 1980s, the October 1998 Transfer, or the Joint Stock Investments in 1997 were "semi-automatic" or involve "almost identical repetition." To the contrary, the Court deems these transactions to be "sporadic…unrelated acts taking place over the course of many years" and consequently "fall[] far short of establishing" habit. United States v. Al Kassar, 582 F. Supp. 2d 498, 501 (S.D.N.Y. 2008) (Rakoff, J.).

Accordingly, Soley is precluded from introducing evidence relating to the Harris Stock.

(b) Securities Fraud

Soley has represented to the Court that she does not intend to introduce evidence relating to her now dismissed securities fraud claim. (Pl.'s Mem. 5). Accordingly, Soley is precluded from introducing evidence relating to her dismissed securities fraud claim.

(c) Patriot Group

Soley's Amended Complaint alleged that between 1992 and 1998, Soley extended seventeen loans, totaling $1.4 million, to Patriot Group, a general partnership formed by Wasserman. Soley alleged that Patriot Group "repaid Soley only $877,150, leaving an outstanding balance of $575,487." Soley, 823 F. Supp. 2d at 227. In January 2007, however, Patriot Group's accountant, Peter Kamras, allegedly provided Soley with a summary of Soley's loans and indicated that Patriot Group had "paid Soley $240,150 more than she was owed." Id. Soley challenged the accuracy of the summary. Id. The Court ultimately dismissed Soley's

8

claims relating to the Patriot Group loans because Soley had not established a fiduciary relationship with Wasserman.  See Soley, 823 F. Supp. 2d at 233.

Wasserman seeks an order precluding any discussion of Patriot Group at trial.  Soley opposes this request, contending that references to Patriot Group are necessary because "the evidence will show that [Wasserman] ran Patriot Partners and Patriot Group—the two hedge funds he controlled—through interconnected transactions that shuttled money between the funds."  (Pl.'s Mem. 5).  In particular, Soley contends that she must refer to Patriot Group in order to explain the transactions underlying a loan made in July 1998.  Proceeds from that loan, Soley explains, were transferred to the same account from which the October 1998 Transfer was made.  (Id.).  Soley also contends that Wasserman "concealed his wrongdoing [regarding the October 1998 Transfer] with falsified accounting records implicating Patriot Group."  (Id.).

As a preliminary matter, the Court finds the vast majority of the loans Soley made to Patriot Group to be irrelevant to the issues to be addressed at trial.  Soley does not attempt to establish a connection for most of the loans.  Moreover, the Court is not convinced that the July 1998 loan is relevant to understanding the October 1998 Transfer.  The mere fact that two transfers involved the same personal bank account does not establish relevance.[5]

Soley comes closer to establishing relevance when she argues that Wasserman "concealed his wrongdoing [regarding the October 1998 Transfer] with falsified accounting records implicating Patriot Group."  (Pl.'s Mem. 6).  At trial, Soley will be given a very limited

---

[5] Soley's attempt to admit Patriot Group evidence through FRE 406 as "habit" evidence fails for the same reasons discussed with respect to the Harris Stock.  See supra Part C.1.a (citing Zubulake, 382 F. Supp. 2d at 542); see also U.S. Football League v. Nat'l Football League, 842 F.2d 1335, 1372 (2d Cir. 1988) (holding that "testimony as to three or four episodes over a 20-year period was hardly sufficient to conclude that a pattern of behavior exists with respect to the conduct at issue") (internal quotation marks and citation omitted); Al Kassar, 582 F. Supp. 2d at 501 ("Here, the classified information, which relates to sporadic, often unrelated acts taking place over the course of many years, falls far short of establishing any frequent, semi-automatic conduct in response to a particular kind of situation.").

opportunity to present the Court, outside the hearing of the jury, with specific evidence demonstrating how Patriot Group was implicated in the accounting for the October 1998 Transfer.[6]  Absent such a showing, Soley will not be permitted to present any evidence regarding Patriot Group.

        (d) <u>The Kaminsky Interest</u>

Wasserman next asks the Court to preclude Soley from "claiming or contending at trial that [Wasserman] breached any duty to [Soley] in connection with the separate re-purchase of the Patriot Partners limited partnership interest that [Soley] purchased in 1993 from Gerald Kaminsky."  (Def.'s Mem. 6).  In response, Soley states that she does not seek to assert damages arising from her purchase of the Kaminsky interest, but rather demonstrate her "compliance with Patriot Partners' corporate formalities and [Wasserman]'s habit of ignoring [her] requests for information and redemption."  (Pl.'s Mem. 7).

