Stuart L. Fleischer
25 High View Road
Ossining, NY 10562

May 31, 2012

Louis F. Burke, Esq.
Louis F. Burke PC
460 Park Avenue
New York, NY 10022

               Re:    <u>Corrected Expert Report</u>

Dear Mr. Burke:

As you requested, I have reviewed the documents you furnished to me, consisting of certain documents produced by Mrs. Soley (FLEISCHER 1-5014, Plaintiff 1-1041), Mr. Wasserman (PW 1-1778), Mr. Kamras (KAMRAS1-1364), Fagenson & Co., Mr. Stanton and Grant Thornton & Co. (G1-4016), together with deposition transcripts of Mr. Wasserman and Mrs. Soley. You have asked me to schedule and document the investment transactions between Mrs. Soley and Mr. Wasserman relating to her interest in Patriot Partners LP ("Partners") and her investments in certain other securities which were to be managed by Mr. Wasserman; the financial results of those transactions; and the resulting damages suffered by Mrs. Soley, including the calculation of pre-judgment interest.

With respect to Mrs. Soley's interest in Partners, Schedule A traces, to the extent information was available, the changes in her capital account (i.e. the changes in her portion of the net worth of the partnership) starting from her initial investment and adjusted for her subsequent additional investments or withdrawals and her share of subsequent profits and losses. Schedule A also tracks the loan Mrs. Soley made to Partners and its subsequent partial repayment.

Schedule B documents the decline of partnership activity from an active trading entity in 2001, through decline in activity with a last flurry of action in late 2003, to complete inactivity thereafter. Independent audit work continued into 2003 and stopped thereafter. Apparently thorough and complete tax returns were prepared for 2003 and, again, little or nothing thereafter. Based on all that, it appears that the partnership effectively ceased conducting business at December 31, 2003.

Page 2


Schedule C measures the damages suffered by Mrs. Soley resulting from 1) the failure to fully and timely repay the money she loaned the partnersbip and 2) the failure to distribute her remaining partnership interest (her capital) at the time the partnership effectively ceased business. In the damage calculation we have also computed the statutory pre-judgment interest at 9% on 2 bases. The first basis assumes the statutory interest on the unpaid loan portion begins at the time Mrs. Soley demanded repayment; the second basis assumes that interest does not start on the loan until it started on the unpaid partnership capital position. i.e., when Partners effectively ceased conducting business.


Schedule D presents the information furnished regarding other investments made by Mrs. Soley with and through Mr. Wasserman and usually with Mr. Stern, an acquaintance of Mr. Wasserman. Mrs. Soley wrote at least 4 checks to Mr. Wasserman or to his other entity, Patriot Group, for investment in private placement securities that Mr. Wasserman believed would appreciate in value and would be sold when those securities were allowed to trade publicly. In response to Mrs. Soley's requests for information with regard to these investments, Mr. Wasserman and/or Mr. Stern prepared schedules purporting to show the shareholdings and value of the invested securities at various dates. One of the securities appearing on these schedules, Neurobiological Technologies (NTII), was apparently sold by Mr. Wasserman in 2000 for over $4 per share. None of the resulting $100,000 + attributable to Mrs. Soley's 25,000 shares of NTII were distributed to her. Shares of InSite Vision appear only on the 2007 Wasserman/Stern schedule. We have no other evidence of Mrs. Soley's ownership of this security. Patriot Group apparently still holds the NexMed shares bought by Soley. Other than for NTII, there is no independent information regarding the disposition of the securities Soley bought on Wasserman's recommendation. For these securities we have made valuation and timing assumptions based on information in certain produced documents and/or from the Internet.


Schedule E measures the damages suffered by Mrs. Soley arising from the failure of Mr. Wasserman to adhere to the investment strategy he communicated to and was understood by Mrs. Soley at the time these investments were made. The damages, including pre-judgment interest at 9% per annum through May 31, 2012, are presented individually by security and in total.

Page 3

Conclusion

Mrs. Soley has suffered damages as follows:

| | |
|---|---:|
| Patriot Partners, LP | $ 423,739.00 |
| Other Investments | 203,503.50 |
| | 647,242.50 |
| Pre-judgment interest to 5/31/12: | |
| Patriot Partners (with interest on loan) | 415,229.73 |
| Other Investments | 208,338.02 |
| Total damages (with interest on loan) | $1,270,809.25 |
| Total damage (without interest on loan) | $1,231,059.31 |

Very truly yours:

*[signature]*

Stuart L. Fleischer

- Publications in the past 10 years: none.

