UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JUDY W. SOLEY,                                  :
                                                :
                          Plaintiff,            :         08 Civ. 9262 (KMW) (FM)
                                                :         <u>OPINION & ORDER</u>
          -against-                             :
                                                :
PETER J. WASSERMAN,                             :
                                                :
                          Defendant.            :
------------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

      On December 2, 2013, this Court held a bench trial to resolve Plaintiff's breach of fiduciary duty and accounting claims with respect to her investments with Defendant in the stocks of several companies: Tapistron, Nexmed (now called "Apricus BioSciences"), Neurobiological Technologies ("NTII"), and Cardima (collectively, the "Joint Stocks"). After considering the witness' testimony at the bench trial, as well as their affidavits of direct testimony, exhibits, pleadings, and Proposed Findings of Fact and Conclusions of Law, the Court makes the following Findings of Fact and Conclusions of Law, pursuant to Federal Rule of Civil Procedure 52(a).

    I.     Findings of Fact

      Defendant offered Plaintiff and Arthur ("Casey") Stern opportunities to invest with him in private placement equities of certain companies. (Joint Pretrial Order – Stipulated Facts ¶ 38 [Dkt. No. 89] [hereinafter JPTO]). These investment opportunities were not available to the general public. (*Id.*). Plaintiff understood that she would own a proportionate interest in each private placement in which she chose to participate. (Soley Affidavit ¶ 3 [Dkt. No. 99]). She understood that she would give her money to Defendant, who would purchase and hold the shares. (*Id.*). Plaintiff further understood that once the shares of a stock purchased as a private

1

placement were made publicly tradable, they would be sold and Defendant would pay Plaintiff her proportionate share of the proceeds. (*Id.*). Plaintiff, Defendant, and Stern agreed that the Defendant would have sole control over the Joint Stocks. (JPTO ¶ 40).

Defendant, Plaintiff, and Stern made the following initial investments in the Joint Stocks:

1. Tapistron: Plaintiff - $20,000; Defendant - $15,000; Stern - $10,000. They jointly purchased 300,000 shares in or about September 1997.

2. Nexmed: Plaintiff - $20,000; Defendant - $25,000; Stern - $15,000. They jointly purchased 40,000 shares in or about September 1999.

3. NTII: Plaintiff - $20,000; Defendant - $25,000; Stern - $15,000. They jointly purchased 75,000 shares in or about November 1999.

4. Cardima: Plaintiff - $10,000; Defendant - $80,000; Stern - $10,000. They jointly purchased 172,414 shares in or about May 3, 2001.

(*Id.* ¶ 41).

Some of the purchased Joint Stocks came with "warrants," which entitle the stockholder to purchase additional shares at certain times or subject to certain conditions. (Wasserman Affidavit ¶ 10 [Dkt. No. 101]). Defendant has never given Plaintiff an accounting of the exercise of warrants in connection with the Joint Stocks. (Soley Affidavit ¶ 18).

After Plaintiff entrusted funds to Defendant for the purchase of the Joint Stocks, she contacted him numerous times for information about the status of those investments. (*Id.* ¶ 5). Defendant was unwilling to discuss the investments with her and later told her to talk to Stern about them. (*Id.*). Plaintiff was unable to obtain even basic information about the Joint Stocks from either Defendant or Stern. (*Id.* ¶ 6). By the end of 2005, Defendant had stopped returning Plaintiff's calls, so she began communicating with him in writing. (*Id*).

In a February 15, 2007 letter to Plaintiff, Defendant stated that he would gather the necessary information to answer her questions about the Joint Stocks and would provide it to her by May 2007. (*Id.*). Defendant, however, did not provide Plaintiff that information and did not contact Plaintiff in May 2007. (*Id.*). By letter dated December 24, 2007, Plaintiff complained to Defendant about Defendant's failure to respond to her inquiries, reminded Defendant that she had never been paid for the Joint Stocks, and demanded that Defendant account to her for her funds and pay Plaintiff her interest in the Joint Stocks. (*Id.* ¶ 10; Exhibit P-49). Defendant did not respond to Plaintiff's December 2007 letter or provide her with an accounting or payment of her interest in the Joint Stock. (Soley Affidavit ¶ 11).

