**LOUIS F. BURKE P.C.**
ATTORNEYS AT LAW
**460 Park Avenue**
**21st Floor**
**New York, New York 10022**
**Telephone: (212) 682-1700**
**Facsimile: (212) 808-4280**
**E-Mail: lburke@lfblaw.com**

January 31, 2014

**By E-Filing**
Hon. Kimba M. Wood
Southern District of New York
500 Pearl Street, Room 1910
New York, NY 10007-1312

    Re:    *Soley v. Wasserman*; 08-CV-9262 (KMW)

Dear Judge Wood:

    This firm represents plaintiff, Judy Soley, in the above-referenced action. We write regarding the Court's orders of December 6, December 13 and December 17, 2013 (the relevant pages of which are attached at Exhibit A), which ordered defendant to account to Ms. Soley and to "provide all information concerning the Joint Stocks." (Decision and Order, filed Dec. 6, 2013, at 9.) Defendant refuses to provide the full accounting of the Joint Stocks ordered by the Court and continues to prolong this litigation by withholding information. Plaintiff rejects the grossly inadequate accounting submitted by the defendant on January 17, 2014 and seeks permission to move for sanctions.

    On January 17, 2014, defendant's counsel filed what purported to be an accounting. (*See* Docket #140.) Instead of a proper accounting, however, defendant submitted an argumentative statement filled with conclusory assertions. Accompanying the submission is a hodge-podge of self-serving, heavily redacted documents that fail to provide the basic information necessary for an accounting and to determine how much defendant owes Ms. Soley.

    This submission by defendant's counsel fails to comply with the Court's order requiring an accounting of all "information concerning the Joint Stocks." In addition, the documents defendant's counsel submitted are so heavily redacted it is impossible to determine how the funds in the accounts were used and what profits, if any, were made by use of the funds. Defendant's counsel makes no representations as to what efforts were made to secure the documents missing from the accounting, and he relies on conclusory statements about the Joint Stock assets without providing documentary support.

    For example, among the numerous problems with the accounting is defendant's refusal to refer in the accounting to the exercise of NTII warrants. Trial Exhibit P-57 shows profits to Ms. Soley of $70,000 from the exercise of NTII warrants. If no such warrants were actually exercised, defendant should so state under oath. If he refuses to do so, then the issue should be resolved in Ms. Soley's favor and those funds should be factored into her damages. Because it was defendant who improperly commingled funds and refused to disclose his dealings regarding the Joint Stocks, he cannot now complain that it is too burdensome for him to disclose fully all the assets and render a proper accounting.

**Louis F. Burke P.C.**
Hon. Kimba M. Wood
Jan. 31, 2014
Page 2

Attached as Exhibit B is a chart setting forth the information required for the accounting, the sources for that information and whether defendant has provided that information with the accounting. Completing this chart fully and accurately—and explaining any gaps in the documentation -- should provide the basic information required for an accounting of the Joint Stocks.

Exhibit C sets forth the problems with defendant's submission regarding the Joint Stock Neurobiological Technologies ("NTII").

Exhibit D sets forth the problems with defendant's submission regarding the Joint Stock NexMed (now called "Apricus").

Exhibit E sets forth the problems with defendant's submission regarding the Joint Stock Cardima.

Exhibit F sets forth the problems with defendant's submission regarding the Joint Stock Tapistron.

Plaintiff cannot assess the accuracy of the calculations of defendant's counsel or address the legal validity of his analysis without complete and accurate records.

Plaintiff requests that defendant be directed to provide complete and unredacted documents, with dollar figures based on individually identified documents (instead of vague references to hundreds of pages of exhibits) accompanied by defendant's verification of the accounting. In addition, Plaintiff requests an evidentiary hearing if defendant fails to provide a proper accounting. Plaintiff also requests permission to move for sanctions for defendant's willful refusal to comply with the Court's orders of December 6, December 13 and December 17, 2013, which directed an accounting with supporting documents.

On January 27, 2014 we sought to resolve this dispute without the intervention of the Court by sending defendant's counsel a letter setting forth the deficiencies in defendant's submission. Defendant's counsel responded with a copy of a certification by defendant and an e-mail that did not provide the information required for the accounting. Plaintiff replied with a January 30, 2014 letter to defendant. A copy that exchange is attached as Exhibit G.

Respectfully,

/s/

Louis F. Burke

cc:     Lawrence E. Tofel, Esq. (by e-filing)

Encls.