Once again, Soley's misreads the scope of FRE 406.  Soley cites no support for her interpretation, and the Court concludes that the Kaminsky evidence does not meet the standard required by FRE 406.  <u>See</u> <u>supra</u> n.3 (citing <u>Zubulake</u>, 382 F. Supp. 2d at 542; <u>U.S. Football League</u>, 842 F.2d at 1372; <u>Al Kassar</u>, 582 F. Supp. 2d at 501).  Soley is not permitted to introduce evidence relating to the Kaminsky interest.

        (e) <u>Investment Advisor</u>

Wasserman next seeks an order precluding Soley from referring to Wasserman as her "investment adviser."  Wasserman argues that "investment advisor" is a term of art wholly inapplicable to Soley's remaining claims.  (Def.'s Mem. 7).  Although Soley acknowledges that

---

[6] Magistrate Judge Maas quashed various subpoenas relating to Patriot Group because Plaintiff had no basis, "other than sheer speculation, for . . . seek[ing] records relating to [Patriot] Group in order to reconcile her [Patriot] Partners capital account."  (Mass Feb. 2012 Order 5).  The Court reiterates that "sheer speculation" will not be a sufficient basis to present testimony regarding Patriot Group at trial.

her "breach of contract—investment manager" claim has been dismissed, she argues that the term is admissible because she does not seek to use the phrase "investment advisor" as a term of art. Rather, she seeks to use it to describe "someone who advises others how to invest their money." (Pl.'s Mem. 7-8).

"Investment advisor" is a term of art in the securities industry. See 15 U S.C. § 80b-2(a)(11) (defining an "investment adviser" as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities"). But the fact that a term-of-art meaning exists does not preclude a common meaning of that phrase. If Soley offers competent evidence that Wasserman routinely advised her regarding investments, she may choose to testify that she viewed him as her investment advisor. Wasserman may, of course, dispute any such characterization.

If, at trial, Soley's use of "investment advisor" appears to be confusing or unduly prejudicial, the Court may revisit this ruling or provide a limiting instruction.

      (f)  <u>Other Investment Accounts</u>

In adjudicating Wasserman's motion to dismiss the Amended Complaint, the Court described Soley's remaining claims as breach of fiduciary duty and accounting "with respect to Patriot Partners and those investment accounts over which Wasserman had discretionary authority." <u>Soley</u>, 823 F. Supp. 2d at 233, 237. Wasserman now seeks an order clarifying that the only discretionary accounts at issue at trial are the Joint Stock Investments. (Def.'s Mem. 7-8). Soley objects, arguing that the Court's opinion speaks for itself and permits Soley's to introduce evidence relating to any discretionary account. (Pl.'s Mem. at 8).

Up to this point in the litigation, this Court has not squarely considered what discretionary accounts exist.  See Soley, 2013 WL 526732, at *3, *6 (repeating language from earlier opinions that did not address the issue (citing Soley, 823 F. Supp. 2d at 233, 237)).  The Court agrees with Wasserman that, other than Patriot Partners, the only discretionary accounts at issue are the Joint Stock Investments.  No other discretionary accounts have been discussed in the Court's prior rulings, and Soley does not identify any such accounts in her current briefing.  Moreover, Magistrate Judge Maas has indicated that no other discretionary accounts exist.  [Dkt. No. 44].  In settling a discovery dispute between the Parties, Judge Maas noted that "Soley's counsel suggests that [her] accounting [claim] would extend to any accounts in which Soley held a beneficial interest that Wasserman had discretionary authority to trade."  (Id. at 1).  Judge Maas rejected this interpretation and noted that in Soley's Amended Complaint "the only investments other than [Patriot] Partners and the Joint Stock Investments that Soley has alleged were mishandled are those relating to Patriot Group."  (Id.).  The Patriot Group claims, of course, have been dismissed, leaving only Patriot Partners and the Joint Stock Investments.

Accordingly, Wasserman's motion in limine is granted on this ground: the only discretionary accounts at issue are the Joint Stock Investments.

(g) Joint Stock Investments Damages

The final category of evidence that Wasserman seeks to exclude relates to Soley's claim—now dismissed—that Wasserman failed to sell the Joint Stock Investments when they became "freely tradeable."

The Court's summary judgment decision speaks for itself on this point.  "[T]he Court granted Wasserman's motion for partial summary judgment, holding that the statute of limitations barred any contractual claim based on Soley's contention that Wasserman failed to

sell the Joint Stock Investments as soon as they became freely tradeable." Soley, 2013 WL 526732, at *7. Soley is thus precluded from adducing evidence intended to establish this claim. This limitation, "however, does not preclude Soley from asserting a claim that Wasserman violated his fiduciary duty 'by refusing to account' for the Joint Stock Investments when Soley requested an accounting." Id.