- Cases in which, during the past 4 years, I have testified as an expert at trial or by deposition: none.

- Compensation for study and testimony in the case: $400/hr.

- Qualifications: see attached CV.

## STUART L. FLEISCHER

## STUART FLEISCHER ASSOCIATES

After more than 40 years of professional accounting practice and after "waiting out" a one year non-compete contractual agreement resulting from the merger of his forensic accounting Firm, Stu Fleischer, d/b/a Stuart Fleischer Associates, became an independent financial consultant in the areas of his expertise specializing in transactional analysis, forensic accounting, financial investigation, work-out and insolvency consulting, litigation support and expert witness engagements. He received professional consulting assistance, as required, from certain ex employees of his own former forensic accounting Firm. He has gradually reduced his consulting activity as he approaches full retirement, and now only accepts engagements of particular interest. Currently, his consulting fee is $400 per hour.

For over 10 years, Stu Fleischer managed his own accounting and consulting Firm concentrating exclusively in the areas of his expertise. Stuart Fleischer Associates LLP ("the Fleischer Firm") consisted of six forensic accounting professionals who had consulted in hundreds of problem situations of various types. Effective June 2002 the Fleischer Firm merged with a larger forensic accounting firm. The Fleischer Firm became the New York City office of that firm and continued its historical professional practice. Stu Fleischer left that firm in May 2004, subject to the aforementioned one-year non-compete agreement.

As a Partner, Founder and the Managing Director of Arthur Young's Reorganization and Insolvency Division, Stu had directed the full-time professionals in this group and supervised the Firm's national practice prior to its merger with Ernst & Whinney. He then joined Richard A. Eisner & Company as a Partner where he rebuilt its bankruptcy and insolvency practice before starting his own firm in early 1992.

Stu has directed many noteworthy engagements, including:

* **A.H. ROBINS** - Led the team that analyzed and monitored the business and operations of this pharmaceutical company and that investigated and uncovered various insider transactions and other questionable management activity.

* **ATARI** – Analyzed the insider and other unusual transactions of a licensee in order to advise on the ability of the licensee to repay its obligations and to support the client and its counsel in negotiation of repayment terms.

* **NEWMARK & LEWIS** - Assisted the Trustee in the liquidation of this multi-location electronics and white goods retailer including collection of receivables and consignment inventory, preference and fraudulent conveyance investigations, insolvency study and other trial preparation.

* **ENRON** – Retained by a financial institution to investigate and analyze the background and support for a series of derivative transactions which culminated in a supporting affidavit submitted to Court in London, England.

* **REVCO-ODD LOT** - Investigated and analyzed various intercompany transactions and policies and assisted in negotiating a Plan of Reorganization resulting in 80 + cents to creditors.

* **WEDTECH CORP.** - Supervised the investigation with respect to insider transactions, fraudulent conveyances and other suspected improper payments, together with analyzing the business risks, opportunities and values.

The Fleischer Firm had an extensive practice performing forensic accounting for Debtors and Creditors both in and out of bankruptcy proceedings as well as supporting Chapter 7 and Chapter 11 Trustees.  Stu's practice also included special financial investigations including acquisition/disposition analyses, fraud investigations, damage calculations, providing support in litigation, financial oversight in sensitive situations, financial and control evaluations and as an expert witness concerning avoidance actions, solvency, valuation, damage measurement and accounting issues.

Prior to becoming the Managing Director at Arthur Young, Stu coordinated that Firm's worldwide work for a number of their largest clients, including American Express International Banking Corporation, AMF, and Conrac Corporation.  As a result, he traveled extensively around the world, coordinating the efforts of diverse groups of people and controlling the conduct of these engagements.  He has also conducted numerous investigations of special situations on behalf of clients, counsel and creditors involving reorganizations, acquisitions, leverage buyouts and fraud.

Stu received his A.B. degree from Brown University, and his M.B.A. and J.D. degrees from Columbia University.  He is a member of the American Institute of CPA's, and the New York State Society of CPA's, and has been a CIRA (Certified Insolvency and Reorganization Accountant), and a member of the Mediation Panel for the Bankruptcy Courts in the Southern District of New York.  He has served on the Insolvency Committee of the New York State Society of CPAs and has been a member of the American Bankruptcy Institute and the National Association of Bankruptcy Trustees.