During 2001, Defendant sold 75,000 shares of the NTII stock for a total of $302,586. (JPTO ¶ 42). After selling the stock, Defendant did not pay Plaintiff her proportionate share of the proceeds. (Soley Affidavit ¶¶ 12, 17). Defendant currently holds the proceeds from the NTII stock in his personal bank account with Bank of America. (Transcript of Bench Trial, at 37–38 [Dkt. No. 133]). Plaintiff has a 1/3 interest in the proceeds from the sale of the NTII stock in 2001. (Soley Affidavit ¶ 12; Wasserman Affidavit ¶ 12).

Defendant still holds the shares of Tapistron, Apricus BioSciences, and Cardima. (JPTO ¶ 43). The Joint Stock investments in Tapistron and Cardima currently have no value. (*Id.* ¶¶ 44, 46). In or about June 2010, the Nexmed stock was subject to a 15:1 reverse split, (Wasserman Affidavit ¶ 10), and in or about September 2010, Nexmed changed its name to Apricus BioSciences, Inc., (JPTO ¶ 45). From and after year-end 2010, the Joint Stock investment in Apricus Biosciences amounted to 4,553 shares. (Defendant's Proposed Findings of Fact and Conclusions of Law ¶ 23 [Dkt. No. 100]). Plaintiff has a 1/3 interest in the 4,553 shares of Apricus Biosciences. (JPTO ¶ 41; Wasserman Affidavit ¶ 12).

II.    Conclusions of Law

    A.  Breach of Fiduciary Duty

"'To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary relationship; (2) misconduct by defendant constituting a breach of its fiduciary duty to plaintiff; and (3) damages to plaintiff directly caused by defendant's misconduct.'"  *Soley v. Wasserman*, 823 F. Supp. 2d 221, 232 (S.D.N.Y. 2011) (Wood, J.) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 726 F. Supp. 2d 291, 305–06 (S.D.N.Y. 2010) (Wood, J.)).

        1.  Application

           a.  Fiduciary Relationship

"Whether one party is a fiduciary of another depends on the relationship between the parties."  *Soley*, 823 F. Supp. 2d at 232.  "A fiduciary relationship exists under New York law 'when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of relation.'"  *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008) (Patterson, J.) (quoting *Flickinger v. Harold C. Brown & Co.*, 947 F. 2d 595, 599 (2d Cir. 1991)).  "Rather than determining the existence of a fiduciary relationship 'by recourse to rigid formulas, New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first.'"  *Id*. (quoting *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1231 (S.D.N.Y.1991) (Cannella, J.), *rev'd on other grounds,* 967 F. 2d 742 (2d Cir. 1992)).

A fiduciary relationship clearly existed between Plaintiff and Defendant with respect to the Joint Stock Investments.  Defendant solicited Plaintiff to invest with him in the Joint Stocks and Plaintiff entrusted Defendant with funds to purchase the stock.  The goal of the investments

4

was to make money for Plaintiff, Defendant, and Stern.  The parties agreed that Defendant would have sole control over the stock.  Plaintiff placed trust and confidence in Defendant to control the Joint Stocks in a manner that would achieve the goal of the investments.  Defendant was therefore under a duty to act for the benefit of Plaintiff when dealing with the Joint Stocks.

### b. Misconduct by Defendant

"With respect to the second element of a breach of fiduciary duty claim, a court must identify the particular obligations owed before determining whether there has been a breach." *Soley*, 823 F. Supp. 2d at 232 (citing *Ross v. FSG PrivatAir, Inc.*, 03 Civ. 7292, 2004 WL 1837366, at *7 (S.D.N.Y. Aug. 17, 2004) (Buchwald, J.)).  "One such duty is the duty 'to keep accurate and complete records concerning transactions entrusted to him.'" *Id*. (quoting *Shlomchik v. Richmond 103 Equities Co.*, 662 F. Supp. 365, 375 (S.D.N.Y. 1986) (Newman, J.)).  A fiduciary is also "under a duty to *convey* accurate information and to 'single-mindedly pursue the interests of those to whom a duty of loyalty is owed.'"  *Forum Ins. Co. v. Zeitman*, 91 CIV. 7980, 1995 WL 546949 (S.D.N.Y. Sept. 13, 1995) (Stanton, J.) (citations omitted) (emphasis added).