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JUDY W. SOLEY,                              :
                                            :
                          Plaintiff,        :        08 Civ. 9262 (KMW) (FM)
                                            :        <u>OPINION & ORDER</u>
            -against-                       :
                                            :
PETER J. WASSERMAN,                         :
                                            :
                          Defendant.        :
-------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

On December 2, 2013, this Court held a bench trial to resolve Plaintiff's breach of

fiduciary duty and accounting claims with respect to her investments with Defendant in the

stocks of several companies: Tapistron, Nexmed (now called "Apricus BioSciences"),

Neurobiological Technologies ("NTII"), and Cardima (collectively, the "Joint Stocks"). After

considering the witness' testimony at the bench trial, as well as their affidavits of direct

testimony, exhibits, pleadings, and Proposed Findings of Fact and Conclusions of Law, the Court

makes the following Findings of Fact and Conclusions of Law, pursuant to Federal Rule of Civil

Procedure 52(a).

I.       Findings of Fact

Defendant offered Plaintiff and Arthur ("Casey") Stern opportunities to invest with him

in private placement equities of certain companies.  (Joint Pretrial Order – Stipulated Facts ¶ 38

[Dkt. No. 89] [hereinafter JPTO]).  These investment opportunities were not available to the

general public.  (*Id.*).  Plaintiff understood that she would own a proportionate interest in each

private placement in which she chose to participate.  (Soley Affidavit ¶ 3 [Dkt. No. 99]).  She

understood that she would give her money to Defendant, who would purchase and hold the

shares.  (*Id.*).  Plaintiff further understood that once the shares of a stock purchased as a private

(2) Plaintiff entrusted Defendant with money to purchase the Joint Stocks; (3) Plaintiff does not

have an adequate remedy at law, as Defendant's breach of fiduciary duty—his failure to provide

Plaintiff information about the status of her investments—has not lead to cognizable damages;

and, (4) in her December 24, 2007 letter to Defendant, Plaintiff made a demand for an

accounting and Defendant failed to provide her with one.

        2.    Conclusion

    Plaintiff's accounting claim with respect to the Joint Stock investments is GRANTED.

Defendant must account to Plaintiff of his dealings with the funds Plaintiff entrusted to him for

the purchase of the Joint Stocks.  The period covered by the accounting is the date of purchase

for each of the Joint Stocks, up to the present-day.  The accounting must include all information

concerning the Joint Stocks (e.g., date of any sale, proceeds from any sale, number of shares

currently held of unsold stock, current value of unsold stock, etc.), any warrants purchased in

connection with the Joint Stocks (e.g., the dates warrants were purchased and exercised, the

number of warrants purchased and exercised, the price paid for warrants and the exercise

warrants, and proceeds from exercising and selling warrants, etc.), and any profits generated

through the use of Plaintiff's funds.  Defendant bears the burden of proving that he was not

unjustly enriched by any transaction involving the Joint Stocks.  Any ambiguities are likely to be

resolved against him.

III.    Conclusion

    For the reasons stated above, the Court DENIES Plaintiff's breach of fiduciary duty

claim, but GRANTS Plaintiff's accounting claim with respect to the Joint Stock investments.

Defendant is hereby ORDERED to account to Plaintiff by December 20, 2013.  Following the

accounting, the parties must submit a proposal to the Court of what is owed to Plaintiff by

January 6, 2014.

       SO ORDERED.

Dated: New York, New York
       December 6, 2013

                     /s/ _____
                              Kimba M. Wood
                       United States District Judge



Soley vs. Wasserman; 08-09262 (KMW)
Lawrence Tofel
to:
faiza_sayed@nysd.uscourts.gov
12/12/2013 11:38 AM
Cc:
Lesli Wybiral, "Louis F. Burke" , Alex Tripp
Hide Details
From: Lawrence Tofel <LETofel@tofellaw.com>

To: "faiza_sayed@nysd.uscourts.gov" <faiza_sayed@nysd.uscourts.gov>

Cc: Lesli Wybiral <lesli@lfblaw.com>, "Louis F. Burke" <LouisF.Burke@lfblaw.com>, Alex Tripp <atripp@lfblaw.com>

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/13/13

MEMO ENDORSED

08 CV 9262 (KMW)

Judge Wood

I note the Court's denial of my request for an extension of time to comply with the Court's recent Opinion & Order and write to request an immediate telephone conference; thank you for permitting this request to be made by email. I am without any staff and am required to empty the offices we occupy by year end. I am on trial next Monday, Tuesday and Thursday in my own matrimonial and Mr. Wasserman is on the West Coast where he lives. Substantially all of the materials connected with this action have been boxed for storage and relocation. I simply cannot abide by the deadlines set forth in the Court's Opinion and reiterate my personal request for time to provide what you have directed. I note that the Order requires an analysis of decades of materials and a further review for materials in order to comply. I recognize that this matter has been pending for some time but it is simply unfair to impose this deadline when it cannot be met for reasons unrelated to the lawsuit.