### (2) Plaintiff's Expert Testimony

Next, Wasserman asks the Court to limit various aspects of the testimony of Soley's accounting expert, Stuart Fleischer. Wasserman reasserts various arguments from his previous motion in limine, which the Court addressed in part at summary judgment. See Soley, 2013 WL 526732, at *8-9.

(a) Testimony Concerning the Joint Stock Investments

Wasserman first asks the Court to preclude Mr. Fleischer from testifying regarding damages relating to the Joint Stock Investments. The Parties' arguments reveal a dispute as to what remains of Soley's breach of fiduciary duty claim regarding the Joint Stock Investments. The Court will clarify the scope of the claim, and will also address Wasserman's in limine request.

"To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary relationship; (2) misconduct by defendant constituting a breach of its fiduciary duty to plaintiff; and (3) damages to plaintiff directly caused by defendant's misconduct." Sokol Holdings, Inc. v. BMB Munai, Inc., 726 F. Supp. 2d 291, 305-06 (S.D.N.Y. 2010) (Wood, J.) (citing Berman v. Sugo LLC, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008) (Patterson, J.)). With respect to the Joint Stock Investments, the Parties' summary judgment motions focused on the second and third elements. The Court determined that Soley was not entitled to summary

judgment. In particular, the Court determined that "material disputes" remained with respect to what information Soley sought from Wasserman regarding the Joint Stock Investments and what information she was provided. The Court thus permitted Soley to present evidence at trial "that Wasserman violated his fiduciary duty by refusing to account for the Joint Stock Investments." Soley, 2013 WL 526732, at *7 (internal citation and quotation marks omitted). Further, Soley may present evidence at trial that this alleged misconduct "directly caused" damages. Sokol, 726 F. Supp. 2d at 305-06.

The Court did, however, grant Wasserman's motion for summary judgment with respect to Soley's contention that Wasserman should have sold the Joint Stock Investments once those securities became publically tradeable. Soley, 2013 WL 526732, at *5. Accordingly, Soley will not be permitted to present evidence at trial regarding that issue. Wasserman's request for in limine relief is granted to this extent.

Wasserman's broader argument—that a jury trial is unnecessary with respect to the Joint Stock Investments—goes too far. Soley may establish a breach of fiduciary duty based on Wasserman's alleged failure to respond to Soley's requests for information regarding the investments. If so, Soley will be required to prove damages "directly caused" by this breach. These are unresolved factual questions to be decided by a jury.

(b) Testimony Regarding Valuation of Securities

Wasserman renews his objection, first asserted at the summary judgment stage, that Mr. Fleischer should be precluded from testifying regarding any valuation of securities because "he has no special expertise in securities or valuation of securities, and he based this entire section of his report on values he found by admittedly unreliable internet research." (Def.'s Mem. 9).

The admissibility of expert testimony is a preliminary question of law for the court to determine. See Fed. R. Evid. 104(a). "The proponent of the testimony bears the burden of demonstrating its admissibility by a preponderance of the evidence." Celebrity Cruises Inc. v. Essef Corp., 434 F. Supp. 2d 169, 175 (S.D.N.Y. 2006) (Francis, Magis.). Trial judges must perform a "gatekeeping" function to ensure that the expert testimony "both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993). This gatekeeping role "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 146-47 (1999).

As discussed in Part III.2.a, the Court has already granted Wasserman's motion for summary judgment with respect to Soley's contention that Wasserman should have sold the Joint Stock Investments once those securities became publically tradeable. Soley, 2013 WL 526732, at *5. Accordingly, Mr. Fleischer's testimony regarding the losses that Soley suffered since the Joint Stock Investments became freely tradeable is not relevant and therefore inadmissible.

The Court will conduct a pre-trial hearing to evaluate any additional testimony regarding securities and the valuation of securities. Soley shall submit, no later than June 28, 2013: (1) a summary of any securities-related testimony that she anticipates Mr. Fleischer will offer, and (2) documentary evidence supporting Mr. Fleischer's qualifications to testify in this area. Wasserman shall submit his opposition no later than July 5, 2013. The Court will hold a hearing on this matter on July 10, 2013 at 2:45 pm.

(c) Use of the Terms "Damages"

Wasserman next argues that "Mr. Fleischer should be precluded from testifying that his 'schedules' of [Soley's] investment in Patriot Partners [and] their rise and fall in value . . .

15

constitute 'damages.'" (Def.'s Mem. 10). Wasserman argues that any reference to "damages" amounts to improper testimony relating to an ultimate issue of liability. Wasserman suggests that Mr. Fleischer use the phrase "claimed losses" rather than "damages." (Id.).