# SCHEDULES

SCHEDULE A

Patriot Partners, LP

| Description | Soley Capital | Reference |
|---|---|---|
| Soley initial investment | $500,000 | GO 85-86 |
| Share of 1991 income | $24,979 | GO 85-86 |
| Soley capital - 12/31/1991 | $524,979 | 1992 k-1 - opening capital (PL160, GO 86) |
| share of loss - 1992 | ($3,219) | 1992 k-1 (PL160) |
| Soley capital - 12/31/92 | $521,760 | 1992 k-1 (PL160) |
| 1993 purchase of added interest | $124,233 | GT Confirmation (PL154), Cancelled check + letter to seller (PL298-299) |
| Sale/redemption of added interest | ? | Letter of intent-4/20/93 (pl 297) No evidence of sale |
| Share of 1993 income | $126,950 | 1993 k-1 (PL163) |
| Soley capital - 12/31/93 | $772,943 | 1993 k-1 (PL163) |
| 1994-1996 -- No information seen | | |
| Soley capital - 12/31/97 | $1,051,943 | GT confirm (PL155) has $1,146,489;1998, k-1 - opening capital (PL 169) |
| Share of 1998 income(loss) | -$56,910 | 1998 k-1 (PL 169) |
| Contributions | ? | EXCLUDES $150,000  10/21/98 tfr from soley a/c to Partners (PL178+FL1693) |
| Soley capital - 12/31/98 | $995,033 | 995,033 per 1998 k-1,1999 k-1 - opening capital (PL169, PL179) EXCLUDES $150,000 above |
| Share of 1999 income | $559,024 | Includes $485,534 nontaxable unrealized securities appreciation (PL170-172) |
| Withdrawals | | EXCLUDES $50,000 received in Faganson a/c - 1/13/99 (PL328), not included in k-1 or audit confirm, apparently partial repayment of $150,000 above |
| Soley capital - 12/31/99 | $1,554,057 | GT confirm(PL156) and 2000 k-1(PL173)  EXCLUDES $100,000 balance of $150,000 |
| 2000 Contributions & Withdrawals | $0 | 2000 k-1 (PL173) |
| 2000 share of Income (loss) | -$599,871 | 2000 K-1 (PL173) |
| Soley Capital - 12/31/2000 | $954,186 | $954,185 per k-1(PL173,GO3682) EXCLUDES $100,000 balance of $150,000 |
| 2001 share of income (loss) | -$83,284 | GO 3682 |
| Soley capital - 12/21/2001 | $870,902 | GO 3682 EXCLUDES $100,000 balance of $150,000 |
| 2002 share of income (loss) | -$556,220 | GO 3951 |
| Soley capital - 12/31/02 | $314,682 | 2003 k-1 (PL 231), GO 3951 EXCLUDES $100,000 balance of $150,000 |
| Share of 2003 income | $562,225 | 2003 k-1 (PL 231), GO3933 |
| Soley capital - 12/31/03   -C- | $876,907 | 2003 k-1 (PL 231), GO3933  EXCLUDES $100,000 balance of $150,000 |
| 2004 share of income/loss | -$806 | 2004 k-1 (PW 259) |
| Soley capital 12/31/04 | -B- | |
| 2004 distribution through Fagenson | $300,000 | Fagenson statement (PL327, PL331) |
| 2006 distribution thru Fagenson | $252,361 | Securities received and sold - Pl 316-325 |
| Balance not distributed?   -A- | $323,740 | |
| Soley advance not repaid   -A- | $100,000 | |

-A-  10/21/98 transfer of $150,000 less 1/13/99 repayment of $50,000.  If $100,000 (PL 327) on 12/27/04
     was repayment of this advance, $100,000 should be added to the capital not distributed.

-B- Schedule L (balance sheet) in 2003 partnership return shows 12/31/03 total assets of $1,668,403, and total capital
    of $1,532,155 (of which Soley's portion is $876,907 or 57.23%). BUT, Schedule L in the 2004 partnership tax return
    indicates opening (12/31/93) balance of assets and capital is 0 (zero). Also, the 2004 and 2005 schedule L indicate no
    assets, liabilities or capital.