As a fiduciary, Defendant was under a duty to keep and convey accurate and complete information to Plaintiff about the status of her investments.  Defendant breached this duty by refusing to discuss the investments with Plaintiff and failing to provide Plaintiff with information regarding the status of her investments and an accounting of her funds despite her repeated requests.

### c. Causation

"[T]he third element requires that the plaintiff show causation.  Under New York law, the level of causation required in breach of fiduciary duty ... cases depends on the type of remedy

sought.  When the plaintiff seeks money damages, she must establish that the alleged breach of fiduciary duty was both a 'but for' and proximate cause of [her] damages.  When the remedy sought is restitution, the plaintiff need only show that the breach was a 'substantial factor' contributing to the plaintiff's injury." *Soley*, 823 F. Supp. 2d at 232 (citations and quotation marks omitted).

Plaintiff requests compensatory damages for Defendant's breach of fiduciary duty in the form of (1) her 1/3 share of the proceeds of the NTII stocks, plus interest; (2) her 1/3 share of the value of the Apricus BioSciences stock as of the date when it should have been sold (when the stock became publicly tradable), plus interest; and (3) any other damages that may be revealed through an accounting of the Joint Stocks.  (Plaintiff's Proposed Findings of Fact and Conclusions of Law, at 16 [Dkt. No. 98]).  Although Plaintiff requests "compensatory damages," what Plaintiff seeks is essentially restitutionary or disgorgement relief—the return of her proportionate share of profits from the sale of the Joint Stocks that Defendant should have already distributed to her.  *See Soley v. Wasserman*, 08 Civ. 9262, 2013 WL 3818106, at *2 (S.D.N.Y. July 15, 2013) (Wood, J.) (determining that Plaintiff's breach of fiduciary duty claim with respect to the Joint Stocks was equitable, not legal because "[1] Soley clearly seeks a return of funds—the proceeds of the September 13, 2000 sale of NTII—that are in Wasserman's possession" and "[2] given that the sale proceeds are Soley's sole measure of damages, her losses are directly based on Wasserman's gain").

Because Plaintiff seeks restitutionary relief, she must prove that Defendant's breach was a "substantial factor" contributing to her damages.  *Soley*, 823 F. Supp. 2d at 232.  However, Plaintiff makes no attempt to connect Defendant's misconduct (his failure to provide information about the status of her investments) to her alleged damages (her share of the proceeds from the

6

sale of NTII and her share of the value of the Apricus BioSciences stock when it should have been sold). Plaintiff does not assert that Defendant breached his fiduciary duty in any other way. Thus she fails to meet the third requirement of a breach of fiduciary duty claim.[1]

### 2. Conclusion

Plaintiff's breach of fiduciary duty claim with respect to the Joint Stocks is therefore DENIED.

### B. Accounting

"The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property." *Soley*, 823 F. Supp. 2d at 237. "If a plaintiff is successful in an accounting claim, in addition to returning the property, a fiduciary must return any profits generated by the use of the property." *Id.* "Disgorgement is not meant to compensate victims, but to prevent wrongdoers from unjustly enriching themselves. Courts in equity have forced defendants to surrender profits even when those profits exceeded the damage caused to the

---

[1] Moreover, Plaintiff's request for her proportionate share of the value of the Apricus BioSciences stock as of the date when it should have been sold (when the stock became publicly tradable), is a reiteration of a theory of damages the Court has already dismissed. Earlier in this case, Plaintiff claimed that she suffered damages because Defendant failed to adhere to the investment strategy that was communicated to and understood by her, i.e., that Defendant would sell the Joint Stocks as soon as they became publicly tradable and would promptly distribute to Plaintiff her share of the proceeds. *Soley v. Wasserman*, 08 Civ. 9262, 2013 WL 526732, at *8 (Feb. 13, 2013) (Wood, J.). On summary judgment, Defendant "characterize[d] this basis for damages as a claim for breach of contractual obligations, which, under New York law, is subject to a six year statute of limitations." *Id.* at *9. Defendant "argue[d] that this claim accrued when he assertedly breached his obligation to sell the investments, that is, 'when those securities were allowed to trade publically'" and "although each of the investments became freely tradeable *prior* to October 2002, [Plaintiff] did not file her original Complaint until October 2008, after the six year limitations period had expired." *Id.* (citation omitted). The Court agreed with Defendant and granted summary judgment with regard to this aspect of Plaintiff's breach of fiduciary duty claim, finding that "although the Parties dispute whether [Defendant] was obligated to sell the Joint Stock Investments once they became publically tradeable, this dispute does not preclude summary judgment because [Defendant's] limitations defense applies *even assuming* [Plaintiff's] version of [Defendant's] obligations is correct." *Id.*