Respectfully,
Lawrence E. Tofel, Esq.
Tofel & Partners, LLP
730 Third Avenue
New York, New York 10017
Tele. (212) 752-0007
Fax (212) 752-8881
E-Mail: letofel@tofellaw.com
Cell: (917) 847-1433

*Mr. Tofel is directed to write to the Court today to state ① that he will give this matter priority above all others in January; ② that he will, WITHOUT FAIL, complete the accounting by January 17 and submit it to plaintiff; ③ Submit the accounting to the Court, stating what is owed to plaintiff by Feb. 6, 2014*

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (letofel@tofellaw.com), and destroy the original message. Thank you

*So ordered. 12-13-13*

*Kimba M. Wood*
*U.S.D.J.*

## MEMO ENDORSED



RE: Soley vs. Wasserman; 08-CV-9262 (KMW)
Louis F. Burke
to:
Lawrence Tofel, faiza_sayed
12/13/2013 01:46 PM
Cc:
"Lesli Wybiral", "Alex Tripp", "Louis F. Burke, Esq."
Hide Details
From: "Louis F. Burke" <LouisF.Burke@lfblaw.com>

To: "Lawrence Tofel" <LETofel@tofellaw.com>, <faiza_sayed@nysd.uscourts.gov>

Cc: "Lesli Wybiral" <lesli@lfblaw.com>, "Alex Tripp" <atripp@lfblaw.com>, "Louis F. Burke, Esq." <lburke@lfblaw.com>

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/17/13

Dear Judge Wood,

On behalf of Judy Soley, we request that the accounting include back up documents.

Thank you,

*The accounting shall be accompanied by all documents relevant to the accounting.*
*12-16-13*

Louis F. Burke, Esq.
Louis F. Burke PC
460 Park Avenue, 21st Floor
New York, NY 10022
(212) 682-1700
(212) 808-4280 (f)
lburke@lfblaw.com
www.lfblaw.com

SO ORDERED, N.Y., N.Y.

*Kimba M. Wood*
KIMBA M. WOOD
U.S.D.J.

# EXHIBIT B

*Soley v. Wasserman*; 08-CV-9262 (KMW)

## EXHIBIT B

### DOCUMENTS SUPPORTING ACCOUNTING

| | COMPANY | INFORMATION | SOURCE | BATES # | PROVIDED? | TOTAL |
|---|---|---|---|---|---|---|
| | **NTII** | | | | | |
| 1 | NTII | deposit of funds received from Soley for purchase of NTII stock | Bank/brokerage statements | | No | $20,000 |
| 2 | NTII | deposit of Wasserman funds for purchase of NTII stock | Bank/brokerage statements | | No | |
| 3 | NTII | Transfer of funds to NTII for purchase of original shares | Bank/brokerage statements | | No | |
| 4 | NTII | deposit of funds for exercise of warrants | Bank/brokerage statements | | No | |
| 5 | NTII | Transfer of funds to NTII for exercise of warrants | Bank/brokerage statements | | No | |
| 6 | NTII | Deposit of stock certificate from NTII to Fagenson for original shares | Brokerage statement | | No | |
| 7 | NTII | Deposit of stock certificate from NTII to Fagenson of shares from Warrants | Brokerage statement | | No | |
| 8 | NTII | Sale of all shares | Brokerage statement | | No | TBD |
| 9 | NTII | Proceeds from sale of original shares | Brokerage statements | | Partial | $302,586 |
| 10 | NTII | Proceeds from sale of shares from warrants | Brokerage statements | | no | TBD |
| 11 | NTII | Profits from use of sales proceeds of all shares | unredacted brokerage / bank statements | | No | TBD |
| 12 | NTII | Transfer of proceeds of NTII sale | unredacted brokerage / bank statements | | No | |
| 13 | NTII | NTII proceeds in trust acct | trust formation documents | | No | $50,000 |
| 14 | NTII | Use of NTII proceeds in trust acct | unredacted trust brokerage / bank statements | | No | TBD |
| | **TOTAL DUE** | | | | | **TBD** |

| | COMPANY | INFORMATION | SOURCE | BATES # | PROVIDED? | TOTAL |
|---|---|---|---|---|---|---|
| | **NEXMED** | | | | | |
| 15 | NexMed/Apricus | deposit of funds received from Soley for purchase of Nexmed stock | Bank/brokerage statement | | No | $20,000 |
| 16 | NexMed/Apricus | deposit of Wasserman funds for purchase of original NexMed stock | Bank/brokerage statement | | No | |
| 17 | NexMed/Apricus | Transfer of funds to NexMed for purchase of original shares | Bank/brokerage statement | | No | |
| 18 | NexMed/Apricus | deposit of funds for exercise of warrants | Bank/brokerage statement | | No | |