Expert testimony may not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999) (citations and quotation marks omitted). Wasserman, however, cites no legal authority for the proposition that an expert's use of the word "damages" constitutes such improper usurpation. Accordingly, the Court will permit Mr. Fleischer to testify in this manner. Of course, counsel will make clear any assumptions involved in Mr. Fleischer's testimony and ensure that the testimony does not invade the factfinder's role. If necessary, the Court will consider issuing a limiting instruction.

### (3) "Ponzi Scheme" Reference

Wasserman requests that this Court preclude Soley from referring to Patriot Partners as a "Ponzi Scheme." (Def.'s Mem. 11-14). In response, Soley represents that she "does not intend to use the term 'Ponzi Scheme.'" (Pl.'s Mem. 10). Soley's representation moots Wasserman's request, but for the sake of clarity, the Court hereby precludes any reference or innuendo at trial that portrays Patriot Partners as a "Ponzi" or "pyramid" scheme.

### (4) Delaware Law

Wasserman's final contention is that Delaware law should apply to Soley's claims "relating to her limited partnership interest in Patriot Partners." (Def.'s Mem. 15). In support of this contention, Wasserman notes that Patriot Partners was organized under Delaware law, and the Partnership Agreement, which Soley signed, provided that "[t]his Agreement shall, except as otherwise expressly provided herein, be governed by, and construed in accordance with,

Delaware law." (Partnership Agreement, Art. XV, Sec. 15.8, pg. 40 (Tofel Sept. 14, 2012 Aff. Ex. G) [Dkt. No. 64]). Soley does not dispute Wasserman's characterization of the Partnership Agreement, but instead contends that Wasserman should be judicially estopped from arguing for the application of Delaware law. (Pl.'s Mem. 11-12).

In this circuit, judicial estoppel "typically" applies if three conditions are met: (1) if "a party's later position is 'clearly inconsistent' with its earlier position;" (2) if "the party's former position has been adopted in some way by the court in the earlier proceeding;" and (3) if "the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." In re Adelphia Recovery Trust, 634 F.3d 678, 695-96 (2d Cir. 2011) (quoting DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010)). Further, judicial estoppel applies only "to situations where the risk of inconsistent results with its impact on judicial integrity is certain." Id. at 696 (quoting DeRosa, 595 F.3d at 103) (internal quotation marks omitted).

The Court finds that all three conditions of judicial estoppel are met in this case. The Parties have been litigating with respect to Patriot Partners since 2009. Until now, Wasserman has never cited Delaware law, nor even raised the possibility that Delaware law applies. Indeed, Wasserman has consistently cited New York law when asking the Court to dismiss Soley's claims. For example, Wasserman has repeatedly argued that Soley's claims relating to the October 1998 Transfer to Patriot Partners were barred by the New York statute of limitations. [See Dkt. No. 11 at 10 (citing N.Y.C.P.L.R. §§ 213, 214); Dkt. No. 65 at 11 (citing N.Y.C.P.L.R. § 213)]. Although the Court has never explicitly addressed which forum's law applies to Soley's Patriot Partners claim, the Parties and the Court have consistently operated on the premise that New York law controls.[7] Moreover, to accept Wasserman's new position at this late stage risks

---

[7] Over the years, the Court has applied New York law to Patriot Partners claims in various contexts other than the statute of limitations. See, e.g. Soley, 823 F. Supp. 2d at 229 (applying New York

17

creating inconsistent results and providing Wasserman with the unfair advantage of a shorter limitations period.  Compare N.Y.C.P.L.R. § 213 (six-year limitations period), with Del. Code Ann. tit. 10 § 8106 (applying three-year statute of limitations for contract actions); and In re Am. Int'l Grp., Inc., 965 A.2d 763, 812 (Del. Ch. 2009) ("For a breach of fiduciary duty . . . the statute of limitation is three years.").

**IV.     Conclusion**

Wasserman's motion in limine is GRANTED in part and DENIED in part.  As discussed in Part III.2.b, the Parties will appear for a pre-trial conference on July 10, 2013 at 2:45 pm.  Soley's submission is due June 28, 2013.  Wasserman's submission is due July 5, 2013.

SO ORDERED.

Dated: New York, New York
       June 21, 2013

/s/_____
            Kimba M. Wood
      United States District Judge

---

law to dismiss Plaintiff's claim that Patriot Partners was Wasserman's alter ego); id. at 232-35 (applying New York law to Plaintiff's breach of fiduciary duty claim); Soley, 2013 WL 526732, at *3-5 (same).