-C- 2003 partnership tax return indicates 1) during year loan payable to general partner was reduced (repaid) by $100,000
    (supporting schedule to Sched L - line 20); 2) the partnership owned $861,000 of marketable securities at 12/31/03
    (supporting schedule to Scedule L - line 8); and total partnership capital exceeded $1.5 million at 12/31/03 (Schedule L).
    (PL 222)

SCHEDULE B

Wind-down of Partnership

The 2001 monthly brokerage statements show extensive investment activity. Monthly 2002 brokerage statements were not produced. During 2003 there was a significant slowdown in activity except for December when there was a flurry of sales (some settling in early January) apparently culling the portfolio.

Based on the copies of the 2004 and 2005 Patriot Partners income tax returns (PW255-258, PL270-275) and the 2004 and 2005 Fagenson statements (PW0001-0067), it appears that the partnership activities effectively ceased at the end of 2003. The share positions in the six (6) remaining securities remained exactly the same from January 2004 through December 2005, neither liquidated nor distributed to the remaining limited partner or the general partner. While nothing was done with these shares their value steadily deteriorated., as follows:

| Date     | Value        |
|----------|--------------|
| 1/31/04  | $870,925.10  |
| 2/27/04  | $830,410.00  |
| 3/31/04  | $689,040.10  |
| 6/30/04  | $590,270.00  |
| 7/31/04  | $480,705.00  |
| 8/31/04  | $424,715.00  |
| 9/30/04  | $450,755.00  |
| 10/31/04 | $434,535.00  |
| 11/30/04 | $454,575.00  |
| 12/31/04 | $524,215.00  |
| 1/31/05  | $542,150.00  |
| 3/31/05  | $494,935.10  |
| 5/31/05  | $417,520.00  |
| 6/30/05  | $409,130.00  |
| 7/31/05  | $440,202.10  |
| 8/31/05  | $410,100.10  |
| 9/30/05  | $428,435.00  |
| 10/31/05 | $375,885.00  |
| 11/30/05 | $382,690.00  |
| 12/31/05 | $346,590.00  |

Finally in January 2006, Mrs. Soley's partnership portion (60%) of the five (5) securities with any remaining value were distributed to her. Upon sale she realized $234,681, or approximately 40% of what the same securities would have realized in January 2004.

SCHEDULE C

### Damages-Patriot Partners

**Version 1:**
Loan Balance of $100,000 from date of 1999 repayment request to 12/31/03
+
Combined Soley Investment from 12/31/03

| | |
|---|---|
| Pre-judgement interest on loan @ 9% from 8/1/99-12/31/03 (4 yr 5mo) ($100,000 X *.09 X 4.416666) | $39,749.94 |
| Pre judgement interest on remaining investment (after $200,000 distribution) 1/1/04-12/31/04 ($776,906 X .09) | $69,921.54 |
| Pre-judgement interest on remaining investment (after $100,000 distribution) 1/1/05-12/31/05 ($676,100 X .09) | $60,849.00 |
| Pre-judgement interest on balance of investment 1/1/06-5/31/ (6 yr, 5 mo) ($423,739 X .09 X 6.416666 ) | $244,709.25 |
| Total pre-judgment interest | $415,229.73 |
| Balance of undistributed 12/31/03 investment | $423,739.00 |
| Total | $838,968.73 |
| Subsequent daily interest | $104.483589 |

**Version 2:**
Soley distributable investment 12/31/03

| | |
|---|---|
| Pre judgement interest on distributable investment (after $200,000 distribution) 1/1/04-12/31/04 ($776,906 X .09) | $69,921.54 |
| Pre-judgement interest on remaining investment (after $100,000 distribution) 1/1/05-12/31/05 ($676,100 X .09) | $60,849.00 |
| Pre-judgement interest on balance of investment 1/1/06-5/31/12 (6 yr, 5 mo) ($423,739 X ;09 X 6.416666 ) | $244,709.25 |
| Balance of undistributed 12/31/03 investment | $423,739.00 |
| Total | $799,218.79 |
| Subsequent daily interest | $104.483589 |

Other Investments

Background   Mrs. Soley, Mr. Wasserman and Arthur (Casey) Stern apparently informally
agreed to invest together in private placements of certain securities
through Patriot Group. Mrs. Soley's portion follows:

| Name | Symbol | Cost | Shares |
|---|---|---|---|
| Neurobiological Technologies | NTII | $20,000 | 25,000 |
| NexMed Inc | NEXM | $20,000 | 13,333 |
| Tapistron | TAPI | $20,000 | 133,333 |
| Cardima Inc | CRDM | $10,000 | 17,241 |