plaintiff."  *Wilde v. Wilde*, 576 F. Supp. 2d 595, 607 (S.D.N.Y. 2008) (Cedarbaum, J.) (citation omitted).

"To obtain an accounting under New York law, a plaintiff must show: '(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.'"  *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011) (Sullivan, J.) (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (Preska, C.J.)).

"An equitable accounting requires two steps.  First, upon a showing that an accounting is warranted, an interlocutory decree is issued requiring the fiduciary to make an accounting.  Once the accounting is made, a second hearing is held to establish the final amounts owed to the principal."  *Id.* at 608 (citation omitted).  When an accounting is ordered, the accounting party bears the burden of showing that he was not unjustly enriched by any transaction involving the other party's property.  *See Wilde*, 576 F. Supp. at 608 (accounting party "bears the burden of proof and is presumed to have been unjustly enriched by all transfers and withdrawals unless he can show otherwise"); *see also Vinlis Const. Co. v. Roreck*, 291 N.Y.S.2d 924, 925–26 (N.Y. App. Div. 1968) ("The general rule is that, on an accounting by a fiduciary, the burden of proof in justifying the charges and showing that he has derived no unfair advantage from his fiduciary relation is on the accounting party."), *order modified by*, 27 N.Y.2d 687 (N.Y. App. Div. 1970).  "Ambiguities will be resolved against [the accounting party]."  *Wilde,* 576 F. Supp. at 608.

1. Application

Plaintiff has proven each of the elements of an equitable accounting claim.  As detailed above, (1) Defendant had a fiduciary relationship with Plaintiff with respect to the Joint Stocks;

(2) Plaintiff entrusted Defendant with money to purchase the Joint Stocks; (3) Plaintiff does not have an adequate remedy at law, as Defendant's breach of fiduciary duty—his failure to provide Plaintiff information about the status of her investments—has not lead to cognizable damages; and, (4) in her December 24, 2007 letter to Defendant, Plaintiff made a demand for an accounting and Defendant failed to provide her with one.

2.  Conclusion

Plaintiff's accounting claim with respect to the Joint Stock investments is GRANTED. Defendant must account to Plaintiff of his dealings with the funds Plaintiff entrusted to him for the purchase of the Joint Stocks. The period covered by the accounting is the date of purchase for each of the Joint Stocks, up to the present-day. The accounting must include all information concerning the Joint Stocks (e.g., date of any sale, proceeds from any sale, number of shares currently held of unsold stock, current value of unsold stock, etc.), any warrants purchased in connection with the Joint Stocks (e.g., the dates warrants were purchased and exercised, the number of warrants purchased and exercised, the price paid for warrants and the exercise warrants, and proceeds from exercising and selling warrants, etc.), and any profits generated through the use of Plaintiff's funds. Defendant bears the burden of proving that he was not unjustly enriched by any transaction involving the Joint Stocks. Any ambiguities are likely to be resolved against him.

III.  Conclusion

For the reasons stated above, the Court DENIES Plaintiff's breach of fiduciary duty claim, but GRANTS Plaintiff's accounting claim with respect to the Joint Stock investments. Defendant is hereby ORDERED to account to Plaintiff by December 20, 2013. Following the

9

accounting, the parties must submit a proposal to the Court of what is owed to Plaintiff by January 6, 2014.

    SO ORDERED.

Dated:  New York, New York
         December 6, 2013

/s/ _____
        Kimba M. Wood
   United States District Judge