*Soley v. Wasserman*; 08-CV-9262 (KMW)

| | COMPANY | INFORMATION | SOURCE | BATES # | PROVIDED? | TOTAL |
|---|---|---|---|---|---|---|
| 19 | NexMed/Apricus | Transfer of funds to NexMed for exercise of warrants | Bank/brokerage statement | | no | |
| 20 | NexMed/Apricus | Deposit of Wasserman funds for purchase of additional 8,000 shares | Bank/brokerage statement | | no | |
| 21 | NexMed/Apricus | Transfer of funds to NexMed for purchase of additional 8,000 shares | Bank/brokerage statement | | No | |
| 22 | NexMed/Apricus | Deposit of stock certificate from NexMed to Fagenson for original shares | Brokerage statement | | Partial | |
| 23 | NexMed/Apricus | Deposit of stock certificate from NexMed to Fagenson for shares by exercise of warrants | Brokerage statement | | Partial | |
| 24 | NexMed/Apricus | Deposit of stock certificate from NexMed to Fagenson for 8,000 additional shares | Brokerage statement | | Partial | |
| 25 | NexMed/Apricus | Sale of shares or value of any shares | Brokerage statements | | No | TBD |
| 26 | NexMed/Apricus | Profits from sale or use of shares | unredacted brokerage / bank statements | | No | |
| 27 | NexMed/Apricus | Transfer of proceeds from sale or use of shares | unredacted brokerage / bank statements | | no | |
| | TOTAL DUE | | | | | TBD |

### CARDIMA

| | COMPANY | INFORMATION | SOURCE | BATES # | PROVIDED? | TOTAL |
|---|---|---|---|---|---|---|
| 28 | Cardima | deposit of funds received from Soley for purchase of Cardima stock | Banking/brokerage statement | | No | |
| 29 | Cardima | deposit of Wasserman funds for purchase of Cardima stock | Bank/brokerage statement | | No | |
| 30 | Cardima | deposit of funds for exercise of warrants | Bank/brokerage statement | | No | |
| 31 | Cardima | Transfer from Cardima to Fagenson of original shares | Bank/brokerage statement | | No | |
| 32 | Cardima | Transfer from Cardima to Fagenson of shares by exercise of warrants | Bank/brokerage statement | | no | |
| 33 | Cardima | Deposit of stock certificate from Cardima to Fagenson for original shares | Brokerage statement | | no | |
| 34 | Cardima | Deposit of stock certificate from Cardima to Fagenson for shares from warrants | Brokerage statement | | No | |
| 35 | Cardima | Sale of Cardima shares | Brokerage statements | | No | |
| 36 | Cardima | Profits from sale or use of shares | Brokerage statements / bank statements | | No | |

|  | COMPANY | INFORMATION | SOURCE | BATES # | PROVIDED? | TOTAL |
|---|---|---|---|---|---|---|
| 37 | Cardima | Profits from use of sales proceeds | unredacted brokerage / bank statements |  | No |  |
| 38 | Cardima | Transfer of proceeds from sale or use of shares | Unredacted brokerage / bank statements |  | No |  |
|  | | TOTAL DUE | | | | TBD |

|  | | | | | | |
|---|---|---|---|---|---|---|
|  | **TAPISTRON** | | | | | |
| 39 | Tapistron | deposit of funds received from Soley for purchase of Tapistron stock | Bank/brokerage statements |  | No | $20,000 |
| 40 | Tapistron | deposit of Wasserman funds for purchase of Tapistron stock | Bank/brokerage statements |  | No |  |
| 41 | Tapistron | deposit of funds for exercise of warrants | Bank/brokerage statements |  | No |  |
| 42 | Tapistron | Transfer from Tapistron of original shares | Bank/brokerage statement |  | no |  |
| 43 | Tapistron | Transfer from Tapistron of shares from exercise of warrants | Bank/brokerage statement |  | No |  |
| 44 | Tapistron | Deposit of stock certificate from Tapistron to Fagenson for shares | Brokerage statement |  | No |  |
| 45 | Tapistron | Deposit of stock certificate from Tapistron to Fagenson for shares from warrants | Brokerage statement |  | No |  |
| 46 | Tapistron | Sale of shares | Brokerage statements |  | No |  |
| 47 | Tapistron | Proceeds from sale of shares | Brokerage / bank statements |  | No |  |
| 48 | Tapistron | Profits from use of sales proceeds | unredacted brokerage / bank statements |  | No |  |
| 49 | Tapistron | Transfer of proceeds from sale of Tapistron | Unredacted brokerage / bank statements |  | No |  |
|  | | TOTAL DUE | | | | TBD |