Mr. Stern and/or Mr. Wasserman prepared schedules indicating the investment
and market value of their joint investments from time to time which show
Mrs. Soley's value as follows: (See PW421, PL285-293).

| Symbol | 2/4-5/00? | 12/10-11/01 | 6/20/2007 | 7/30/2007 |
|---|---|---|---|---|
| CRDM-stk |  | $44,828 | $793 | -$6,207 |
| CRDM-wts* |  | $14,914 |  |  |
| NTII-stock** | $175,000 | $110,750 | $50,250 | $25,900 |
| NTII-warrants* | $52,500 | $26,800 |  |  |
| NEXM-stock**** | $103,333 | $43,333 | $24,226 | $18,000 |
| NEXM-warrants* | $36,687 | $6,687 |  |  |
| TAPI | $41,333 | $187 | $160 |  |
| ISV*** |  |  |  | $6,418 |
| Totals | $408,853 | $247,499 | $75,429 | $44,111 |

    \* The schedules indicate that Mr. Wasserman advanced (or
would advance) the cost of converting the warrants
  \*\* Per PW422, 75,000 shares of NTII were sold on 9/13/00
for $302,586 or more than $4.03 per share Soley's
25,000 shares would have realized over $100,000
 \*\*\* InSite Vision (ISV) appears to have replaced TAPI in the
Stern/Wasserman schedules in July 2007 even though Patriot
Group appears to have purchased ISV in 2000. (PW423-454)
\*\*\*\* NexMed stock remained in Patriot Group. Others apparently did not.

The accuracy of the Wasserman/Stern schedules is questionable since the
NTII stock was apparently sold in 2000 and the InSite Vision stock was not part of
the joint investments or not appropriately included in the schedules.

Mrs. Soley and Mr. Stern wrote personal checks payable to Mr. Wasserman.
(See PL333-334 for two (2) checks from Mrs. Soley
totaling $60,000 and PW 367 and PW 813 for two (2) checks from
Mr. Stern totaling $30,000.)

Mrs. Soley also wrote personal checks to Patriot Group, apparently for an
interest in additional securities. See PL 335-338 for two (2) Soley checks
totaling $45,000. These checks, written in 1997, were for the purchase of
NOMOS Corp ($25,000) and Tapistron ($20,000).

Mrs. Soley has testified that the understanding between her and Mr. Wasserman was
that each of these securities would be sold as soon as they became freely tradeable.
(Page 138-139 and 254-257 of Soley deposition transcript.)

We have not seen any documents indicating that Patriot Group or Mr. Wasserman
returned the proceeds of sale of any of these securities to Mrs. Soley or provided
any reliable accounting to her.

SCHEDULE D
Page 2

| | |
|---|---|
| NOMOS | NOMOS, which apparently was not one of the joint investments and is not included in the above joint analyses, was apparently acquired by North American Scientific, Inc. in 2005 which, in turn, declared bankruptcy in March 2009. NOMOS apparently withdrew its registration statement in 2002 and may never have had tradeable securities. |
| NTII | The apparent sale of the NTII stock for over $100,000 is discussed above. |
| CRDM | Research on the internet discloses that Patriot Group participated in a registration of Cardima Inc. (CRDM) securities in August 2001 which may have become effective on November 28. 2001. Assuming a 90 day restrictive selling provision, the Patriot Group owned securities, including Mrs. Soley's 17,241 shares could have been sold at the end of February 2002. The internet also indicates that the market price of Cardima during March 2002 ranged from about $1.55 at the beginning of the month to about &1.85 at the end. The average price during the month, therefore, approximated $1.70.<br><br>If this stock had been sold in accordance with the communicated investment strategy, Mrs. Soley's stock would have realized approximately $1.70 per share for 17,241 shares or about $29,300. |
| TAPI | Declared bankruptcy on July 2, 2001. We have no information if any assets were returned to existing shareholders. |
| NEXM | Per PW 822 the registration of NexMed shares became effective 1/3/2000. We have been unable to determine market prices for this security in April or May 2002 (after the normal 90 day restrictive period). Our only source of market prices are the Wasserman/Stern schedules referenced above which indicate that the February 2000 market value of Soley's shares were $103,333 for her 13,333 shares (or $7.75 per share) and the December 2001 market value was $43,333 (or $3.25 per share). Therefore, we conclude that her shares could have been sold during that 20 month period for the average of those share prices or $5.50. |