# EXHIBIT C

# EXHIBIT C

## NTII

1. Defendant does not provide a continuous set of documents showing the receipt of funds for the purchase of NTII stock, the holding of the NTII stock at Fagenson & Co., the sale of the NTII stock and defendant's use of the proceeds of the sale of the NTII stock.

2. Defendant does not set forth what efforts he made to try to obtain the missing documents.

3. There are no documents or information about the exercise of warrants for NTII stock. Trial Exs. P-50 and P-57 -- as well as P-59, which is a document produced by Wasserman -- show the exercise of NTII warrants.

4. Complete and unredacted documentation is necessary because the heavily redacted documents show periods when the proceeds from the sale of NTII stock were held at Bank of America and, apparently, commingled with other funds, but do not show how the funds were used and what profits were derived from their use.

5. Complete and unredacted documents are also necessary because the partial documents provided conflict with the representations and testimony of defendant. In a July 8, 2013 letter to the Court, defendant's counsel represented, "Defendant has stipulated to the facts regarding the sale of NTII stock, and defendant continues to hold the proceeds thereof for the benefit of the three investors (plaintiff, defendant and Casey Stern)." At trial, Mr. Wasserman testified, "Q. Do you agree with what your attorney stated to the Court .... that you're holding funds for the benefit of Ms. Soley, Mr. Stern and yourself ... do you agree with that?" "A. I have the money. I don't know how else to explain." Dec. 2, 2013 Trial Transcript, at 36. The documents show that the $302,586 being held "for the benefit of" the three investors appeared to have been split into different accounts and used by Mr. Wasserman and his wife as a personal checking account, in one of which, in March 2008, the balance was $14,530.10. Without full and unredacted documentation from the brokerage account and bank accounts, it is impossible to determine how the stocks and funds were used, whether Mr. Wasserman used them for investment and what profits were derived from their use.

6. Defendant's counsel asserts, without support, that defendant personally incurred California state tax liabilities for the sale of Ms. Soley's interest in NTII. Defendant must provide complete and unredacted state and federal tax documents (just as plaintiff was required to provide unredacted tax documents to defendant in discovery).

7. Defendant's counsel represents that certain of Ms. Soley's funds were held in revocable trusts (Jan. 17 Submission, at 7), but does not submit the trust documents regarding the particulars of how the funds were transferred and used. In addition, defendant fails to provide support for his assertion that Mr. Wasserman informed his wife and children of Ms. Soley's interest in the proceeds from the sale of NTII.

EXHIBIT D

*Soley v. Wasserman*; 08-CV-9262 (KMW)

# EXHIBIT D

## NexMed

1. Defendant does not supply complete statements for NexMed (or Apricus) from the time the stock was purchased, including unredacted statements showing the purchase of the securities, the source of the funds to purchase the securities, the use of the securities in connection with hedging or as collateral.

2. Defendant's counsel represents that an additional 8,000 NexMed warrants were purchased, but fails to provide documentation showing what funds were used for that additional purchase, when that additional purchase was made, and what profits were made by the account holding the commingled shares.

EXHIBIT E

*Soley v. Wasserman*; 08-CV-9262 (KMW)

**EXHIBIT E**

**Cardima**

1. Defendant fails to provide any documents regarding the purchase of shares of Cardima and the ownership of the shares.

2. Defendant fails to provide any information about the exercise of Cardima warrants.  Trial exhibit P-52 shows profits of $224,138 from the exercise of Cardima warrants.  (In addition, defendant produced documents, PW507 & PW507, showing the exercise of Cardima warrants.)

3. In addition to not making representations about the Cardima warrants, defendant fails to make any sworn representations regarding the sale any such shares before the shares became valueless.

# EXHIBIT F

**EXHIBIT F**

**Tapistron**

1. Defendant fails to provide information, such as bank and brokerage statements, concerning the purchase and ownership of shares of Tapistron.

2. In addition to failing to provide information concerning the purchase and ownership of Tapistron shares, defendant fails to make any sworn representations regarding the ownership of Tapistron shares and the exercise of any warrants, and sale of any such shares before the shares became valueless.

# EXHIBIT G

**LOUIS F. BURKE P.C.**
ATTORNEYS AT LAW
460 Park Avenue
21st Floor
New York, New York 10022
Telephone: (212) 682-1700
Facsimile: (212) 808-4280
E-Mail: lburke@lfblaw.com

January 27, 2014

**By E-mail**
Lawrence E. Tofel
Tofel & Partners, LLP
163 Washington Ave.
Brooklyn, New York 11205
letofel@tofellaw.com

      Re:    *Soley v. Wasserman*; S.D.N.Y. Docket No. 08-CV-9262 (KMW)

Dear Mr. Tofel:

      We have reviewed the document and exhibits you filed on January 17, 2014 (the "Jan. 17 Submission"), which purport to be the accounting ordered by the Court. We are disappointed that, after your representations to the Court and the Court's issuance of an order setting forth the documents and information defendant is to provide, defendant chose to submit a meager and a self-serving selection of heavily redacted documents. Defendant's Jan. 17 Submission willfully disregards the Court's orders.

      There are overarching problems with the Jan. 17 Submission: it does not provide a complete set of the relevant documents, it does not provide unredacted documents, it makes no representations as to what efforts were made to secure documents, it makes conclusory statements about facts without documentary support, and it is not verified by Mr. Wasserman to certify its accuracy.

      Plaintiff demands that, by close of business January 29, 2014, defendant provide -- or represent that he will promptly provide before February 3, 2014 – a full and proper accounting to comply with the Court's orders, including the following documents and information:

      1. Complete, chronologically continuous, and unredacted documents, including bank and brokerage and tax records, regarding Ms. Soley's funds invested in the Joint Stocks.

      2. Complete, chronological continuous and unredacted documentation regarding the Joint Stock shares of NTII, including documents showing (a) the deposit into a financial institution of Ms. Soley's funds for the purchase of units of NTII, (b) the initial purchase of the NTII stock and the exercise of NTII warrants, (c) the sources of the funds defendant used to purchase the NTII securities and to exercise the NTII warrants, (d) the holding of the NTII securities, (e) all transactions that took place in the brokerage account while the NTII stock was held, including but not limited to hedging, sales against the box or use of the NTII securities as collateral, (f) the sale of the NTII securities and (g) the transfer of the proceeds from the sale of the NTII securities from the brokerage house to the bank (whether Bank of America or another institution), and (h) all transactions that took place in the accounts holding the proceeds from the sale of the NTII securities.

**Louis F. Burke P.C.**

Lawrence Tofel, Esq.
January 27, 2014
Page 2

    3. Full documentation regarding Cardima and Tapistron including all documents (and, if no documents exist, sworn statements) concerning (a) any sale of Tapistron or Cardima securities by defendant and (b) the purchase and ownership of the securities, including complete, chronologically continuous and unredacted brokerage statements.

    4. Complete, chronologically continuous and unredacted documents concerning the revocable trust referred to on page 7 of the Jan. 17 Submission, including: (a) the trust formation documents, trust account statements showing the balance of the trust and all transactions involving the trust and (b) documentation regarding all funds in the trust commingled with Ms. Soley's funds, and any use of the commingled funds.

    5. Complete, chronologically continuous and unredacted documents concerning the NexMed/Apricus securities, including documents regarding (a) the source of the funds used to exercise the NexMed warrants and (b) the purported purchase of 8,000 additional shares of NexMed commingled with the Joint Stocks, including documents showing the transfer of funds to purchase those additional shares, the source of those funds, the transfer from NexMed to Patriot Group (or any other party) of the additional 8,000 shares, and all documents sufficient to trace the history of those shares.

    6. Documents supporting the statement in the Jan. 17 Submission that Mrs. Wasserman, as well as the Wassermans' children, are aware of Ms. Soley's interest in the proceeds of the Joint Stocks, and documents showing that they have been instructed to distribute to Ms. Soley her shares of the Joint Stocks and the proceeds from the sale of the Joint Stocks, including when such information and instructions were first conveyed to the Wasserman's children.

    7. Where documentation is incomplete, sworn statements setting forth the steps taken to attempt to obtain the documents.

    8. A verification by Mr. Wasserman of the accounting to certify its accuracy.

    These repeated delays and defendant's failure to make a timely and full accounting are plainly attempts to waste time and drive up legal fees. If we do not receive the information required by the Court's orders, we will address our concerns to the Court and will seek sanctions.

                Sincerely,

                /s/

                Louis F. Burke

## Louis F. Burke

| | |
|---|---|
| **From:** | Lawrence Tofel [letofel@tofellaw.com] |
| **Sent:** | Wednesday, January 29, 2014 5:27 PM |
| **To:** | Alex Tripp |
| **Cc:** | Louis F. Burke; Lesli Wybiral |
| **Subject:** | RE: |
| **Attachments:** | Certification (00037573).PDF |

Counsel

This will respond to your letter of January 27, received shortly before 7:30 that evening, "demanding" a response today to your expressions of "disappointment" with defendant's January 17 submission.

Your complaints and criticisms are, characteristically, unfounded and misplaced, and reflect both an overbroad view of the information your client claims to be lacking or to which she is entitled, and a continuing and misguided attempt to discover unrelated personal financial information from Ms. Soley's brother and sister-in-law.

All relevant documents in defendant's possession, custody and control that could be located concerning the Joint Stocks were produced years ago during discovery. Those materials, upon which certain stipulations were made, evidence and support how much Ms. Soley invested in each of the four (4) securities, when those investments were made, where they were held and the disposition or retention of each security. Since receipt of the Court's December 6 Opinion & Order further efforts were made to locate and provide additional information to supplement the materials already provided (the Cardima and Tapistron bankruptcy filings, updated account statements reflecting the NexMed/Apricus positions, and the current price for the NexMed/Apricus shares still held, are examples). Your continuing requests and demands for unrelated materials (including, for example, those concerning events - like an exercise of warrants in NTII - which never occurred, or Mr. Wasserman's separate investment in NexMed/Apricus) reflect ignorance or disregard of the facts, and misguided efforts to expand and prolong this litigation and to vexatiously increase the costs thereof. There is and can be no dispute about how many shares (40,000) and warrants (for an additional 20,000 shares) were purchased and exercised, respectively, as a Joint Investment in NexMed' the parties stipulated to these facts. Information concerning Mr. Wasserman's separate position in that same security goes beyond your client's claims and the Court's Opinion & Order. Similarly, your requests for Mr. and Mrs. Wassermans' unredacted bank statements and copies of their Trust instruments are without any legally sufficient basis or support as they do not relate to your client's interests in any Joint Stock investment. The nature and purpose of the revocable Trust at issue, peculiar to California law and unlike traditional "trusts" with which we New York lawyers may be familiar, has been explained. The Bank of America bank statements were provided in redacted form since the only purpose of them is to evidence and confirm Mr. Wasserman's claim that sufficient funds were maintained in his accounts such that Ms. Soley's "share" of NTII proceeds were not "used" by defendant or otherwise. Please explain how or in what manner the information about "all of the transactions that took place in the accounts holding [NTII sale proceeds]" or those concerning Mr. Wasserman's independent further investment in NexMed/Apricus relates to plaintiff's interests in either security or any of the others in which she had an interest. Further broad inquiry into the Wassermans' finances have been repeatedly rejected by the Court and are not warranted here.

A Certification from Mr. Wasserman as to the truth and accuracy of the Accounting is attached and will be filed on ECF.

Yours truly,
Lawerence E. Tofel, Esq.
163 Washington Ave
Brooklyn, New York 11205
(O) 212-752-0007
(M) 917-847-1433

Confidentiality Caution: This e-mail and any attachments are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient, be advised that you have received this e-mail in error and that any use, forwarding, dissemination or copying is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by telephone or reply e-mail, and

then delete or otherwise destroy this e-mail and any attachments. Additionally, unless clearly and explicitly stated to the contrary, nothing contained herein shall be deemed intended as an electronic signature or to comply with the Electronic Signatures Act or any similar laws. Thank you.

**From:** Alex Tripp [mailto:atripp@lfblaw.com]
**Sent:** Monday, January 27, 2014 7:22 PM
**To:** Lawrence Tofel
**Cc:** Louis F. Burke; Lesli Wybiral
**Subject:**

Dear Mr. Tofel,
Please see attached letter.

Alexander Tripp
Louis F. Burke, P.C.
460 Park Avenue
21st Floor
New York, New York 10022
t. 212-682-1700
f. 212-808-4280
www.lfblaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
JUDY W. SOLEY,                                        :
                                                     :        CIVIL ACTION NO.
                                                     :        08-CV-9262(KMW)(FM)
                        Plaintiff,                   :
                                                     :
        v.                                           :        CERTIFICATION
                                                     :
PETER J. WASSERMAN,                                  :
                                                     :
                        Defendant.                   :
-----------------------------------------------------X

STATE OF CALIFORNIA    )
                       )        ss.:
COUNTY OF RIVERSIDE    )

        Peter J. Wasserman, being duly sworn, deposes and says:

1.      I am the defendant in the above-referenced action.

2.      I have read, and am fully familiar with, the January 17, 2014 accounting submitted herein on my behalf pursuant to the Court's December 6, 2013 Opinion & Order, as modified, including the materials submitted therewith and referred to therein (the "Accounting"). Said Accounting encompasses information and materials covering many transactions over many years which occurred many years ago. The Accounting submitted is true and accurate to the best of my knowledge, information and belief.

                                          _____
                                          Peter J. Wasserman

Sworn to before me this
29 day of January, 2014

_____
      Notary Public

COURTNEY HERSHBERGER
Commission # 1970592
Notary Public - California
Riverside County
My Comm. Expires Feb 25, 2016

{00037571.}

**LOUIS F. BURKE P.C.**
ATTORNEYS AT LAW
**460 Park Avenue**
**21st Floor**
**New York, New York 10022**
Telephone: (212) 682-1700
Facsimile: (212) 808-4280
E-Mail: lburke@lfblaw.com

January 30, 2014

**By E-mail**
Lawrence E. Tofel, Esq.
163 Washington Ave.
Brooklyn, New York 11205
letofel@tofellaw.com

Re:     *Soley v. Wasserman*; S.D.N.Y. Docket No. 08-CV-9262 (KMW)

Dear Mr. Tofel:

We understand from your January 29, 2014 e-mail that, apart from his certification, your client is refusing to provide the missing documents and information set forth in our January 27 letter.

A proper accounting requires your client to provide documentation to support precise figures showing exactly what is owed -- down to the last penny. *See Sorin v. Shahmoon Industries, Inc.,* 30 Misc 2d 408, 425, 220 N.Y.S.2d 760, 779 (Sup. Ct. NY Cty 1961). It is not a proper accounting if defendant merely provides a conclusory damages figure and directs Ms. Soley to thousands of pages of discovery where, he says, there must be support for his assertions. You must indicate which specific documents support particular amounts.

It is hornbook law that any ambiguities will be resolved against your client. *See* Wilde v. Wilde, 576 F. Supp. 2d, 595, 608 (S.D.N.Y. 2008). By commingling Ms. Soley's funds in the brokerage account and with his personal funds (and those of his wife), Mr. Wasserman imposed on himself the duty to account for all the commingled funds in the various account and the profits generated by use of the commingled funds. That is why, for example, Mr. Wasserman must disclose <u>all</u> the transactions and balances in the brokerage account and bank accounts where he held the commingled assets. The balances are necessary to determine Ms. Soley's share of the commingled funds; the transactions are necessary to determine the profits from the use of the commingled funds in the account. After having commingled the funds, Mr. Wasserman cannot pretend that Ms. Soley's funds were segregated and that the accounting should pay no attention to the profits and transactions in the account. The December 6, 2013 Opinion and Order expressly directed that Mr. Wasserman account to Ms. Soley for profits generated by the use of Ms. Soley's funds.

Mr. Wasserman refuses to address the exercise of NTII warrants (or warrants for Cardima and Tapistron). The documents show the exercise of those warrants and Exhibit P-57 shows profits to Ms. Soley of $70,000 from the exercise of NTII warrants. As the document unambiguously shows that profit and Mr. Wasserman has failed in his accounting to address the issue of NTII warrants, that $70,000 must be added to Ms. Soley's damages. Similarly, Mr. Wasserman has

**Louis F. Burke P.C.**

Lawrence Tofel, Esq.
January 30, 2014
Page 2

refused to state if, in addition to exercising warrants, he sold Cardima or Tapistron shares before they became valueless.  Exhibit P-52 shows profit to Ms. Soley of $49,741 from the shares of Cardima, with warrants, and Exhibit P-56 shows profit to Ms. Soley from Tapistron of $41,333. Unless Mr. Wasserman addresses in his accounting the gains shown in these documents, resolving these issues in favor of Ms. Soley requires that this additional $91,074 be factored into Ms. Soley's damages.

You continue to misrepresent the stipulations in the PTO.  Those stipulated amounts concerned the <u>initial investments</u> in the joint stocks.  If Mr. Wasserman <u>later</u> exercised warrants, purchased additional shares, commingled funds and otherwise used the funds for investment purposes or to generate profits, that must be disclosed in the accounting.  If Mr. Wasserman has nothing to hide and no warrants were actually exercised for a particular security and no shares were actually sold, it is a simple matter for him to state the facts under oath in the accounting.

Mr. Wasserman ignores his accounting obligations at his peril.

Sincerely,

/s/

Louis F. Burke